Vincent W. Ziegler
7425 Church Street Unit #38
Yucca Valley, CA 92284
760-620-2007 |
No Email

In Pro per

FILED

2022 JUL 21 AM 11: 20

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
RIVERSIDE
BY _____

UNITED STATES DISTRICT COURT

CENTRAL DIVISION

PLAINTIFF

VINCENT W ZIEGLER,

VS,

DEFENDANTS

CARITAS CORPORATION

BIRTCHER ANDERSON and DAVIS

TERESA EVERHART

MARY FULKERSON

Case No.:

EDCV22-01273-MCS(RAO)

Civil Rights Act of 1866
As amended 42 U.C. S. 1981,
California civil rights 2000 Et. SEQ.
with retaliation
SLANDER ORALLY/WRITTEN
WITH SEXUAL ORIENTATION
WITH CIVIL CODE 46,
44,558,563,577 (1) CAC 1700-1701,
1703, 1706, 1707, 1708-
DEFAMATION PER SE WITH
MALICE AND OPPRESSION AND
DESPICABLE CONDUCT AND
FRAUD
NEGLIGENT INFLICTION OF

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 1

| | |
|---|---|
| DAVE FULKERSON | EMOTIONAL DISTRESS GOV. c. 1601 1602, 1603, 1604, 1606 U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWS FALSE PUBLICATIONS CC 45 VIOLATION OF CONSTITUTIONAL RIGHTS, 1 and 2 HOSTILE LIVING (SENIOR) CONDITIONS CAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUD GOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACY MEMBERSHIP IN AGREEMENT 6.18, 371k CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONS CAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME 798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIME CAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH |

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 2

1

CONSPIRACY) CACI 3700
CONSPIRACY

2

3

4

5

6

7

8

9     Date: July 21, 2022

10

                                              Vincent W Ziegler
11                                            VINCENT W. ZIEGLER

12                                                 Attorney Name

13                                            IN PROPER

14

15

16

17

18

19

20

21

22

23    CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
      WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
      46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
24    OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
      DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION-
25    "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
      LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
26    LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
      CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
27    AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
      1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
28    HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
      (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 3

I.    NATURE OF CASE

This case is a civil action seeking damages and relief against

Defendants for committing severe Acts against Plaintiff, Vincent Ziegler

(Hereafter "Ziegler" or Plaintiff) a resident of Aztec Senior Mobile Home Park and

depriving Ziegler of rights secured by the United States Constitution, California

Constitution in violation of the public policy of the United States of America,

State of California and 2018 Mobile Home Residency Law and Fair Housing of

California and Rules and Regulations of Aztec Mobile Homes Estates, LGBTQ

Laws of State Of California, LGBTQ Laws of Yucca Valley, California. This

action is also brought by Ziegler for Unlawful Conduct on the part of the above

named Defendant's, each of them, Subjected Ziegler to discrimination based on

Age, Disability, Sexual Orientation, and retaliation with " Whistleblower" and a

Hate Crime, Defamation of Character, and Coercion. Ziegler engaged in the

protected activity of complaining about being a "whistleblower" about the

discrimination directly to Defendant Birtcher, Anderson and Davis and Defendant

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 4

Caritas and Defendant Teresa Everhart.   Ziegler complained and prayed about

being treated differently because of his age and Disability and Sexual Orientation.

Ziegler was/is a whistleblower as to the discriminatory, unlawful willingness,

disrespectful conduct on the part of the above Defendant, each of them, based on

Age and Disability, Sexual Orientation with extreme Retaliation. Ziegler alleges

discrimination, Coercion, discrimination against LGBTQ Laws of the United

States, State of California; including conspiracy with coercion against Ziegler by

all Defendants, each of them.  Ziegler was subjected by all Defendant's in concert

to issue a 7 Day Notice, which lead to an unwarranted lock-out of front gate and all

amenities.  This leads to eviction with the intent to lose home-profit on the sale of

his home.   Future profit, plus ability to lease in other senior Mobile Properties

would be taken away with future threats of future 7 Day Notices.

On May 6, 2022 at 5:30 pm, Defendant Teresa Everhart was walking past

Defendant's Mary and Dave Fulkerson's house.  Defendant Mary Fulkerson ran

down her front ramp while Dave Fulkerson sat on his front deck and started to

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 5

speak to Defendant Teresa Everhart.  As Defendant Mary Fulkerson ran down her ramp, Ziegler's house recorder was activated.  The Conversation was as follows:

"Vinni runs up his ramp that "faggot Peeping Tom with Aids" is still looking into my windows."

(Defendant Teresa Everhart stood in street and did not leave.)  "If you have a confrontation with Vinni, he will get upset and raise his voice. Then you can write him up.  Then you can evict him.   Defendant Teresa Everhart said, "that is good to know, I'm working on it, Thanks."

(Eviction to follow).

PLEASE TAKE NOTICE UNITED STATES DISTICT COURT CENTRAL DISTRICT OF CALFORNIA, Ziegler was less than 25 feet away and talking into his recorder also, as Defendants Teresa Everhart And Defendant Mary Fulkerson was talking very loudly, and recorder picked up every word. Nine months ago, Ziegler had a meeting with Supervisors from Caritas and Birtcher Anderson Davis, of rules being

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 6

broken by Defendant's Mary and Dave Fulkerson. Since the meeting,

Defendants Mary and Dave Fulkerson have elevated the violations of

Ziegler's Civil Rights, along with Defamation and Coercion with all

Defendants. Defendants, each of them, want to achieve the main goal of

eviction of Ziegler leading to losing his mobile home.

II.    JURISDICTION

1.    Jurisdiction of this court is invoked pursuant to 28 U.S.C.  451, 1331, 1337,

1343 and 1391.

This action is authorized and instituted pursuant to 20 U.S.C.  1706 requiring

the appropriate United States District Court to exercise jurisdiction. 42 U.S.C.

1981, Civil Rights Act of 1991, as amended, Fair Housing discrimination,

Coercion and Retaliation and LBGQT Discrimination cases may be filed in the

United States District Court. This court has jurisdiction under 28 U.S.C.  1331

and 28 U.S.C.  1343 Federal question jurisdiction arises pursuant to 42 U.S.C.

1983.  This court has pendent jurisdiction over Plaintiff's state claim, both

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 7

administrative and common Law, because they arise out of the same nucleus of common facts on which Plaintiffs Federal discrimination claims are based. Pursuant to 28 U.S.C. 1367 (s), federal courts have the discretion to adjudicate state-law claims that are transitionally related to the federal claims.

2. Plaintiff Ziegler has suffered and continues to suffer actual injuries as a result of the intentional malicious and unlawful; conduct on the part of all above-named Defendants. The injuries can be traced to the challenged action and conduct in this matter. Ziegler has a personal stake in the outcome of this action and herby joins his request for recovery pursuant to 42 U.S. C. 1981, the California Fair Housing and Employment Act ("FEHA") i.e. the California Department of Fair Housing and Employment ("DEFH")

Along with 2018 Residency Law governing Mobile homes, with common laws of the State of California, California State Senate Select Committee on Manufactured Home Communities, LGBTQ Laws of California.

CIVIL RIGHTS ACT OF 1866 AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONS LANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUD NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606 U.S.C. 463, 5 U.S C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWS FALSE PUBLICATIONS CC 45 VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2 HOSTILE LIVING (SENIOR) CONDITIONS CAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUD GOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACY MEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATOR ATIONS CAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME 798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIME CAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OF A 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 8

3.    Additionally, jurisdiction is established because:

    A.  Plaintiff, Ziegler resides within the jurisdiction of the United States

    District Court/Central District.

    B.  Ziegler owns his home and rents the lot his home sits on..

III.    VENUE

4.    Venue is proper in this judicial district under U.S.C. section 2000 e.ETseq

    with Retaliation are the subject of this civil action, were made in this judicial

    district

IV.        THE PARTIES AND RELEVANT FACTS

5.    During the relevant time period, Plaintiff Ziegler was a 64 year old white

    Male who owns his

    Home at Aztec Senior Mobile Home Estates, 7425 Church Street, Space 38,

    Yucca Valley, California 92284, County of San Bernardino, State of

    California,

    And has lived for approximately four years.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 9

6.  Defendant Caritas owns and operates Aztec Senior Mobile Home Estates, at 7425 Church St, Yucca Valley, California 92284, County of San Bernardino, State of California.

7.  Defendants, Birtcher Anderson and Davis manages the Aztec Senior Mobile Home Estates at 7425 Church St. Yucca Valley, California 92284, County of San Bernardino, State of California.

8.  Defendant Teresa Everhart, is employed by Birtcher, Anderson and Davis, on or about, December 2021 as Manager at Aztec Senior Mobile Home Estates, at 7425 Church St. Yucca Valley, California 92284 County of San Bernardino, State of California.

9.  Mary Fulkerson, owns the home located at 7425 Church St. Space 37, at Aztec Senior Mobile Home Estates, Country of San Bernardino, State of California.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 10

10. Dave Fulkerson, owns the home located at 7425 Church St, Space 37 at
Aztec Senior Mobile Home Estates, County of San Bernardino,  State of
California.

V.                          STATEMENT OF FACTS

11. The first year of Ziegler living at Aztec Senior Mobile Estates was
wonderful.  Neighbors treated Ziegler with total respect, date moved in 8-18-
2017.

12.      The second year of Ziegler's residency, the lady and man from Unit
#20, moved out after 15 years and abandoned their home.  Ziegler knew that
approximately three months later unit number #20 was abandoned and
squatters moved into that home. Neighbors and Ziegler witnessed people
coming and going 24/7 from that home.

13. The security gate for the complex was broken, allowing anyone into the
Aztec Senior Mobile Home Estates.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 11

14.     Approximately December 2019, the community had a meeting with Defendants, Caritas, and Birtcher Anderson Davis, upper management.

15.     Residents were vocal about their safety and the lack of Management not returning their calls and as the Manager, Jody Hayes, was on leave. Residents expressed their safety concerns.

16.   Residents bought up Ziegler being kind and considerate to their safety concerns.

17.     In January, Ziegler called the Morongo Sheriff, for he witnessed a break-in on house, unit #20, Behind him and neighbor #37 also called Sheriff.

18.     Sheriff believed squatters are drug dealers and caught one of the squatters with a chain in his hand and crowbar breaking into homes on the main street.

19.     Ziegler's neighbor next door at #37, died in 2020.   The neighbor Patsy's son sold the house at #37 to the Dave and Mary Fulkerson.   Patsy's

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 12

son told Dave and Mary Fulkerson that the neighbors at #38, Ziegler was

gay and he helped them not only with selling the house to the Fulkersons,

but that Ziegler was helping his mother with everything in her last days.

"Ziegler will be a great neighbor!"

20. When Defendant Dave Fulkerson moved in he asked Ziegler, "Are you

Gay, I HOPE NOT!."

Ziegler said, (In Shock), "If you need me, I'm here for you.   Enjoy living

here but we have Squatters behind me.  I'm a retired Policeman/Fireman and

I will do my best to keep you safe."

21.     Defendant, Dave Fulkerson, one month later the story of the

squatters was true, and befriended Ziegler because he considered his wife's

safety.   He was sharing texts back and forth with Ziegler.

22.     As months went by, Defendants Mary and Dave Fulkerson relied on

Ziegler with concerns for their safety, as now there was no Manager of the

Aztec Senior Mobile Home Estates.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 13

A. Aztec Senior Mobile Home Estates was like the old west, unlawfulness,

shooting, yelling by the squatters/drug dealers.    Calls to the Police were

ignored.

B. Ziegler, and Defendant Dave Fulkerson, for some reason, were denied

to be Security Patrol.

23.    Ziegler overlooked Defendants Mary and Dave Fulkerson's rule

breaking because the primary problem in the complex, at the time,  was the

Squatter/drug dealing and COVID, which had just hit Yucca Valley,

California.

A.    Ziegler informed Mary and Dave Fulkerson that no residents sit on

their deck in the park, everyone is in their 80s and 90s.   There is no

parking in front of your house on either side as these

areas are "FIRE LANES" and must be continuously clear, as every

month, Ambulance, fire department and rescue trucks need access to all

these senior homes, as they are very close together.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 14

B.  Defendant Mary Fulkerson said, "I'll park in the street anytime I want."

24.      Aztec Senior Mobile Home Estates now had a Manager in Training. He was a Gay man.  He was sympathetic to all neighbor's concerns.  He, Ziegler was told, was fired from his job because he was gay, and Caritas Corporation did not want gays in the complex.  He was considerate to Safety, squatters, drug dealers and the complex  needed to remove them, and their activity.  However, the courts were shut down and the Training Manager said, COVID policy, (no evictions in court) and so the problems continued for months.

25. Months later, Ziegler and all neighbors on the block watched as Unit #40 and Units #45, were renting out their units without consideration of the COVID danger as well as violations were being committed to Aztec Senior Mobile Home Estates and their Rules and Regulations.    Ziegler and other tenants, voiced  this to manager, Birtcher Anderson Davis and Caritas Corporation and  Caritas Corporations, anyone who would hear him, no one

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 15

did anything to change these violations or to stop these violations, yet all of the Defendants were fully aware of the poor living conditions at Aztec Senior Mobile Estates.  No one seemed to care.

26.    The Acting Manager had an overseeing Manager from Yucaipa from Birtcher Anderson Davis. He stated he was having problems with her because he was Gay and filed an EEOC complaint, and was subsequently fired by them.  This left Aztec Senior Mobile Estates unmanaged during the first months with COVID Restrictions.

27. Another straight woman manager took over, but didn't last in her position long, so they promoted the Handyman for the complex to Assistant Manager.  COVID was now in its fourth or fifth month of devastation.

28.    Late spring 2020 the new Manager was concerned about Defendants Mary and Dave Fulkerson rude activity, loud boisterous, Alcoholic ranting and bantering twice as loud as anyone in the park, on their deck,  many residents could hear from their homes, and Defendant Fulkersons were

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 16

yelling such words as "stop at that stop sign" and was heard from the Fulkersons, #37, which Defendant Dave Fulkerson and Mary Fulkerson would go to residence home and yell at them, which he did twice at Unit 41 and a unit by the office.

A. The new manager asked Ziegler, "what is going on with No. 37 Defendants Mary and Dave Fulkerson??

B. Ziegler told the truth about No. 37, and didn't realize he became a "whistleblower" as the situation was getting more intensive with the noise and their continued violation of the rules.

29.     New Maintenance man became social friends with Dave and Mary Fulkerson and began telling Defendants Dave and Mary Fulkerson all the Aztec Senior Mobile Home Estates confidential Resident's business dealings. He said he had kids living with him, which was not permitted, as you had to be 55 years of age or older to reside in this complex per rental agreement, all residents had to sign upon moving in.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER" VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 17

A.  Residents at Aztec Senior Mobile Home Estates, were told that there was a change in ruling, that employees of  Defendant  Birtcher Anderson Davis,  could have underage family living in the complex.

B.  No mention of this change in policy was ever relayed in writing to any resident.   The peaceful enjoyment and quiet was now broken.  Unit 20 and unit 37 had kids running back and forth and disturbing all residents on a regular basis.

C. Defendants Dave and Mary told Ziegler to apologize to maintence man for turning in his girlfriend's child to Aztec Management or else. Ziegler didn't say anything. This Ziegler believes because of his  "Whistle-Blowing", that Defendants Dave and Mary became hatefull and conspired with management to evict Ziegler.

30. Defendant Dave Fulkerson complained to Ziegler that dogs were urinating on his rental lot and wall outside his home. "Can you smell the pee from the

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 18

dogs, Vinni (meaning Ziegler)?  I bet the wall was never painted for a long time, and I should go paint it."

31.    Ziegler said, "I'll ask new manager if he can paint the wall, since the news stations claim that dogs urine, could possibly lead to COVID infection."

A.  For four months, Ziegler asked and asked new Management, Defendant Birtcher Anderson Davis, and others, as to whom owns the wall where the dogs were continually urinating.  Also about cleaning and painting to remove the health hazard.   No one from any of the Defendants called Ziegler back after numerous repeated calls and COVID concerns.  Numerous calls were also made to Tom Mauro, Caritas Corporation, none of the calls were ever returned to Ziegler after Mauro's secretary continued to relay messages, and she said Tom Mauro did not want to reply at all to Ziegler as he" had many too many calls".

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 19

32.     Finally four months later, Defendant  Dave Fulkerson, suggested to

Ziegler he should paint the wall amid  COVID and other health concerns to

the senior residents, who also had  concerns and were shy to tell

management directly.  This were demonstrating Ziegler's "Whistle-blower"

to Caritas Corporation.

33.     Next day, Ziegler was enjoying lunch at Mary and Dave Fulkerson's

house, Defendant Mary Fulkerson said Ziegler should apologize to

Maintenance Man, about telling Management that Maintenance Man had his

girlfiend's children living with him (Maintenance Man's children).  A

violation of Aztec's Rules and  Regulations as signed for in lease agreement

upon moving into complex.


34.     Ziegler alleges and realizes Defendant's Dave and Mary Fulkerson

are not friendly and became hostile toward Ziegler because he did not

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 20

apologize.  Above Defendants are very friendly with the new Maintenance Man, and the new Manager.

Defendants Dave and Mary Fulkerson were having their son and grandchild live with them which appeared to be permaneantly, a violation of the Aztec Rules and Regulations.

35. Ziegler believes Defendant Teresa Everhart  became the new Manager December 2021.

36. Ziegler was portrayed to her as a resident who complains and alleges Defendant Teresa Everhart became a co-conspirator  with Defendants Dave and Mary Fulkerson as a result of his complaints, looking to evict Ziegler. Ziegler only wants, and continues to want the best for his living environment!

37.    Ziegler complained to Defendant Teresa Everhart that the laundry room does not have air conditioning and no air circulating, with windows locked, causing COVID to stay in the room.    Again, Ziegler was ignored.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 21

A good manager would address all health and environment concerns.
Defendant Teresa Everhart again, did nothing and she began adding
complaints to Ziegler's file. Ziegler had started to keep an extensive log of
all violations.

38. Ziegler alleges above defendants conspired to evict Ziegler or force Ziegler
to move through write-ups and complaints to his file including a
(7-day notices), to force Ziegler to sell his home.

39. Ziegler alleges all defendants. Defamed Ziegler to other neighbors,
residents, that Ziegler is Queer, a faggot peeping Tom who has Aids,
multiple times, declaring this in the street and in front of Ziegler's house
#37. Ziegler has always had pride in his home and wishes other residents
would have similar pride.

40. PLEASE TAKE NOTICE UNITED STATES DISTICT COURT
CENTRAL DIVISION OF CALIFORNIA, Plaintiff believes, "Freedom of
Speech, does not apply, as the intent is to cause harm and

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 22

Eviction to Ziegler."

41.     Ziegler filed a" Hate Crime" Police Report in the county of San Bernardino on or about May 9, 2022 With Morongo Sheriff, and a Hate Crime investigation is in progress number.    (See Exhibit B police report No. YV221380069).

42.     Defendant Birtcher Anderson Davis denied at a meeting with Ziegler concerning the" Hate Crime" and refused to defuse the situation with Dave and Mary Fulkerson.

43.     Ziegler, today finds himself living in a Anti-Gay, Hostile Environment and is forced to face "Illegal Eviction" as a result.  Ziegler currently is locked out of all Amenities in the complex, and is locked out of the front gate. (See Exhibit C Pg. 75 Line 46).

44.  Ziegler alleges, all defendants made false statements about Ziegler being incompetent, lacking critical theory, conspiring against Ziegler, since Teresa Everhart became manager.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 23

A. Instead of assisting Ziegler, Defendants Teresa Everhart and Birtcher Anderson Davis told Ziegler he could move.

45. On May 6, 2022, at 5:15 pm. Defendant Teresa Everhart was stopped by Mary Fulkerson in the street in front of unit #37, and said, "What are you going to do about that faggot peeping Tom, who keeps looking in my window? If you get Ziegler upset, he will raise his voice, and then you can give him a 7-day notice leading to eviction." Teresa Everhart said "that is good to know, I'm working on it."

46. Ziegler overheard this entire conversation outside, on his ramp, his recorder picked up this conversation.

47. Ziegler went to the office at 5:30 pm, confronted Defendant Teresa Everhart, about the conversation that he overheard was recorded.

48. Defendant Teresa Everhart loudly, with a mean raising of her voice, ugly face, said "I, We, are not going to help you in anyway, for you, were not going to tell Defendants Mary and Dave Fulkerson nothing, they

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 24

are perfect residents, get out, move, I'm on my time off."

49. Ziegler began shaking all over, in shock, as to what Defendant Teresa Everhart was saying, Ziegler began to cry and have a breakdown. He said, "you were giving Defendant Mary Wilkerson time to talk to you, On your time off, but can't talk to Ziegler."

50. Defendant Teresa Everhart grabbed her phone, turned it on, then said "Now I'm taping you."

51.     Ziegler with tear running down his face, said, "you have to ask me my permission to record me!" No consent is illegal. (Penal Code 632 P.C. )

52. Defendant Teresa Everhart said, "Get out and move!"   Ziegler cried out in anguish and felt pain inside him as he left pool area.

53. A witness was nearby and heard Defendant Teresa Everhart raising her voice and upsetting Ziegler.

This witness asked Ziegler outside the pool area," if he was ok", as she noticed Ziegler was in complete distress.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 25

54. Defendant Teresa Everhart continued to Ziegler, of her political views saying "I'm a Trumper, you are not going to get me out, You get out!"

55.    Ziegler walking in fear, having a nervous breakdown, found himself living in a MAGA environment, Anti-Gay, dealing with a younger Manager, younger than he is, in a hostile living environment.

56.    Defendants, Caritas Corporation, Birtcher Anderson Davis Managers told Ziegler 10 months ago, to move, sell his home, Defendants Mary and Dave Fulkerson won't move, and that Defendants Mary and Dave Fulkerson stated that they will not talk to Ziegler ever again!

57.    Defendants, all of the above, refused to have a meeting with Ziegler on new charges of Hostile Environment after May 6, 2022.

58. All defendants and their employees used Plaintiff's terminal illness against him. Ziegler receives Physical, Psychiatric and medication which have caused him a severe decline in his personal health.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 26

Ziegler believes the American Disabilities Act of 1990 has been violated, because all Defendants, now new of his declining health, and therefore have retaliated against him by their actions, (42 U.S.C. section 12101).

59. Defendants Caritas Corporation and Birtcher Anderson Davis retaliated and conspired against him by papering his residency file, in retaliation, to his complaints which have been ongoing. Then Birtcher Anderson Davis followed up with a 7-day notice, which Lori Flannery, Birtcher executive said she approved in retaliation of Ziegler's complaints. She stated that after Defendant Teresa Everhart raised her voice, and Ziegler got loud, that she what she had to do what she felt protected her company. Again, no one addressed the real concerns that Ziegler voiced many, many times. Ziegler even asked Lori Flannery if "sensitivity training had ever been done?" Most of Ziegler's complaints could have been resolved, but did not do so, in conspiracy to remove "the complainer" only because they did not want gay people living in their park. Lori Flannery did nothing, but ask for written

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 27

Notice of complaints Ziegler had been addressing ongoing, which were continuing and getting more intense.

60. Ziegler alleges all defendants acted in concert, coerced a level of involuntarily termination of his rental lease. Birtcher Anderson Davis also by their inaction demonstrates that they were leading up to Ziegler's termination of his lease at Aztec Senior Mobile Estates.

61.    All defendants expressed religious and political views on Ziegler claiming they were "Trumpers", and used these views against Ziegler, to manage the Aztec Senior Estates, according to their views and beliefs. These concerted views and views different than Ziegler's were used to continually violate Ziegler's civil rights. Trumpers are known to be anti-gay and have no reservations about voicing this opinion (s).

62.    Ziegler's sexual orientation that have stated is contrary to their religious and political views, which have lead to complete violation of his civil and human rights. These views have lead to violating

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 28

Ziegler's housing rights as well as demonstrated above, in their attempt to find something wrong to write up Ziegler.

63. All defendants, acting in concert, Ziegler alleges "All Defendants, violated Ziegler "Civil Rights:, and which continually for ten months caused a "Lock Out", to enjoy the amenities which Ziegler pays for in his lot rent.

64. Ziegler lost his "Peaceful Enjoyment" as stated in the Rules and Regulations of Aztec Senior Mobile Home Estates.  This demonstrates Ziegler "Civil Rights  has been violated and Federal and State Law and LGBTQ Laws of the State of California

65. Defendants Mary and Dave Fulkerson sit on their deck and talk loudly about Ziegler's sexual orientation to other residents for no reason except to defame Ziegler.  They want every resident to feel negative toward Ziegler so he will move in concert with views expressed by Defendants Birtcher Anderson Davis as well as Caritas Corporation.  Being a "Whistle-Blower" and defaming Ziegler also demonstrate malice.  " He is a queer and

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 29

Faggot peeping Tom and is looking into our windows" said Defendants Mary and Dave Fulkerson.

66. PLEASE TAKE NOTICE UNITED STATES DISTRICT COURT OF CALIFORNIA CENTRAL DIVISION: Definition of a peeping tom is a person who derives sexual pleasure from secretly watching people undressing or engaging in sexual activity.

67. It is a crime for anyone who is on someone else's property without their consent to peek in or view into a window of an inhabited building or other structure to observe persons who are inside under Penal Code 647 (i) P.C. Peeping tom definition and meaning from Merriam-Webster Dictionary is a pruriently prying person voyeur. Mary Fulkerson is accusing Ziegler of a crime, which has never occurred, yet has convinced Defendant Teresa Everhart, and Birtcher Anderson Davis, and Caritas Corporation of such similar views by all their communications between all the Defendants, each of them.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 30

68. Ziegler is and has been considered a good and valuable resident

demonstrated through past reviews of his residence and property by

managers in the past.  Ziegler always pays his rent on time.   Ziegler has the

best landscaped property on the street.  Defendant Teresa Everhart has stated

on Ziegler's inspection report that his residence is a "Beautiful Homesite".

69. The enhanced scrutiny by all defendants currently demonstrates retaliation,

defamation and part of all defendant's actions.   All non-gay residents and

senior age residents have been treated differently for the same issues, and

Ziegler has been selected to be discriminated against due to his beliefs both

religious and sexual orientation.

70. It is indisputable that Plaintiff has filed complaints regarding the treatment

level against him, which caused the 7-day notice levied against Ziegler.

Ziegler established that he has only engaged in legal,

activities based on the Rules and Regulations under the Mobile Home

Residency Laws, Fair Housing Laws of California.   Ziegler filed a police

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 31

"Hate Crime"" report which Ziegler is subjected to adverse Housing Action
which negatively affected housing actions which negatively affected the
terms, conditions and privileges under Ziegler's lease. (See Exhibit B).

71. Ziegler, is a "Whistle-Blower" as many of the violations of the "Rules and
Regulation", by other residents including No. 37 which he raised with
management continued to exist in Aztec Senior Mobile home Estates.
Ziegler was put down for raising many, many violation which continue to
happen and subjected Ziegler to Retaliation in violation of Title VII of the
Civil Rights Act of 19643 as amended; his age (64) in violations of Age
Discrimination in Housing Act of 1967 as amended; Ziegler disability in
violation of the Americans with Disabilities Act of 1990, as amended; with
defamation coercion along with FEHA cause of action; along with
California Fair Employment and Housing Act of 1959; Government Code
section 12900-12996. Defendant Teresa Everhart has told other residents
and Ziegler.s witness that he is "Difficult!".

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 32

72. Plaintiff is ignorant of the true names and capacities and involvement of the defendants sued herein as Does 1 through 14 inclusive and therefore, sues these defendants by such fictitious names.

73. Plaintiff will amend his Federal Complaint to allege the true names and capacities of the Does when these are ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible for the violation of Plaintiff's Federal and State rights, and Plaintiff's damages as herein alleged were proximately caused by the conduct of such fictitiously named Defendants.

74. Plaintiff is informed and believes and thereon alleges that, unless Defendants, Caritas Corporation and Birtcher Anderson Davis, and is the agent and/or employee of every other Defendant acting outside the course and scope of said agency and/or employment and with knowledge and/or Co-Defendants.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 33

75.    Plaintiff, Ziegler had many conversations with Defendant Teresa Everhart about improper construction of their lattice and plastic strips on Unit #37.  Since January 2022 Ziegler asked Defendant Teresa Everhart for help correcting Unit #37's improper construction and fire hazards and Defendant replied, "I'm working on that", "you have insurance if your home burns down, it only effects your home.", "YOU just want to look over there (at unit #37)" demonstrates Defendant Teresa Everhart false belief that Ziegler is looking in the windows at No. 37. This improper installation of the lattice, etc, has caused continual rattling noises which are distracting to Ziegler's peaceful enjoyment as stated in the Rules and Regulations.  Ziegler also said to Defendant Teresa Everhart, and her boss at Birtcher Anderson Davis, that  #37 is barbequing 5 feet from Ziegler's bedroom, causing him Asthma attacks and filling his home with charcoal and smoke.  Also #37 has had a family member living in their house for 7 months, parking in the driveway overnight,  who is not a senior citizen.   Again, no action from any

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 34

Defendant and all these issues continue.   This inaction demonstrates that a

favoritism still continues with Unit #37 having no write ups, or 7-day notices

in their file.   Further check will show, Ziegler alleges, that no write-ups or

7-day notices have been given to #37, Mary and Dave Fulkerson, as they are

still residents to this day, and their violations would have forced them into

Eviction, that is levied to Ziegler.   This shows a biased handling by all

Defendants to Ziegler, as he's a gay man.

76. Defendant Teresa Everhart is employed by Defendant Birtcher Anderson

Davis and represents Defendant Caritas Corporation.   On May 6th, at 5:30

pm joined in conspiracy in a "Hate Crime", with Defamation, with

Defendants Dave and Mary Fulkerson against Ziegler created a hostile

environment, which led Ziegler to have extreme emotional distress.   Ziegler

believes Birtcher Anderson Davis and Caritas and all of their agents are

responsible for retaliation which led to Ziegler's 7-day Notice as if

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 35

Defendants were there participating in the same manner at the same time. Saying the following:

A.  "You want to look into their house";

B.  "I'm not doing NOTHING FOR YOU". "FOR YOU!!!"

C.  "It's not going to be windy no more, so don't worry about their lattice." "You have insurance if the lattice, or plastic from their home hits your house." "I'm not telling them nothing!"

D.  "You sleep in the screen room, so what!"

E.  "Move!  You should move, Dave and Mary Fulkerson will not."

F.  "I don't care if they are barbequing 5ft from you bed, move if you don't like it I don't care if you have a medical condition".

G.  "We don't have a key card". Defendant Teresa Everhart said "get out".

H.  "I don't care if the bushes that Fulkersons haven't watered in two years are dead, and are a fire hazard." Ziegler believes this act could

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 36

demonstrate "Arson" if they catch on fire, as they are four feet from

Ziegler's building. ( A good manager would address and correct

such a safety. violation) as Ziegler is assured by the Fire

Department).

I.   Defendant, Birtcher Anderson Davis, were told of the keycard

through two written emails and   they did nothing after two requests

and Ziegler currently does not have access to front gate and all

amenities.

77. Ziegler, alleges that he is not wanted in the amenities as he is Gay!


STATEMENT OF FEDERAL AND STATE CLAIM

FIRST CAUSE OF ACTION

FIRST CLAIM FOR RELIEF


CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 37

(Violation of the Civil Rights Act of 1866 As Amended, 42

U.S.C. Section 1981 and California Civil Right Against All Defendants,

section 2000e et. Seq. RETALIATION)

78. Plaintiff repeats and re-alleges the allegation set forth in paragraphs I

through 77 above, as if forth fully here.

79. Plaintiff is guaranteed rights under the Constitution and laws of California

and laws of the United States. The Plaintiff is entitled to due process of law

under both the Constitution of the United States and the Constitution of

California.

80. Plaintiff alleges  Defendants, each of them, and agents, supervisors,

managers and rank and file employees are spreading false accusations,

rumours throughout Aztec Senior Mobile Estates and throughout the town of

Yucca Valley, Defendants, and each of them state that Plaintiff, Ziegler is a

"Queer and a peeping tom and has Aids" of which heard many times, which

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 38

stigmatized Ziegler.   His professional reputation and his standing in the community and with his friends by the Defendants doing the following:

A.  Through emails and phone recorded conversations/message.

B.  Through recorded conversations on the street by "Ring" and Plaintiffs recorder.

C.  Through conspiracy efforts to encourage rank and file employees to false witness, causing Ziegler to have extreme emotional upset. Loss of thought, nervous breakdown occurred,

Ziegler is a "whistle-blower".

D.  For ten months, Ziegler prayed for Defendants Dave and Mary Fulkerson to act as civilized Senior residents and respect their neighbors.  Promises from Defendants Birtcher Anderson Davis and Caritas Corporation to put a stop to this harassment, yet they did nothing. This disrespectful activity did not stop, yet got worse. The Caritas Corporation or Birtcher Anderson Davis did nothing.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 39

E. Ziegler pleaded with all Defendants, each of them, to stop Dave and Mary Fulkerson from barbequing in violation of the Rules and Regulations (which was gas only barbequing) and again nothing happened. Ziegler continued to have Asthma attacks with each episode. During their illegal barbequing, Defendants Dave and Mary Fulkerson continued to insult Ziegler by repeated insults with Gay overtones spoken out loud, continued to break the rules, saying "Queer, Faggot peeping Tom with Aids."

81. The Plaintiff, Ziegler can no longer enjoy "Peaceful Enjoyment", of which is stated in the "Rules And Regulations of Aztec Mobile Home Estates dated October 29, 2019, and Equal Housing opportunity page 1. "Golden Rule": "Do unto others as you have others do unto you". The "Golden Rule" states, "we have your complete cooperation not only to keep community standards high and to maintain a happy and friendly atmosphere but also to assure each resident a maximum of convience and comfort. Furthermore,   states :

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 40

A.   All defendants, each of them, Plaintiff alleges did not follow the "Golden Rule" allowing all of the above Defendants to violate Ziegler's Civil Rights Act of 1866 in concert with a conspiracy with Defendants Mary and Dave Fulkerson to ensure eviction through "Hate Crimes" and other unlawful, hateful means/activities leading to Ziegler getting a 7-day notice, which leads to eviction.

82.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 81 above as if fully here.

83. After 10 months, Ziegler became a "whistleblower" at the Meeting with two Defendants from Birtcher Anderson Davis and Caritas Corporation. Defendants Mary and Dave Fulkerson refused to attend and meet because they did not want to interact at all, ever again, the Defendants said.  This allowed all Defendants to downgrade " The Golden Rule" against Ziegler which led to hateful disrespect, discrimination, with a "Hate Crime", allowing above Defendants to go into the street proclaiming Ziegler is a

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 41

"Queer Faggot Peeping Tom with Aids", proudly injecting fear into all seniors at Aztec Senior Mobile Estates.

84. On May 6th, 2022, Defendant Teresa Everhart constituted an oral agreement with Defendant Mary and Dave Fulkerson, a binding agreement between themselves, in the street spoke loudly, intending to violate Ziegler's civil rights, to conspire, Defame, Hate Crime, to develop a "Plan" to evict Ziegler.  This violates United States Civil Rights of 1866. As amended, 42 U.S.C.  1981,California Civil Rights, LGBTQ Civil Rights of California, and Yucca Valley Civil Rights and Hate Crime Act Laws.

85. As set forth in "Aztec Senior Mobile Home Estates "Rules and Regulations", page 3, Defendants, all of them, with their conduct, entered into an awful, hateful, disrespectful Agreement because Plaintiff is a Homosexual.

86. Above Defendants, all of them, Ziegler alleges that by entering into a agreement between a third party of any agreement between

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 42

owner/community management here stated in this complaint, "Rules and

Regulations" shall be deemed a public nuisance or adequately be

compensated in damages in an Action of Law.

87. Therefore of the above, Ziegler should be legally compensated in damages

and shall be entitled to injunctive relief, but not limited to, restraining

resident,(all Defendants, each of them), from continuing to breach any such

rules and regulations term or condition;. Such as violations set forth in

"State of Federal Law" and State Claim First Cause of Action, Violation of

the Civil Rights Act of 1866 (As amended, 42 U.

S. C. 1981 and LGBTQ Laws of California.

89.  Plaintiff Ziegler objected to the sexual discrimination at his residence,

"Aztec Senior Mobile Home Estates" and or refused to participate in unlawful

sexual discrimination activities by all Defendants, each of them, such actions are

statutorily protected by Title VII of the Civil Rights Act of 1964, as amended.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 43

90. Defendants, each of them, retaliated against Ziegler as follows:

   A.  Informing Ziegler he can move, over the eleven months period. Defendants issuing Ziegler a 7-day notice, and lock him out of the amenities.

   B.  Defendants, each of them, used willful, intentional retaliation against him for being a "whistleblower".

   C.  Defendants, all of them, joined , on May 6, 2022, to issue a 7-day Notice to intimidate him to move, also to harm him, his home and his vehicles.

   D.  All defendants, joined up, conspired, locked out Ziegler with extreme scrutinizing his home for violations, and gave Ziegler the 7-day notice for a frivolous reason, because Ziegler is a "Whistle-Blower".  Defendant Teresa Everhart, raised her voice loudly, in a disrespectful manner, then claimed Ziegler allegedly yelled at her.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 44

91. Other Senior Residents are voicing that they are in fear of extreme harassment from all Defendants as demonstrated against Ziegler. Many are afraid to talk to Defendant Teresa Everhart as a result of the negative hostile environment she has created! Many residents are willing to testify about the extreme sexual discrimination that truly exists in this senior complex. Other senior abuses exist against other residents by Defendant Teresa Everhart.

92. Defendants, each of them, saw, heard and acknowledge the extreme sexual discrimination exists, and ignored, and acted like this was acceptable in today's society.

93. By virtue of the conduct described above, Defendants, all of them, violated Title VII of the Civil Rights Act of 1964, as amended, by retaliating against Plaintiff, Ziegler, because of the opposition to Ziegler's Sexual Orientation by using hateful methods to violate the law and continuing to harass Ziegler.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 45

94. The acts and omissions of Defendants, each of them, were, and still exist today as outrageous, wanton, intentional reckless and deliberate disregard of Plaintiffs established rights.

95. Ziegler receiving a "Beautiful Homesite" written notice during this year's Lot Inspection, having established by management, yet when Ziegler complains about complex violations, he is told "you have too many cactus, and if I have to tell Dave and Mary Fulkerson about all their violations, I have to tell you about some violation on your lot." This is totally retaliatory.

96. Defendants, all of them, allegedly claim Ziegler is a" Faggot Peeping Tom", since this is a crime, have not produced a Police Report, nor any police officials would have contacted Ziegler, this is a truly serious accusation which is totally false and should be dealt with in a court of law.

97. As a direct and approximate result of the described acts of above, from all Defendants, Ziegler has suffered physical and mental anguish, medical bills, and loss of respect in the community, enjoyment of life, and in fear of all

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 46

Defendants.  This has led to a rapid decline in Ziegler's health.  When Defendant Mary Fulkerson proclaims she "has a gun in her purse, and knows how to use it", Ziegler's fears are truly justified.  Ziegler fears for his life and the life of others if such discrimination and abuse of a Senior Citizen is allowed to continue.   All Defendants, each and every one are complacid and responsible for his future health due to their actions.

## REQUEST  FOR  RELIEF

WHEREFORE, Plaintiff respectfully request that this Honorable Court;

1.  Enter judgement on behalf of Plaintiff against all Defendants, "DOC" on the First Cause Of Action, Violation of the Civil Rights Act of 1866, as Amended, 42 U.S.C. section 1981 and California Civil Rights and section 2000e Et. Seq-RETALIATION;

2.  Award Plaintiff's compensatory and punitive damages against all Defendants in amounts to be determined by the jury;

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 47

3. Award Plaintiff's Doctor Bills and other entitlements, including future bills, until they are made whole;

4. Award Plaintiff's reasonable attorney's fee, court costs, expenses, pre-judgement interest and post judgement interest;

5. Declare that the conduct of Defendants, all of them, is in violation of the Civil Rights Act of 1866, as amended, 42 U./S.C. 198 and California Civil Rights 2000 et. Seq. RETALIATION

SECOND CAUSE OF ACTION

( SLANDER ORALLY/WRITTEN IMPUTED With SEXUAL ORIENTATION WITH CIVIL 46,44,558,563,577(10; CAC 1700-1701, 1703,1706,1707, 1708 DEFAMATION PER SE) WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUD.)

98. Plaintiff repeats and re-alleges set forth in paragraphs 1 through 97 above and incorporates same as reference as if above if more full set forth here.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 48

99. Ziegler alleges action of which on May 6, 2022 occurred 5:15 pm between

Defendants Mary Fulkerson and Teresa Everhart who is an employee/agent

of which Defendant Teresa Everhart represents Defendants, Caritas and

Birtcher Anderson and Davis. held by law, above Defendants liable as if

they were there in that moment in time, liable for Slander, Defamation per

se.

100.    For ten months the Defendants, all of them, did nothing and/or have a

meeting with Ziegler, and they did not issue any 7-day notices to Defendants

Mary and Dave Fulkerson.  The past five months, acts of Slander and

Defamation occurred in a willful, hateful manner of  a 7-day notice has not

been issued against Mary and Dave Fulkerson.  Plaintiff also believes that no

7-day notices have ever been issued against Mary and Dave Fulkerson after

numerous violations have occurred by them ongoing!

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S C  2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 49

101.    Plaintiff repeats and re-alleges that set forth above paragraph 3 and
through 16 inclusive are incorporated into this claim for relief by reference
as if set forth in full.

102.    Defendants, all of them, or any of their agents did not stop, refused,
ignored the Slander, Defamation, after May 6, 2022.   The above Defendants
did not institute a refresher course on Sexual Orientation  with correct
education on Hate Crimes, and the correct way to treat Senior Residents,  to
include their manager, Teresa Everhart.  Plaintiff believes all large
companies need to institute current LGBTQ, Civil Rights, and ways to
treat all current populations equally that exist in today's changing world.

103.    Without such courses on how to work with various people in their
communities, Caritas Corporation, Birtcher Anderson and Davis, and rank
and file employees only stated, "Good Luck" to Ziegler after May 6. 2022.
All Defendants encouraged Defendant Teresa Everhart to act hostile toward

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 50

Ziegler, with extreme Slander and Defame Ziegler through internal, external

reports, emails, text messages, phone conversations.

of which to publish, orally/written the Slander and Defamed statements, for

ten months to present day.

104.    All Defendants, each of them, interviewed Ziegler's neighbors, about

his sexual orientation. Defendants are surprised that Ziegler is a caring

resident who other neighbors will testify that they respect and admire Ziegler

for his perserverance and neighborly attitude.

A. In July, 2022 Defendant Teresa Everhart demanded and coerced

Ziegler's witness to agree that Ziegler for no reason yelled so loud at

Defendant Teresa Everhart.

105.    Defendants, each of them, should have never shown awful, hatred to

Ziegler because of his sexual orientation , and in turn, created a hostile

environment.  At fault, Ziegler alleges, Is Birtcher Anderson Davis and

Caritas Corporation, and their poor training of managers employed by the

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46,44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 51

Defendants Caritas Corporation and Birtcher Anderson and Davis.  A senior

environment allowing "Hate Crimes" to occur are in violation of

Government Code Section 46, 44, 563, 577 (1); U.S.C. section 1403, 1404,

1405, 1100 and CAC 3600, 3601, 3700, Conspiracy against the Plaintiff.

106.   Defendants, each of them, knew Ziegler was an outstanding citizen,

continued to claim Ziegler is a "Queer, Faggot Peeping Tom with AIDS,

accompanied with an false 7-day notice that their Slander and Defamation perjury

statements through communications would and has been executed, repeated and

republished widely throughout Aztec Senior Mobile Home Estates and throughout

Yucca Valley on a daily basis.

107. Ziegler alleges, Defendants, each of them, increased dramatically the

last five months with "Slandered and Defamed Ziegler by clearly exposing

Ziegler to hatered, contempt, ridicule and obloguy with "Hate Crime

Actions" as a rule violator, as a "Queer, Faggot Peeping Tom with AIDS",

whose  Land Lease should be immediately terminated and disconnected

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 52

from the Social Society of Aztec Senior Mobile Home Estates in secret and in closed meetings and encouraging Ziegler's selective persecution.

A.  Ziegler witness will confirm all of the above, through E-mail, Texted, legal recordings.

108. Exhibit B establishes a "Hate Crime occurred on May 6, 2022 the law assumes, Ziegler is entitled to a nominal sum as one dollar or such greater sum the court believes is proper for harm to Ziegler's reputation under the circumstances of this case.

Plaintiff is also entitled to recover as and if he proves it is more likely true that the Defendants, each of them ,for the past five months, and beyond the 10 months, demonstrated their hateful, disrespectful conduct of which a normal person in a respectable society can endure was a substantial factor in causing any/all of the following damages:

A.  Harm to Ziegler's trade, professional and occupation.

B.  Expenses Ziegler  paid as a result of defamatory, slanderous statements.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 53

C. Harm to Ziegler's reputation in addition to that assumed by law.

D. Shame, mortification, and/or hurt feelings of the plaintiff, Ziegler.

E. Harm to Ziegler's physical (terminal) illness. Creating damages to

Ziegler which cannot be

Changed, leading to deteriation of his health.

109.   Ziegler, may also recover damages against all Defendants, each of

them, due to their inaction, and ignorance of Ziegler's situation.

110.   Ziegler, may also recover damages against all Defendants, each of

them, if and when Ziegler proves clear and convincing evidence that each

Defendant acted with Malice, oppression, despicable conduct, Fraud

111. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 3

and 16, above and incorporates same by reference, as if more, fully set

forth here.

112.  Defendants, each of them, graduated on May 6, 2022, imputed the

plaintiff, Ziegler, impotence and wants of chastity which by natural

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 54

consequence, causes actual damages and actual constitutional malice.

Oppression, despicable conduct and Fraud with medical and physical

and mental decline, Ziegler believes by all the evidence, legal

recordings and exhibits.

113.     Every resident at Aztec Senior Mobile Home Estates and out in

the general public, everyone who came in contact with, or in

conversation with, and without the Plaintiff, Ziegler, laughs at him,

causing disgrace and discomfort.   Others, don't believe anything Ziegler

states as the truth and may be afraid of Ziegler, due to Defendants, each

and all of them, false statements.

114.    Ziegler believes that Defendants, each of them, will not talk or meet

with Ziegler, because they will hear the truth.   They, each and each of

them, will not stop oppression, or make any attempts to stop such

oppression and discrimination.   To the present time, Ziegler believes with

the able evidence and witness testimony to be demonstrated in court,

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 55

defamatory, slander statements with intent to fraud Ziegler of his

Constitutional Rights.  The Defendants have violated Civil Code Section

563, the meaning of a communication is that which the recipient correctly or

mistaking, but reasonably understand, Defendants, each of them, that it was

intended to express.

115. Plaintiff, Ziegler feels shamed, with mortification and hurt feelings

from all Defendants actions, each of them, expressing "malice and

Oppression" for unlawful sexual orientation views that they obviously

possess.

116.  "Malice" means that Defendants, each of them, acted to cause injury

by his or her conduct was so extreme, despicable and was done with a

willful knowing disregard of Ziegler's Civil rights.

117. The conduct of Defendants, each of them, violated LGBTQ Laws of

the United States and California State Laws.  Ziegler believes each

Defendant has reached the act of Malice, causing harm to Ziegler.  They

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 56

ignored the possible "Hate Crime" by attacking Ziegler's sexual orientation in public.   Did nothing to stop the actions of those under their control, rank and file, manager, and even Company executives. Ziegler feels that each Defendant has made personal evaluations and held political views against him because he is homosexual. None of Ziegler's actions in the past four years breached the terms of the Rules and Regulations of Aztec Senior Mobile Estates.

118.  Issuing a 7-day notice that was not justified, demonstrates Defendant's retaliatory action of being a "Whistleblower".  With numerous repeated violations of Aztec's Rules and Regulations by others.   Ziegler, who is closely following, the rules during his 3+ years of residency, feels total retaliation is taking place by Defendants by their actions by exposing these violations.

119.  "Despicable Conduct" is conduct so mean, vile, baseless or contemptible that it would be looked down by a reasonable person.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 57

Ziegler alleges Defendant Teresa Everhart used forms of intimidation by threatening to write Ziegler up for being an "Whistle-blower" and used sex discrimination, political views, proclaiming she is a "Trumper" to force and encourage the other Defendants, to lead to Eviction of Ziegler from his home.

120. Throughout this "FAC" Defendant's, each of them, conduct is so mean, vile, based or contemptible toward Ziegler that residence at "Aztec Senior Mobile Home Estates look down at him and despise him."

121. "Fraud" means that Defendants, each of them,   intentionally misrepresented or concealed a material fact and did so intending to deprive one of the property/residence or of a legal  right or otherwise to cause him/her injury.

122.  Defendants, each of them, caused fraud throughout the ten month period with/on May 6, 2022, constituted an agreement among all Defendants to intentionally harm Ziegler with misrepresented and

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMEAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 58

concealed material facts with intention to deprive Ziegler of his property, legal rights, and peaceful enjoyment of life at Aztec Senior Mobile Home Estates.

123.   Ziegler has been denied full benefits and privileges on or about March, 2022, denying Unit #38, a key to all amenities through Defendants actions and lack of herein, see Exhibit D.    Ziegler's lot rent is, and has been paid consistently throughout his residency, yet the amenities he is paying for each month are being denied by Defendants, Teresa Everhart, Birtcher Anderson and Davis, and Caritas Corporation as they refuse to furnish the electronic key he needs to use all amenities and the front walking gate, after many request, including in writings to provide herein. Civil Code 798.15(f).  Page 75 of the 2018 California Mobile home Residency Laws.  See Exhibit C.

124.  Defendant's, each of them with slander and Defamed Ziegler "oppression", imputed with "Malice with a conspiracy was outrageous,

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 and 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 59

wanton, intentional, recklessness in deliberate disregard of Ziegler's established constitutional, State, LGBTQ rights of California.

125.  Plaintiff alleges in October 2021, Ziegler was on his deck and Defendant Dave Fulkerson sat in his driveway 5 feet from Ziegler and said, "Now that Faggot peeping Tom can't look in." This was the first time Ziegler heard above words. Ziegler was shocked and bewildered and stood up and didn't want a confrontation with Defendant Dave Fulkerson and went into his home.  Ziegler was in mental anguish and felt humiliation from the defamation.

126.  Ziegler went into the management office to talk to manager Robert was in shock to hear what horrible comments Defendant Dave Fulkerson said out loud and told Ziegler to write a incident report of which Ziegler witnessed a copy of the incident report went into Ziegler file and one into Defendant Dave Fulkerson file.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 60

127. Ziegler didn't anticipate the after effects of Defendant Dave Fulkerson slander, fraud statements that would continue for nine more months with a conspiracy with the next manager Defendant Teresa Everhart. Thus all Defendants joined forces, in concert, to repeat this, (above), to demonstrate conduct so mean, vile, contemptible toward Ziegler. This caused Defendants, all of them, and other residents to look down at Ziegler and despise him.

128.     Since Janurary 2022 and to this present day, all Defendant's, each of them, concealed material facts of the conspiracy to deprive Ziegler of his rights, property and peaceful enjoyment. Defendant's, each of them, slandered and defamed Ziegler with oppression imputed with Malice through their conspiracy to be prove in court. Of which was filled with extreme outrageous, wanton, intentional, recklessness in deliberate disregard of Ziegler's health and wellbeing. Ziegler's rights are established though Federal and State Laws and LGBTQ Rights

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 61

established by law and Executive order by The President of the United

States.

129.    As a direct and proximate result of all described acts in the

"FAC", Ziegler has suffered extreme physical and mental anguish,

constant distress, awful humiliation, great expense, including legal fees,

medical bills, and fear of the hostile environment, that these

Defendants, all of them, have created.  Defendant's each of them,

caused Ziegler's loss of enjoyment, violated his housing rights,

therefore, he demands compensatory damages as well, against all

Defendants.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Honorable Court:

1.  Enter judgment on behalf of the Plaintiff against Defendants, each of

them, on SECOND CAUSE OF ACTION (Slander orally/written

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 62

imputed sexual orientation with Civil Code 46, 44, 558 ,563, 577 (1)

CAC 1700-1701, 1703, 1706, 1707, 1708 Defamation Per Se) with

Malice and Oppression and Despicable conduct and Fraud.

2. Award Plaintiff compensatory and punitive damages against Defendants, each of them, to be determined by the jury;

3. Award Plaintiff loss of entitlements paid in Ziegler's "Lot Rent" and any other entitlements and expenses until they are made whole;

4. Award Plaintiff reasonable attorney's fees, court costs, expenses, prejudgement interest;

5. Declare that the conduct of Defendants, each of them, is in violation of Slander orally/written imputed Sexual Orientation with Civil Code 46, 44, 558,m 563, 577(1) CAC 1700-1701, 1703, 1706, 1707, 1708 Defamation Per se with Malice and Oppression and Despicable conduct and Fraud.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 63

# THIRD CAUSE OF ACTION

(Negligent Infliction of Emotional Distress Against all Defendants) Gov.

Cs 1601, 1602, 1603, 1604, 1606.

130. Plaintiff repeats and re-alleges set forth in paragraphs 1 through 129

above and incorporates same by reference as if more fully set forth here.

131. For ten months, Plaintiff Ziegler living at Aztec Senior Mobile Home

Estates lived in fear, with extreme sexual harassment, Ziegler alleges is

in violation of his civil rights with imputed with HIV-AIDS under the

Term, "Zone of Danger Rule".   Defendants each of them, should have,

and have been able to reasonably foresee that their actions caused Ziegler's

extreme, negligent infliction of emotional distress and physical/mental

injury.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 64

132. Defendants, each of them, saw in real time that Plaintiff, Ziegler is a caring resident who respects his neighbors and his neighbor's property as well as his own property.

133. Defendants, each of them, refused to end, or did not stop the sexual discrimination or make an attempt to end the awful disrespectful, life-threatening sexual harassment causing extreme harm and/or negligent infliction of emotional distress to Ziegler's health and well-being.

134. Ten months ago, Plaintiff told all Defendants, and rank and file supervisors of Caritas Corporation, and Birtcher Anderson and Davis, that Plaintiff just wants to live peacefully, enjoy his last years in full enjoyment in his retirement home and that he has a terminal illness.

135. Ten months prior, Rank and file supervisors, Caritas Corporation, and Birtcher Anderson and Davis suggested a meeting with Defendants, Mary and Dave Fulkerson to which the following occurred:

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 65

A.  For Peace and enjoyment in the community, we would like a meeting with Ziegler, Mary and Dave Fulkerson.

B.  Plaintiff, Ziegler agreed to this meeting.

C.  Rank and file supervisors informed Defendants Mary and Dave Fulkerson, who refused to meet with any of the Defendants, without any reason. They told Defendants Caritas and Birtcher Anderson and Davis, they will never talk to Ziegler again.

D.  Defendants, Mary and Dave Fulkerson never made any attempts to be neighborly for the next ten months and to this date.

E.  Ziegler alleges that Defendants Mary and Dave Fulkerson refused because Ziegler was a "whistleblower" informing management that Defendant Mary and Dave Fulkerson are in violation of numerous Rules and Regulations of Aztec Senior Mobile Home Estates.

F.  Defendant Teresa Everhart used verbal complaints about imagined/exaggerated improper Conduct of Ziegler which was false,

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 66

misleading and unreasonable.  She also made it uncomfortable by

creating a nuisance demanding bad character references about Ziegler to

his neighbors.    Neighbors, Ziegler's witnesses proclaim Defendant

Everhart only asked about #38, and nothing about the Conduct of #37.

Defendant Everhart was doing this to cause emotional distress to Ziegler,

hoping Ziegler will hear from neighbors about these accusations, and sell

his home.

136.   Each of them, all Defendants, recognized an opportunity to ignore,

attack, defame Ziegler to the other residents at Aztec Senior Mobile

Home Estates on a daily basis causing Ziegler to be in fear, loss of

sleep, distressed, distraught, and to seek medical attention.

137.   Defendant Teresa Everhart had become very angry at Ziegler, when at

multiple times, he complained about Defendants Mary and Dave

Fulkerson's discrimination tactics as follows:

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 67

A.  Ziegler experienced Defendant Teresa Everhart's extreme anger toward him, tried to change the subject many times, lost her professionalism, used gangster- like tactics to intimidate Ziegler.  Ziegler alleges that she did the above, because she was trying to scare, bully, Ziegler into silence.

B.  Ziegler told Defendant Teresa Everhart and all Defendants that Defendants Mary and Dave Fulkerson were using an illegal barbeque smoker grill which was in violation of Rules and Regulations at Aztec Senior Mobile Home Estates.  Ziegler explained that it made him very sick, due to asthma, when they cooked on this grill, and filled his house with smoke.   Rules and Regulations state only gas or electric grills are permitted. The grill they were using 5 feet from Ziegler's bedroom is a direct violation of the rules.  At this point Ziegler called 911 and Fire Department came to Defendant's Mary and Dave Fulkerson's home. Defendant Teresa Everhart told Ziegler to move and quit complaining about his "good neighbors", Defendants Mary and Dave Fulkerson.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 68

Again, Defendant Teresa Everhart used intimidation, gangster-like tactics, told Ziegler he had too many cactus' on his home site and did not do anything to stop the barbequing; yet her response was that Ziegler, in retaliation, had alleged " non-approved fence". Ziegler alleges that Defendants above, did not receive any 7-day notice(s) for violations, as he would like the court to order Caritas to produce any 7-day notices issued to Mary and Dave Fulkerson. Ziegler believes they will not produce any, as none exist. This demonstrates Defendant Teresa Everhart's retaliation toward/against Ziegler.

C. Defendant's grill is 5 feet from Ziegler's bedroom window.  See Exhibit D. Defendant Teresa Everhart by not issuing a 7-day notice to Mary and Dave Fulkerson, for their loud noise, playing of country music loudly, singing, in the driveway, distracting the whole neighborhood of their peaceful enjoyment, demonstrates her bias of those breaking the rules.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 69

138. Defendants Mary and Dave Fulkerson told the Fire Department that

they have "an on-going dispute with the Faggot Peeping Tom (Ziegler)

and that they could have a charcoal grill" causing Ziegler to get

emotional upset in front of the Fire Department, as he tried to explain

the correct Rules and Regulations of barbequing at Aztec Senior Mobile

Home Estates, which they were in total violation.  Defendant's Mary

and Dave Fulkerson's statement to the Fire Department was totally

false. Ziegler started to cry and caused his heart to pound when Ziegler

had to correct the Defendants, above.  Ziegler was trying to inform

Defendant Mary and Dave Fulkerson as to the correct rules and

regulations with awful response as follows:

A. Defendants Mary Fulkerson lunged toward Ziegler stopped and yell out

very loudly, "Don't you talk to Dave you faggot".

B.  With this action Ziegler began very sad and distraught.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 70

C. The Fireman laughed at Ziegler and said "For a Grill...... you called us". Ziegler's house was full of charcoal smell, smoke, and caused Ziegler's asthma to flare up, as he could not breathe. Fireman believed Defendants Mary and Dave Fulkerson statements. Ziegler called the Battalion Commander, after the firemen left, he apologized to Ziegler, as he had the Rules and Regulations in his file, and he will testify to the false statements made by the Defendants to a State Official. He can testify in court.

139. PLEASE TAKE NOTICE UNITED STATES DISTRICT COURT, CENTRAL DIVISION, Ziegler's $1200 fence was approved by previous manager, Jody Hayes, in the year 2019 of which Ziegler has a copy of approval of which appears to have been removed from his tenant file.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 71

140. Ziegler's medical/mental condition worsened due to Defendant's Mary Fulkerson and Defendant Teresa Everhart's conspiracy against Ziegler on May 6, 2022 at 5:15 pm. Followed at 5:30 pm Ziegler approaching Defendant Teresa Everhart at the pool area, was attacked by her extreme hateful, hostile posture of which other residents seen and heard her loud bantering and Ziegler's very upsetting conversation with Defendant. Again there are witnesses to Defendant's wild bantering by Defendant Teresa Everhart.

141.      Ziegler felt disgusted, abused as a senior citizen, as worthless, un-American. and cried out, as he felt a sickness in his body. Ziegler never felt such pain, humiliation. A witness nearby asked him, "Are you ok??" Ziegler said "I'm sick to my stomach, and I felt my "count drop" how can she treat me like this. I'm a senior".

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 72

142.   The following legally recorded conversation, on May 6, 2022, at 5:15

pm, which proves to the court Negligent Infliction of Emotional

Distress.  All Defendants, each of them,  treated Ziegler as follows:

A.   Defendant Mary Fulkerson approached Defendant Teresa

Everhart, and said, "The queer peeping Tom, who has Aids, and is

still looking in my window, what are you going to about it?"

B.   Defendant Mary Fulkerson continued, "If you get Vinni (Ziegler)

upset and he raises his voice, you can write him up."

C.   Defendant Teresa Fulkerson replied, "that is good to know, I'm

working on it now!"

143.  Ziegler felt anguish, upset, and fell to the ground and cried behind the

bush, in disgrace.

144.   Ziegler was told, two witnesses heard all of this conversation between

the above Defendants.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 73

145. Defendant Teresa Everhart denies the conversation she had with Defendant Mary Fulkerson and Ziegler told her he heard the entire conversation. Ziegler questioned above Defendant Teresa Everhart as follows:

A. Ziegler asked above Defendant, "What do you mean you are working on that?"

B. As other witnesses came outside the pool, Defendant Teresa Everhart said, "I'm on my own free time get out of here now."

C. Ziegler, calmly said, "You had time for Mary Fulkerson, but not for me". Ziegler said, "This is a "Hate Crime and you keep torturing me and you know it, and it has been recorded."

D. Defendant, Teresa Everhart said, "And there's cameras in the pool area and you are being recorded and you can "get out" as she grabbed her phone and said, " Now, I'm recording YOU now."

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 74

E. Ziegler said, "You are recording me illegally according to California Law."

146.   Ziegler knew at that moment, that Defendant Teresa Everhart and Defendant Mary Fulkerson have been scheming to conspire against him. This demonstrates Defendants actions of aggression, retaliation and disrespect toward Ziegler because he is gay!

This was because they did not like Gay people and were looking for ways to write up and evict Ziegler from his home and take his home from him.    This demonstrates harassment, intolerance for others not like themselves, "Hate Crime" and violation of many LGBTQ protections of the Law as well as abusing a senior citizen, causing Ziegler extreme stress and anxiety!  This was in the "Zone of Danger" for Ziegler.

143.   Days later, after immense pain, Ziegler went to his primary doctor, and his doctor diagnosed Ziegler with PTSD and experienced a nervous breakdown. His doctor stated, "you must eliminate all this stress from your life, you are

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 75

going to die faster if this continues!" "With a Terminal Illness, all stress must be eliminated, why are they doing this to you? I will write a letter to Cease and Disses or claim you are suffering from PTSD by those causing these extreme ongoing threats causing you harm." "This is obviously a Hate Crime, and must stop!" Your neighbors, and manager sound like they are all conspiring to harm you." "Have you made a Police report?" Ziegler replied that two incidents were reported to the Morongo Sheriff and showed the doctor that the police filed the complaint as a "HATE CRIME". The doctor stated that Ziegler is suffering from anguish, fright, nervousness, grief, anxiety, and shock at how Ziegler was treated and is worried about him and was prescribed strong medication. See Exhibit A and B.

144. Ziegler told his doctor he feels humiliated by his neighbors and manager and showed him the "Seven Day Notice" and his doctor ordered a mental Health Provider.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 76

145.   Ziegler and witnesses saw firsthand, Defendants, all of them, action is

Extreme and so outrageous in the true character with extreme in degree, to go

beyond all possible bounds of decency and utterly intolerable in a civilized

Community. Restatement (second) of Torts section 46 cmt.d (1965).

146.   Ziegler alleges, in above paragraphs, Defendant Teresa Everhart entered

into an agreement, a "Hate Crime" with Defendants Birtcher Anderson and

Davis, as if they were there on May 6, 2022, by the negligence by/of all parties.

147.   Defendants, each of them, knew of their intentions toward Ziegler, there is

reckless conduct, was so extreme, and caused emotional distress to Ziegler.   Hyatt,

943 S.W. 2d at 297.

148.   Defendants, each of them, were 15 times more than malicious and

intentional;  Viehweg v Vic Tanny Intern of Missouri, Inc. 732 S.W. 2d 212, 213,

(Mo. APP. 1987).

149.   The negligent infliction of emotional distress had Ziegler seek medical help

days later, was medically diagnosed, treated, and medically significant with further

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 77

medical treatment needed.  Polk v Inroads/St. Louis Inc. 951 S.W.  2d 646, 648

(Mo. App. E. D. July 22, 1977).

150.  Intention infliction of emotional distress did occur Ziegler, believes, when

Defendants, all of them, acted abominably and/or outrageously with intent to cause

Ziegler to suffer severe emotional distress.  Snyder v Phelps 2010.

    151.  Plaintiff Ziegler believes "severe emotional distress is that which is

substantial or enduring, no reasonable person is expected to endure.  Ziegler has

    highly unpleasant reactions such as fright, grief, shame, humiliation,

embarrassment, anguish and worried about what will happen next.  Defendant

Mary Fulkerson claims, "she has a gun, always in her purse/person, fully loaded,

and doesn't hesitate to use it." Hyatt, 943 S.W. 2d at 297 of which both intensity

and duration are factors here.  28 U.S. C. section, 13466,  section 1402 (b), section

2401 (b) 2671-2680.

152.  Ziegler alleges after Defendant Dave Fulkerson after weeks in the hospital

greeted a neighbor and friend of Ziegler and said, "those "Queers" next door we

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 78

don't talk to them and you shouldn't either." Witness heard the conversation and Ziegler. Ziegler immediately felt embarrassed, anguish fright, grief and humiliated. Ziegler confronted the neighbor and the resident said, "Yes he said you are a "Queer", and told me to have nothing to do with you. Do you want to pray with me now". This demonstrating the Broadcasting which is continuing throughout the Aztec Estates.

153. On or about, in February 2022, Defendant Teresa Everhart said when Ziegler complained about the improperly installed lattice and plastic sheeting on their car at #37, she told Ziegler, "You want me to call up the District Managers again, and have a meeting with them, again???" Ziegler immediately was in shock how the Defendant looked so mad and got angrier as Ziegler couldn't talk. Ziegler felt bewildered in shock. Defendant Teresa Everhart roughly came back and stood up and shouted, "I'm not going to do that for you". Ziegler left immediately and cried walking to his home. Ziegler called the District Manager for Caritas/ Birtcher Anderson and Davis and never got a call back from either of these Defendants.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 79

154. Defendants, each of them, failed to treat Ziegler equally and fairly like Defendants Mary and Dave Fulkerson and other residents at Aztec Senior Mobile Home Estates, as written in the Mobile Home Residency Law.  See Exhibit C.

REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that This Honorable Court:

1.  Enter judgment on behalf of Plaintiff against all Defendants, "DOC" on Third Cause of Action violation of (Negligent Infliction of Emotional Distress; against all Defendants).  Gov. Cs 1601, 1602, 1603, 1604,m 1606.

2.  Award Plaintiff compensatory and punitive damages against all Defendants in amounts to be determined by the jury;

3.  Award Plaintiff Doctor bills and any other entitlements until they are made whole;

4.  Award Plaintiff reasonable attorney's fees, court cost, expenses, prejudgement interest, and post judgment interest;

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 80

5. Declare that the conduct of Defendants, all of them, is in violation of

Negligent Infliction of Emotional Distress. Gov. Cs 1601, 1602, 1603,

1604, 1606.

FOURTH CAUSE OF ACTION

( 'WHISTLE-BLOWER U.S.C. Section 463, 5 U.S.C. section

2301 w/ RETALIATION; VIOLATION OF 'HATE CRIME' VIOLATION OF

LGBTQ- FEDERAL/STATE LAWS AND YUCCA VALLEY LAWS; FALSE

PUBLICATION ORALLY/WRITTEN TO HURT PLAINTIFF CIVIL CODE

section 45.  VIOLATION OF CONSTITIONAL RIGHT 1 & 2 AND HOSTILE

LIVING CONDITIONS, LGBTQ Laws Granted).

155. Plaintiff repeats and re-alleges set forth in paragraph 1 thru 154 above and

incorporates same by reference as if more fully set forth here.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 81

156. Plaintiff realleges he became a "Whistle-blower", on or about June 20, 2021, which continued through May 6, 2022 and beyond.   All Defendants, each of them, Ziegler believes, are liable for exposing Ziegler to other Defendants violating his "Whistle-blower" protections USCSs 463 with requirement to comply with laws protecting equal housing opportunity and providing "Whistle-blower" protections.

157. Nothing in this act shall  be construed as exempting the Defendants, each of them, from requirements applicable with respect to executive policies to provide equal housing protection (including pursuant to the provisions in section 2302 (b)(1) of Title 5, United States Code and the notification and Federal Housing Anti-discrimination and Retaliation Act of 2002. (Public law 107-174) 5 USC 2301 NOTE).

158. Defendants Caritas Corporation, Birtcher Anderson and Davis and Managers and Teresa Everhart, and rank and file employees are to provide "Whistle-blower" protections for the Plaintiff (including pursuant to the provisions in section 2303

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMEAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 82

(b)(8) and (9) of such title and the notification and Federal Housing Anti-

Discrimination and Retaliation Act of 2002, 5 USC section 2301 Note. (Nov. 25,

2002, P.L. 107-296, TITLE VIII, subtitle H, section 883, 116 stat.2247. "This

Act" is referred to in this section is Act Nov. 25, 2002, P.L. 107-296 plaintiff

believes does not immune the all Defendants, each of them ,purpose and scope.

Moreover, Ziegler, now as the "Whistle-blower" is directly chiefly, if not

exclusively, against all Defendants who otherwise be protected by the immunity

statue, and to confer immunity for all Defendants, each of them, violating the

"Whistle-blower" statue would render the protection afforded by the "Whistle-

blower" Statue largely illusory.  Shoemaker vs. Myers (1992, Cal. App. 3d

District) 2 Cal. App, 4th 1407, 4 Cal Rptr. 2d 203, 1992, Cal App. Lexis 85, review

denied (1992, Cal) 1992 Cal. Levis 1808.

159.  Here, as written in Plaintiff "FAC", complaint, Ziegler became a "Whistle-

blower" on or about June 2021, informing rank and file supervisors of Defendant

Caritas Corporation and Birtcher Anderson and Davis,of numerous rules being

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 83

broken daily by Defendants Mary and Dave Fulkerson, had extreme effect on Ziegler and other neighbors ability to enjoy their peaceful enjoyment. This ignorance of the Rules and Regulations by the Defendants only caused other residents to question why they must follow these rules. Mary and Dave Fulkerson willfully upgraded to extreme emotional distress for Ziegler by demonstrating the "Hate Crime", they were committing. Defendant Teresa Everhart encouraged such distress by her action(s). She was/is totally and willfully guilty of her lack of action(s). Yet she conspired with all Defendants to harm Ziegler by any and all of her actions.

160. Ziegler fears any and all reprisal, termination of his lease, eviction, harm to his person, his property, his neighbors, as he feels Defendants will again retaliate against him, as of this filing. He was already harmed by the abuse of power, which each Defendant, all of them, have imposed upon him.

161. Ziegler alleges, Defendants, each of them, executed specific purpose to deprive Plaintiff of his Civil Rights, Rights as a homeowner, ownership of his

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 84

mobile home, because of his sexual orientation.   Defendants wanted "the problem, the Whistle-blower, and gay man," to go away for their benefit.  Plaintiff claims, Defendants, all wanted no gay people living at Aztec Senior Mobile Home Estates. (A Gay-free environment), and Ziegler felt he was the target.

162.  Ziegler's believes and prays to the court the evidence support the above findings with multiple witnesses of specific intent sufficient to establishing that all Defendants, each of them, violated  the "Whistle-blower" Act w/ retaliation; violation of a "Hate Crime" status of Law; violation of Constitutional Right 1 & 2 and violation LGBTQ Laws with Hostile Senior Living conditions, against Ziegler. This was done for Defendants, each of them, wants a "Gay Free Zone" Mobile Home Park and  proclaimed, announced proudly and loud, "I'm A Trumper", and "do not want to live with gays", as a warning to other Senior Gay residents not to complain or they will be evicted by such awful extreme  measures.

163.  The Defendants, each of them, had actual awareness they were violating Plaintiff's rights, Federal Law, State Law, to engage in illegal activity.  This

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 85

followed by aggravating factors for punishment against Ziegler created the environment for eviction which was "intentional", "apparentability", "selective eviction", and punishment to take away the Plaintiff's home by eviction.

164.  Ziegler believes no person, not even the Defendants, each of them, shall by force or threat of force, willfully injure, intimidate, interfere with, oppress, Ziegler in the free exercise or enjoyment of any right or priviledge secured to Ziegler by the Constitution of the United States and the Laws of State of California, and Town of Yucca Valley Laws, and laws granted by the United States Government.

165.  Defendants, each of them, acted with omission, in punishment of his lifestyle, did so by creating a hostile housing environment, which leads to a 7-day notice of "eviction".  This has given Ziegler rise to cause of action against all Defendants, each of them.

REQUEST FOR RELIEF

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 86

WHEREFORE, Plaintiff respectfully request that this Honorable Court:

1. Enter Judgement on behalf of Plaintiff against all Defendants "DOC" on the FORTH SAUSE OF ACTION violation of the "Whistle-blower U.S.C section 463, 5 USC 2301, w/Retaliation' violation of the "Hate Crime" violation of LGBTQ Federal and State and Town of Yucca Valley Laws; False Publication orally/written to hurt Plaintiff Civil Code 845; Violation of Constitutional Rights 1 and 2 and Hostile Living Conditions.

2. Award Plaintiff compensatory and Punitive damages against all Defendants, each of them, to be determined by the jury;

3. Award Plaintiff reasonable attorney's fees, if warranted, court costs, plaintiff's expenses, pre-judgement interest and post judgement interest;

4. Declare that the conduct of the Defendants, all of them, is in violation of the "Whistle-blower" USC 463, 5 USC 2301 w/Retaliation; violation of a "Hate Crime", violations of LGBTQ protective laws, State and Federal, Town of Yucca Valley Law, False publication to hurt Plaintiff, Civil Code

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 87

section 45; violation of Constitutional Rights 1 and 2 and Hostile Living

Conditions.

## FIFTH CAUSE OF ACTION

( CAC 3600,3601, 3700 Conspiracy  Against Plaintiff; Corruption or Fraud Gov.

code section 818 18; U.S.C section 6.18,37 Conspiracy- membership in the

agreement; 6.18, 371 K Conspiracy Acts and Statement of Co-conspiration)s.

166. Plaintiff repeats and Re alleged set forth in paragraphs 1 through 165 above

and incorporates same by reference as if more fully set forth here.

167. Plaintiff believes the Defendants in this "FAC" are Defendants Teresa

Everhart and Mary Fulkerson and Dave Fulkerson entered into agreement by

definition in Common Law to commit an unlawful act or to accomplish the lawful

end by unlawful means on May 6, 2022, at 5:15 pm, of which all parties involved

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 88

have knowledge of the conspiracy and participated in the conspiracy in some way intent to jointly commit the crimes of "Hate Crime/discrimination against Ziegler, of which Defendants encouraged and approved the commission, even though they were not all present.

168. Furthermore, a bilateral approach occurred and developed months before evidence is shown by examining the evidence from each party Defendants understanding of the situation, of which is intended to do the act, the conspiracy in question directly against Ziegler.   A specific intent proves Defendants, each of them, consequences through their actions, motives, which leads to an eviction of Ziegler through a 7-day notice.  (18 USC, 371, b. 18, 37 Conspiracy-Membership in the Agreement; 6.18. 371 Conspiracy Acts and Statements of Co-conspirators).

169. On or about May 6, 2022, at 5:15 pm, with evidence shows Defendants, each of them, planned the objective of the conspiracy with a conversation that Defendants Mary and Dave Fulkerson had with Defendant Teresa Everhart. Plaintiff overheard this conversation, and was recorded legally.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 89

170.  Plaintiff repeats and realleges set forth here in paragraphs 1 through 165 above and incorporates same by reference as if more fully set forth here.

171.  Plaintiff has knowledge Defendants, each of them, obstructed, crafted, trickery, and dishonest means by declaring a fake crime by declaring Ziegler is a "peeping Tom".  Defendants, each of them, are a party to, or member of the group conspiracy goal of evicting Ziegler of which Ziegler never committed any "Peeping Tom" offense.

172.  Finally, all rank and file employees joined in the agreement and/or conspiracy knowing of the objective to defraud Ziegler, painting him as a "Queer with Aids" with their end result to issue him a false 7-day notice.

    A.  The Rank and File Employee is Lori Flannery, from Birtcher Anderson and Davis.

173.  In addition to above Plaintiff alleges the existence of such agreement of conspiracy to evict Ziegler performed an overt act (7-day notice) in order to further the, their, objective.  Brides v. United States 346 U.S. at 215-244, Fraud is

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 90

1    essential element of offense, United States v Vazquez, 319 F. 2d 381, 384 (3d. cir.

2    1963).

3

4    174.  Defendants, each of them, reasonable doubt in some way, (6.1837C) and/or

5    manner arrived at the same type of agreement, achieved their goal shortly after

6    May 6, 2022 when Ziegler received a 7-day notice in his mailbox.  Each Defendant

7    having a mutual understanding of its implication, A meeting of the minds, in-

8

9    person, text mails, e-mails, phone conversations, all to accomplish their common

10   goal, to violate a Fair Housing Act, to lead to eviction of Ziegler and take away his

11

12   home through court action.

13

14   175.  According to the evidence, Ziegler believes reasonable inferences are drawn

15   from Defendants, each of them, agree Ziegler is a "Queer with AIDS and a faggot

16   Peeping Tom".  Surrounded by a scheme, leading to Ziegler's eviction and, with

17

18   related "Facts and Circumstances" which prove that activities of Defendants, each

19   of them, in a venture, has been carried out as the result of their preconceived

20

21

22

23   CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
     WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
24   46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
     OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
     DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
25   "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
     LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
26   LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
     CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
27   AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
     1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
28   HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
     (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 91

agreement, unanimously, lead to Ziegler being evicted. No police report was ever made about Ziegler, as it is a totally false accusation.

See 20'Malley et al, supra. Section 31.4 see e.q. Iannell v. United States, 420 U. S. 770, 777 N. 10 (1975); United States v. Kelly, 892 F. 2d. 255, 258 (3d Cir. 1989).

176. For 5 months, Defendants did not call Police alleging Ziegler was/is a Peeping Tom shown by the evidence above. They schemed to drive Ziegler to the point of a nervous breakdown confronting the Defendants, putting Ziegler in a nervous state, to issue a 7-day notice. This is unbelievable to a reasonable person living in a senior housing complex to comprehend. This is within the breath of this conspiracy, seditionous act dedicated to suppress the truth of the events of May 6, 2022.

177. Defendants, all of them, subvert the evidence by refusal to meet with Ziegler.

178. Plaintiff alleges 6.18.371D (Conspiracy membership in the agreement). Each of them are in a planned conspiracy against Ziegler. Rank and file employee Lori Flannery entered into an agreement through texts, e-mails, telephone to issue a 7-

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 92

day notice with intent to defraud Ziegler with false information, claiming Ziegler is a" Queer, Faggot Peeping Tom with Aids". Rank and file employees knew other Defendants, each of them, knew the goal to evict Ziegler, and voluntarily joined the other Defendants, each of them, to fraud Ziegler out of his home, by ignoring the facts! Defendants, each of them, joined together with other alleged conspirators (to be seen in court), toward Ziegler to take the final goals and objectives to take Plaintiff's home away from him.

179. With direct evidence and circumstantial evidence of Defendants, each of them, with rank and file employees proves conspiracy as recordings, videos, e-mails will show.

180. Plaintiff believes on May 6, 2022, at 5:15 pm, Defendants, all of them, have met the elements of a conspiracy as follows:

    A. Knowingly, by the above facts

    B. Willfully conspiring by their lack of action to stop conspiracy

    C. Agreement made among themselves, each of them.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 93

181.  In furtherance of above conspiracy and agreement the afore-mentioned Defendants, each of them, and rank and file employees, engaged in Fraudulent misrepresentations, omissions, and concealment of facts, acts of a cover-up and statements to many others, about Ziegler, "He's Queer, has Aids, and is a Faggot Peeping Tom", for the benefit of all Defendants, all of them.  The Defendants, Mary and Dave Fulkerson are trying to have Ziegler evicted from his home, so they can continue to break numerous Rules and Regulations of the Aztec Senior Mobile Home Estates, and so they will remain in good standing with Defendants Teresa Everhart, Birtcher Anderson Davis and Caritas Corporation.  Defendant Caritas with the eviction of Ziegler, will gain his mobile home if he does not sell his home in the required time period.  Birtcher Anderson Davis will make a "example" out of Ziegler, so other residents will be afraid to complain about the numerous violations of the Rules and Regulations which Dave and Mary Fulkerson, Teresa Everhart continue to violate . All the above is a conspiracy to knowingly harm Ziegler.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 94

182.   Ziegler alleges that these acts of conspiracy against Ziegler constituted malicious conduct which was carried on by said Defendants, each of them, and Rank and File Employees, who willfully and consciously disregarded Plaintiff's rights and health with the intention of misappropriating, taking away Plaintiff' home or otherwise causing injury and was despicable conduct that subjected Ziegler to a cruel and unjust hardship which justifies an award of exemplary and punitive damages.

183. Plaintiff believes Punitive damages should be awarded against all Defendants to punish them and deter them, all Defendants, from committing such wrongful acts against Ziegler and all future and current residents.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Honorable Court:

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 95

1. Enter judgement on behalf of the Plaintiff against all Defendants "DOC" on Fifth Cause of Action CAC 3600, 3601, 3700 Conspiracy against Plaintiff; Corruption or Fraud Gov. Code section 818, 18 USC section 371;; 6.18, 37 Conspiracy-Membership in the Agreement; 6.18, 371K Conspiracy Acts and Statements o Co-co-conspirations.

2. That the Court enter an order for restitution and restitutionary for damages of Fraud.

3. Award Plaintiff's compensatory and punitive damages against all Defendants in amounts to be determined by the jury;

4. Award Plaintiffs reasonable attorney fees, court costs, Plaintiffs expenses prejudgement interest, and  post judgement interest;

5. Declare that the conduct of Defendants, each of them,  is in violation CAC 3600, 3601, 3700 Conspiracy against Plaintiff;  corruption or Fraud Gov Code  section  818 18; USC  371 6.1837 Conspiracy-Membership in the Agreement;  6.18. 371K Conspiracy Acts and Statements of co-conspirations.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 96

SIXTH CAUSE OF ACTION

(Cal. CC 1714 Reasonable Steps to Prevent Crime; 798.84 et. seq

Breach the covenant of a "Hate Crime": CACI No.1005 Negligent or intentional

criminal conduct of 3 party (with conspiracy CACI No.005; CAC005; CAC 3,

3600,36001, 3700 Conspiracy) against Plaintiff.)

184.  Plaintiff repeats and re-alleges, set forth in paragraphs 1 through 183 and

incorporates same as references if more fully set forth here.

185.  Plaintiff alleges Defendants, each of them, should have known about the

probability of criminal activity and failed to take reasonable steps to protect

Ziegler. (Ann M. v Pacific Plaza Shopping Center, 6 Cal. 4th 666 (1993).

Defendant Mary Fulkerson has threatened that she has a gun and won't hesitate to

use it.  Ziegler wonders if her conduct was given a 7-day notice for threatening

conduct in the complex.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 97

186. Plaintiff alleges Defendants, each of them, should have determined probability of harm to Ziegler and did not prevent and mitigate risk of harm. (Vasquez v. Residential Investments Inc. 118 Cal APP. 4th 269, 280 (2004).

187. Plaintiff alleges all Defendants, each of them, breached the covenant of Quiet Enjoyment. (Cal. Civil Code 7978.84 et seq.).

188. Plaintiff alleges all Defendants, each of them, did not take reasonable acts to investigate all "Hate Crimes" against the Plaintiff. (Cal CC 1714) with Negligent or Intentional Criminal Conduct of a 3rd Party. Defendant Everhart, was well aware of the "Hate Crime" but did nothing to stop it.    Mary and Dave Fulkerson joined her in conspiracy.   (CAC1 no. 1005, CAC 3600, 3601, 3700) Conspiracy against Ziegler.

Four elements are present to establish a Prima Facie case of negligence as follows:

A. Duty of Defendant Teresa Everhart to protect Ziegler in a manager-tenant relationship

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 98

B. Defendant Teresa Everhart breached the duty which resulted in injury to Ziegler by not stopping the "Hate Crime" from continuing.

C. Defendant Teresa Everhart could of taken steps to prevent May 6, 2022 incident by not yelling and going crazy, by not telling him, "I'm not doing nothing for you", which resulted in Ziegler having PTSD.

D.    All Defendants, each of them, knew about the issues and did not act but instead created a conspiracy together, to issue a 7 day notice, this gross negligence led to a "Hate Crime" to Ziegler and other undue harm to Ziegler and his reputation.

189. Plaintiff repeats and re-alleges set forth in paragraphs 136 through 151, above, and incorporates same as reference as if above if more full set forth here.

190. Plaintiff alleges above refusal to investigate, "Hate Crime" and discrimination, will continue to do business as usual, have painted Ziegler as a nuisance, difficult, a trouble-maker, a gay man, who needs to be evicted.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION- "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 99

191. Plaintiff alleges Defendant Teresa Everhart's reaction to Ziegler on May 6, 2022 at 5:30 pm was her opportunity to discuss with him, by raising her voice first, her evil, hatred, not caring about the law, shouting/ talking over/ above Ziegler, caused Ziegler extreme shock and emotional distress. Ziegler believes this was intolerable for a manager of a senior complex. This is not acceptable talk by a manager younger than Ziegler.

192. Plaintiff repeats and re-alleges set forth in paragraphs 103 through 121 and 136 -151 above and incorporates same as reference as if above if more full set forth here.

193. Punitive damages should be awarded against all Defendants to punish them and deter them from committing such wrongful and malicious acts in the future. Ziegler alleges no one should go through what he has suffered. Hate crimes are still against the law and Non–profits have a duty to correct and end all, "Hate Crimes" under their supervision and control by issuing 7 days notices to all violators. See Exhibits C and D.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 100

1

2

3

4                                    PRAYER FOR RELIEF

5        WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

6

7    1.  Enter judgement on behalf of Plaintiff against all Defendants, "DOC", on

8        Sixth Cause of Action Cal CC  1714 Reasonable Steps to Prevent a Crime;

9        798.84 ct. seq Breach the Covenant of a "Hate Crime" ;   CAC1 NO 1005

10

11       Negligent or Intentional Criminal Conduct of 3 part (with conspiracy

12       CAC1 NO. 1005; CAC 3600, 3601 3700, Conspiracy against Plaintiff;

13

14   2.  That the court enter an order for restitution and of restitutionary for

15       damages of Fraud;

16

17   3.  Award Plaintiff compensatory and punitive damages against all

18       Defendants in amounts to be determined by the jury;

19

20

21

22

23   CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ.
     WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
     46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
24   OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
     DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S C 2301 WITH RETALIATION-
25   "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
     LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
26   LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
     CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
27   AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
     1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
28   HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
     (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 101

4.    Award Plaintiff reasonable attorney's fees, court costs.  Plaintiff's

expenses as a "Pro Per" as needed, pre-judgement interest; and post

judgement interest;

5.    Declare that the conduct of Defendants, all of them, is in violation of Cal

CC   1714 Reasonable Steps to Prevent a Crime:  798.84 ct seq Breach the

covenant of a "Hate Crime" CAC1 no. 1605 Negligent or intentional

criminal conduct of 3rd party (with Conspiracy CAC1 No. l 1005; CAC

3600, 3601, 3700 Conspiracy) Against Plaintiff.

SEVENTH CAUSE OF ACTION

(AGE AND DISABILITY AND RETALIATION AND SEX

DISCRIMINATION Title VII and Senior Abuse.)

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 102

194.  Plaintiff repeats and alleges set forth in paragraphs 1 through 193 and
incorporates same by reference as if more fully se and forth here.

195.  Plaintiff alleges Defendants, each of them, discriminated against Ziegler due
to his age and his disability.   He is entitled to be free from harassment and
discrimination.

196.  Plaintiff alleges for the past ten months, Defendants, each of them, conduct
was arbitrary and capricious, without notice intended to deprive Ziegler of his
rights by falsely accusing him.    Ziegler, disabled and Senior, with evil motive, or
with reckless or callous indifference by issuing a 7-day notice, done by conspiracy.

197.   Plaintiff believes that when a senior endures year after year  abuse to
overcome "Hate Crimes", he is living in a Senior Park, run by a Non-profit
Organization, such as Caritas Corporation, should be free of such hatred, as many
seniors use this park as a "final" living home environment.   Defendants Mary and

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 103

1  Dave Fulkerson have no respect for this living environment as demonstrated in this

2

3  case entire and should be living in a Family Park.

4  198.  Defendant Teresa Everhart should not be managing a Senior Park, when

5  obviously, she has totally contrary views to senior living conditions.    Many

6

7  residents have expressed their feelings and beliefs about her.    Many residents have

8  had confrontations with Defendant Teresa Everhart.  Ziegler became a "Whistle-

9

10  blower" and Defendant Teresa Everhart has objected to this and in turn, total

11  retaliation with conspiracy with all Defendants.

12  199.   Plaintiff alleges that Ziegler, exceeding in age to Defendants Mary

13

14  Fulkerson, Teresa Everhart, and other Rank and File Defendants, do not respect

15  him and have demonstrated in this complaint, all  (Defendants) bias.

16  200.  Plaintiff Ziegler has a terminal illness of which he has informed Defendants,

17

18  and the past 11 months, due to the conspiratory treatment and fear of Eviction,

19  have caused Ziegler to seek immediate Medical and Mental treatment.  None of the

20

21  past months treatment of Ziegler by all the Defendants, has not improved, but

22

23  CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE

24  46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-

25  "WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE

26  LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN

27  AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A

28  HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 104

rather is detrimental to his current health conditions.   Accordingly, punitive damages should be awarded against each Defendant, all of them, to punish them for his decline in health.  This punishment must be done to deter all Defendants, each and all of them, from such treatment of Senior/Disabled/Gay residents in the future.

201. On two occasions, Defendant Teresa Everhart, abused Ziegler, by saying, "You want me to call up the District Managers to talk to" YOU." "I'M NOT GOING TO DO ANYTHING FOR YOU!".  "YOU JUST WANT TO LOOK OVER AT MARY AND DAVE FULKERSONS."  This was disrespectful, humiliating, and totally uncalled for, in what should be a civil, senior environment. She was again accusing Ziegler of being a "Peeping Tom" with absolutely no proof of any kind. Ziegler absolutely has NO interest in looking into Defendants windows or any other resident.  Ziegler has been diagnosed "Legally blind" by his eye doctor for over 30 years with many laser operations in both eyes.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 105

202.  Plaintiff alleges Defendant Teresa Everhart called and or/visited Ziegler's neighbors after May 6, 2022 conspiracy against Ziegler, continually intimidated him by calling upon his neighbors, which in turn caused his neighbors to also feel intimidated,   The neighbors informed Ziegler, who said, they did not like Defendant Everhart's gangster-like tactics.   When these neighbors praised Ziegler as good, caring, helpful neighbor, she said she only wanted to hear if Ziegler was looking into windows, a trouble-maker, and that he goes about the neighborhood shouting and yelling at people.  Yet when they mentioned unit #37 and all the violations to the Rules and Regulations, she said she did not want to hear only negativity about Ziegler.  Also did they like homosexuals living in the community? Here is a list of those violations, the other neighbors stated, are as follows:

A.  Parking over 400 times in the fire lane by cars owned by Defendant's Mary and Dave Fulkerson,( and their relatives who are not residents), who live continously in their building for nearly two years, including a child.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 106

B. Having intoxication driven loud parties on their front porch, disturbing all within the whole block while yelling at people driving by.

C. Three cars parked in their driveway, when Rules and Regulations, state, no more than two vehicles.  Vehicles parked extremely close to meters, which could cause explosion and dangerous conditions because there are mostly three vehicles parked in their carport daily.  Vehicles are moved each morning to hide from manager how many are there on a regular basis.

D. Calling Ziegler names, such as "Faggot, queer, Peeping Tom, which violates the peaceful, respectful, conditions and all resident's peaceful enjoyment.

E. A violation of bad "Conduct" as listed in Rules and Regulations of Aztec Senior Mobile Home Estates is being continually violated by #37, Defendants Mary and Dave Fulkerson and Defendant Teresa Everhart.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 107

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1.  Enter judgement on behalf of the Plaintiff against all Defendants, "DOC", of Age and Disability and Retaliation and Sex Discrimination Title VII and Senior Abuse;

2.  Award Plaintiff compensatory and punitive damages against all Defendants in amounts to be determined by the jury;

3.  Award Plaintiff of any other entitlements until they are made whole;

4.  Award Plaintiff's reasonable attorney fees, court cost, expenses, pre-judgement interest and post judgement interest;

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 108

5. Declare that the conduct of the Defendants, each of them, is in violation of the Age and Disability and Retaliation and Sex Discrimination Laws, Title VII and Senior Abuse.

PRAYER FOR FINAL RELIEF

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 109

WHEREFORE, Plaintiff respectfully requests and prays that this Honorable Court enter judgment in his favor against all Defendants, all of them, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants, all of them, complained of here, violates the laws of the United States and the State of California and the Town of Yucca Valley, California, LGBTQ Laws and each cause of action, here within;

B. An injunction and order restraining Defendants, all of them, from engaging in such unlawful conduct with a Cease and Desist Order;

C. An order directing Defendants, Caritas Corporation to eliminate Birtcher Anderson Davis from managing Aztec Senior Mobile Home Estates for violating discriminatory and harassing treatment. Senior abuse, violating LGBTQ Laws of Federal and State and City of Yucca Valley, California. Through their failure to take action, that is necessary to ensure that these

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS 2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 110

unlawful housing practices do not continue to damage Plaintiff and other

residents from having a Peaceful Living Environment.

D.    An order directing Defendants Mary and Dave Fulkerson to stop

unlawful conduct, discriminatory and harassing treatment.  Other unlawful

conduct, as stated in the Rules and Regulations of the Aztec Senior Mobile

Home Estates, such as loud defaming conversations aimed at Ziegler,

eliminate Barbequing on their driveway, outside Ziegler's windows, which

cause Plaintiff health concerns.  Defendants Mary and Dave Fulkerson must

follow all Rules and Regulations of the Aztec Senior Mobile Home Estates

in full, no exceptions!  Secure rattling noise of lattice on improperly installed

on carport structure, as well as removal of garbage bag on evaporative

cooler, to have a cover secured properly and maintain and water bushes,

plants.  Not interfere with Ziegler's and other resident's peaceful enjoyment

and personal use/ life of their home.

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 111

E. An award in an amount to be determined at trial, due to failure to issue a keycard/ access to all amenities, and prorate Lot rent, due to loss of all use of amenities.   Defendant Teresa Everhart, refuses to provide such access to Ziegler when requested of her, Birtcher Anderson and Davis, Lori Flannery, and others.  This Lock-out is exemplary, demonstrates treatment by all Defendants toward Ziegler. See Exhibit C.

F.   An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic harm;

G.   Award damages in the amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of peaceful enjoyment of his home.

H.   Award damages in an amount to be determined at trial, plus pre-judgement interest but not limited to, compensation for Plaintiff's mental

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S. 1981, CALIFORNIA CIVIL RIGHTS  2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE 818 18, USC 371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT A CRIME798.84 CT SEQ. BREACH OF COVENANT OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 112

anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, against all Defendants, each of them.

I.   Award damages for any and all monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus pre-judgment interest against all Defendants, each of them;

J.   Award of punitive and compensatory damages against all Defendants, each of them, and post judgment interest;

K.   An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorney's fees to the fullest extent permitted by law;

L.   Plaintiff requests an award of $300,000,000.00 or to be determined by jury on all issues of facts and   damages stated herein.

M.   Such other and further relief as the Court may deem just and proper;

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C. 1601 1602, 1603, 1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 113

1

JURY DEMAND

2

Plaintiff hereby demands a trial by jury on all issues of fact and damages

3

4

stated herein.

5

6

7

DATED: July 21, 2022

8

9

10

Respectfully submitted,

11

12

*Vincent W. Ziegler*

13

14

VINCENT W. ZIEGIER

15

16

17

18

19

20

21

22

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
23
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1) CAC 1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
24
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601 1602, 1603, 1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION-
25
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS, 1 AND 2HOSTILE
26
LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
27
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
28
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 114

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# EXHIBIT     A

23  CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
24  46, 44,558,563,577 (1)CAC  1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
25  DISTRESS GOV. C.  1601, 1602 ,1603 ,1604, 1606U.S.C. 463, 5 U.S.C  2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
26  LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS,        1 AND
2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
27  CORRUPTION/FRAUDGOV. CODE   818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
28  1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 64

Letter by Jessica Palacios, MA on 5/12/2022

 **EISENHOWER HEALTH**

N. PALM CANYON PRIMARY CARE CLINIC
1401 NORTH PALM CANYON DRIVE
PALM SPRINGS CA 92262-4434
Phone: 760-837-8366

May 12, 2022

Patient:        **Vincent William Ziegler**
Date of Birth: **10/15/1958**

To Whom it May Concern:

Vincent Ziegler is a current patient of my practice. This letter is being written at the request of Mr Ziegler as notification that due to his living situation he is under significant stress which is affecting his health including but not limited to increased anxiety, insomnia and elevated blood pressure.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Alex del Rosario, MD

CC:
No Recipients

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# EXHIBIT     B

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ.
WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE
46, 44,558,563,577 (1)CAC  1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND
OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL
DISTRESS GOV. C.  1601, 1602 ,1603 ,1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION-
"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE
LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS,       1 AND
2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF;
CORRUPTION/FRAUDGOV. CODE   818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN
AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC
1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A
HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY
(WITH CONSPIRACY) CACI 3700 CONSPIRACY - 66

## Detailed History for Police Inc# #YV221380069 As of 6/01/2022 09:46:19

Priority:3 Type:COUNTR - COUNTER RPT
Location:AZTEC MHP #38, YVY at 7425 CHURCH ST #38, YVY
LocCross:btwn PIMA TRL and PIMA TRL

| Created: | 05/18/2022 14:41:30 | DC49 | |
|----------|---------------------|------|--|
| Entered: | 05/18/2022 14:48:38 | DC49 | |
| Dispatch: | 05/18/2022 15:09:04 | DC04 | |
| Enroute: | 05/18/2022 15:09:04 | DC04 | |
| Onscene: | 05/18/2022 15:09:04 | DC04 | |
| Closed: | 05/18/2022 15:36:44 | MMBP06 | |

IC: PrimeUnit:9DESK1 Dispo:NAT Type:COUNTR - COUNTER RPT
Jur:YV Group:YV Squad:YV1 RptDist:YV013  ☐ Detail

| | | |
|--|--|--|
| 14:41:30pdt | CREATE | Location:AZTEC MHP #38, YVY Type:COUNTR Inf/Name:ZIEGLER,VINCENT InfAdd:MORONGO STATION, JOT Phone:760/620-2007 Group:YV RD:YV013 TypeDesc:COUNTER RPT LocDesc:at 7425 CHURCH ST #38, YVY LocCross:btwn PIMA TRL and PIMA TRL Priority:3 Response:1PAT Jur:YV LocType:C RPCont:I GeoLong:-116.436477 GeoLat:34.117634 |
| 14:48:38 | ENTRY | Text:RP IS REQUESTING CTC AT STATION, 97 IN THE LOBBY // REF ONGOING HARASSMENT BY NEIGH |
| 14:48:38 | -PREMIS | Text:PPR, GAT |
| 14:48:43 | -SELECT | |
| 14:48:46 | HOLD | |
| 14:48:52 | LOGM | Message:032205182148009013 MessageType:HTML Received:05/18/2022 14:44:58 Text:CHL FOR #38 |
| 14:49:10 | NOMORE | |
| 15:09:04 | DISPOS | 9DESK1 Location:19 Operator:H8342 OperNames:CORDOVA. |
| 15:09:04 | -PRIU | 9DESK1 |
| 15:20:01 | CONTCT | 9DESK1 Contact:0 |
| 15:36:44 | *CLEAR | 9DESK1 Dispo:NAT Text:INFO GIVEN ON CIV AND R/O. HATE CRIME AND 422 UNF. ONGOING 415V DISPUTE BETWEEN NEIGHBOR AND TRAILER PARK MANAGER WHO IS TRYING TO GET R/P EVICTED. R |
| 15:36:44 | -CLEAR | |
| 15:36:44 | *CLOSE | |

CONTACT INFO:

| Inf/Name | Phone | InfAdd | RPCont | Language | HBD/HS | RPArmed |
|----------|-------|--------|--------|----------|--------|---------|
| ZIEGLER,VINCENT | 760/620-2007 | MORONGO STATION, JOT | I | | | |

## Detailed History for Police Inc# #YV220060025 As of 6/01/2022 09:45:34

Priority:3 Type:415N - NEIGHBORS
Location:7425 CHURCH ST #38, YVY btwn PIMA TRL and PUEBLO TRL

| | | |
|---|---|---|
| Created: | 01/06/2022 08:55:05 | DC46 |
| Entered: | 01/06/2022 08:56:35 | DC46 |
| Dispatch: | 01/06/2022 09:39:36 | DC04 |
| Enroute: | 01/06/2022 09:39:36 | DC04 |
| Onscene: | 01/06/2022 09:42:58 | MYVX04 |
| Control: | 01/06/2022 09:49:00 | DC04 |
| Closed: | 01/06/2022 10:04:44 | MYVX04 |

IC:  PrimeUnit:23P22 Dispo:CIV Type:415N - NEIGHBORS
Jur:YV Group:YV Squad Area:YV1 RptDist:YV013  ☐ Detail

| | | |
|---|---|---|
| 08:55:05pst | CREATE | Location:7425 CHURCH ST #38, YVY Type:415N Inf/Name:ZIEGLER,VINCENT Phone:760/620-2007 Group:YV RD:YV013 TypeDesc:NEIGHBORS LocDesc:btwn PIMA TRL and PUEBLO TRL Priority:2 Response:1PAT Jur:YV LocType:S RPCont:Y GeoLong:-116.436477 GeoLat:34.117634 |
| 08:56:35 | ENTRY | Urgency:None-->R Text:RP REQS DEPS TO LOC TO RPT HARASSMENT BY NEIGHBORS. NEG WPNS IN RESD, NEG HBD, HS. |
| 08:56:35 | -SELECT | |
| 08:56:35 | -PREMIS | Text:PPR, GAT |
| 08:56:41 | HOLD | |
| 08:56:42 | LOGM | Message:032201061656005014 MessageType:XML Received:01/06/2022 08:56:38 Text:CHL |
| 08:56:50 | LOGM | Message:032201061656005015 MessageType:XML Received:01/06/2022 08:56:44 Text:GAT |
| 08:56:56 | CHANGE | Priority:2-->3 |
| 08:56:58 | NOMORE | |
| 09:08:27 | HOLD | |
| 09:39:36 | DISPER | 23P22 Operator:H6866 OperNames:MILLER,I |
| 09:39:36 | -PRIU | 23P22 |
| 09:39:37 | HOLD | |
| 09:42:58 | *ONSCN | 23P22 |
| 09:49:00 | OK | 23P22 |
| 10:04:12 | *OK | 23P22 |
| 10:04:44 | *CLEAR | 23P22 Dispo:CIV Text:CIVIL MATTER NEIGHBORS IN #37 HARASSING #38 OVER MULTIPLE ISSUES INCLUDING THEIR SEXUAL ORIENTATION. RPS ADVISED OF RO PROCESS C4 |
| 10:04:44 | -CLEAR | |
| 10:04:44 | *CLOSE | |

CONTACT INFO:

| Inf/Name | Phone | InfAdd | RPCont | Language | HBD/HS | RPArmed |
|---|---|---|---|---|---|---|
| ZIEGLER,VINCENT | 760/620-2007 | | Y | | | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT     C

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1)CAC  1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601, 1602 ,1603 ,1604, 1606U.S.C. 463, 5 U.S.C 2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC 45VIOLATION OF CONSTITUTIONAL RIGHTS,      1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 67

# 2018

## California

# Mobilehome

# Residency Law

## with
## Other Selected Laws Governing
## Mobilehome and RV Park Residency
## &
## Frequently Asked Questions

[Senate seal]

Compliments of the
**California State Senate**
**Select Committee on Manufactured Home Communities**

# 2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

## INTRODUCTION

Most of the provisions of the California Mobilehome Residency Law (MRL) were enacted piecemeal over a number of years and eventually codified under Chapter 2.5 of the Civil Code in 1978.  Since 1978, a number of sections have been amended and others added to the Code.  The MRL is divided into nine Articles, by subject, as indicated in the accompanying Table of Contents.

The Mobilehome Residency Law, like provisions of conventional landlord-tenant law, are enforced by the courts; that is, the disputing parties must enforce the MRL against one another in a court of law.  The State Department of Housing and Community Development does not have authority to enforce these Civil Code provisions.  For example, a park owner must utilize an unlawful detainer procedure in a court to evict a homeowner for non-payment of rent or failure to abide by reasonable park rules.  By the same token, a manufactured home owner must bring legal action, in court, to enforce a notice or other MRL requirement, or obtain an injunction, if the management will not otherwise abide by the MRL.

Other selected laws not part of the MRL but related to park residency are included in this handbook.  These include the Recreational Vehicle Park Occupancy Law, first enacted in 1979, which governs tenancies in RV parks.  The RV Park Occupancy Law was substantially revised in 1992, dividing it into seven Articles.

Also enclosed are relevant laws on mobilehome resale disclosure, park emergency preparedness plans, mobilehome park polling places, registration and titles, and traffic enforcement in mobilehome parks.

For the 2018 edition, there are two new amendment to the Mobilehome Residency Law (MRL).  (See Civil Code §798.28, 798.34, 799.9 and Health & Safety §18107).  Legislation of significance signed by the governor not amending the MRL include SB 136 (Leyva), and SB 329 (Leyva).  2017 was the first year of the implementation of AB 587, Mobilehome Registration Fee and Tax Waiver Program. The fee waiver application and instructions are included at the end of this booklet.  Mobilehome owners can get more information at RegisterYourMobilehomeCA.org or by calling (800) 952-8356 .

## 2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

### TABLE OF CONTENTS

PAGE

**ARTICLE 1 - GENERAL**

| | | |
|---|---|---|
| Civil Code §798 | Title and Application | 1 |
| Civil Code §798.1 | Application of Definitions | 1 |
| Civil Code §798.2 | Definition of Management | 1 |
| Civil Code §798.3 | Definition of Mobilehome | 1 |
| Civil Code §798.4 | Definition of Mobilehome Park | 1 |
| Civil Code §798.6 | Definition of Park | 1 |
| Civil Code §798.7 | Definition of New Construction | 1 |
| Civil Code §798.8 | Definition of Rental Agreement | 2 |
| Civil Code §798.9 | Definition of Homeowner | 2 |
| Civil Code §798.10 | Definition of Change of Use | 2 |
| Civil Code §798.11 | Definition of Resident | 2 |
| Civil Code §798.12 | Definition of Tenancy | 2 |
| Civil Code §798.13 | State Owned Parks - Employees | 2 |
| Civil Code §798.14 | Delivery of Notice | 2 |

**ARTICLE 2 - RENTAL AGREEMENT**

| | | |
|---|---|---|
| Civil Code §798.15 | In-Writing and Required Contents | 2 |
| Civil Code §798.16 | Inclusion of Other Provisions | 4 |
| Civil Code §798.17 | Rental Agreements Exempt from Rent Control | 4 |
| Civil Code §798.18 | Length of Agreement; Comparable Monthly Terms | 5 |
| Civil Code §798.19 | No Waiver of Chapter 2.5 Rights | 5 |
| Civil Code §798.19.5 | Park Owner Right of First Refusal to Purchase Home | 5 |
| Civil Code §798.20 | No Private Club Discrimination | 6 |
| Civil Code §798.21 | Not Principal Residence - Rent Control Exempt | 6 |
| Civil Code §798.22 | Recreational Vehicles in Parks – Designated Areas | 6 |

**ARTICLE 3 - RULES AND REGULATIONS**

| | | |
|---|---|---|
| Civil Code §798.23 | Application to Park Owners and Employees | 7 |
| Civil Code §798.23.5 | Subleasing | 7 |
| Civil Code §798.24 | Posting of Common Area Facility Hours | 8 |
| Civil Code §798.25 | Amendments to Rules and Regulations – Notice | 8 |
| Civil Code §798.25.5 | Void and Unenforceable Rules or Regulations | 8 |
| Civil Code §798.26 | Management Entry into Mobilehomes | 8 |
| Civil Code §798.27 | Notice of Zoning or Use Permit and Duration of Lease | 8 |
| Civil Code §798.28 | Disclosure of Park Owner's Name | 9 |
| Civil Code §798.28.5 | Vehicle Removal from Park | 9 |
| Civil Code §798.29 | Notice of Mobilehome Ombudsman | 9 |
| Civil Code §798.29.6 | Installation of Accommodations for the Disabled | 9 |

**ARTICLE 3.5 - FEES AND CHARGES**

| | | |
|---|---|---|
| Civil Code §798.30 | Notice of Rent Increase | 9 |
| Civil Code §798.31 | Authorized Fees Charged | 10 |
| Civil Code §798.32 | Fees Charged for Unlisted Services Without Notice | 10 |
| Civil Code §798.33 | Pets | 10 |
| Civil Code §798.34 | Guest and Live-In Care Providers | 10 |
| Civil Code §798.35 | Members of Immediate Family - No Fees | 11 |
| Civil Code §798.36 | Enforcement of Park Rules | 11 |
| Civil Code §798.37 | Entry, Hookup, Landscaping and Maintenance Charges | 12 |
| Civil Code §798.37.5 | Trees and Driveways | 12 |

## 2018 MOBILEHOME RESIDENCY LAW

### CHAPTER 2.5 OF THE CALIFORNIA CIVIL CODE

### ARTICLE 1 - GENERAL

**798        TITLE AND APPLICATION**

This Chapter shall be known and may be cited as the "Mobilehome Residency Law."

(Amended by Stats. 1992, Chap. 958 (SB 1655, Craven), eff. 9/28/1992)

**798.1        APPLICATION OF DEFINITIONS**

Unless the provisions or context otherwise requires, the following definitions shall govern the construction of this chapter.

(Amended by Stats. 1978, Chap. 1031 (SB 2119, Mills), eff. 1/1/1979)

**798.2        DEFINITION OF MANAGEMENT**

"Management" means the owner of a mobilehome park or an agent or representative authorized to act on his behalf in connection with matters relating to a tenancy in the park.

(Added by Stats. 1978, Chap. 1031 (SB 2119, Mills), eff. 1/1/1979)

**798.3        DEFINITION OF MOBILEHOME**

(a)    "Mobilehome" is a structure designed for human habitation and for being moved on a street or highway under permit pursuant to Section 35790 of the Vehicle Code.  Mobilehome includes a manufactured home, as defined in Section 18007 of the Health and Safety Code, and a mobilehome, as defined in Section 18008 of the Health and Safety Code, but, except as provided in subdivision (b), does not include a recreational vehicle, as defined in Section 799.29 of this code and Section 18010 of the Health and Safety Code or a commercial coach as defined in Section 18001.8 of the Health and Safety Code.

(b)    "Mobilehome," for purposes of this chapter, other than Section 798.73, also includes trailers and other recreational vehicles of all types defined in Section 18010 of the Health and Safety Code, other than motor homes, truck campers, and camping trailers, which are used for human habitation if the occupancy criteria of either paragraph (1) or (2), as follows, are met:

(1)    The trailer or other recreational vehicle occupies a mobilehome site in the park, on November 15, 1992, under a rental agreement with a term of one month or longer, and the trailer or other recreational vehicle occupied a mobilehome site in the park prior to January 1, 1991.

(2)    The trailer or other recreational vehicle occupies a mobilehome site in the park for nine or more continuous months commencing on or after November 15, 1992.

"Mobilehome" does not include a trailer or other recreational vehicle located in a recreational vehicle park subject to Chapter 2.6 (commencing with Section 799.20).

(Amended by Stats. 2005, Chap. 595 (SB 253, Torlakson), eff. 1/1/2006)

**798.4        DEFINITION OF MOBILEHOME PARK**

"Mobilehome park" is an area of land where two or more mobilehome sites are rented, or held out for rent, to accommodate mobilehomes used for human habitation.

(Added by Stats. 1978, Chap. 1031 (SB 2119, Mills), eff. 1/1/1979)

**798.6        DEFINITION OF PARK**

"Park" is a manufactured housing community as defined in Section 18210.7 of the Health & Safety Code, or a mobilehome park.

(Amended by Stats. 2007, Chap. 596 (AB 382, Saldana), eff. 1/1/2008)

**798.7        DEFINITION OF NEW CONSTRUCTION**

"New Construction" means any newly constructed spaces initially held out for rent after January 1, 1990.

(Added by Stats. 1989, Chap. 412 (SB 1241, Leonard), eff. 1/1/1990)

1

2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

**798.8        DEFINITION OF RENTAL AGREEMENT**

"Rental agreement" is an agreement between the management and the homeowner establishing the terms and conditions of a park tenancy.  A lease is a rental agreement.

(Amended by Stats. 1982, Chap. 1397 (AB 2429, Cortese), eff. 1/1/1983)

**798.9        DEFINITION OF HOMEOWNER**

"Homeowner" is a person who has a tenancy in a mobilehome park under a rental agreement.

(Amended by Stats. 1982, Chap. 1397 (AB 2429, Cortese), eff. 1/1/1983)

**798.10       DEFINITION OF CHANGE OF USE**

"Change of use" means a use of the park for a purpose other than the rental, or the holding out for rent, of two or more mobilehome sites to accommodate mobilehomes used for human habitation, and does not mean the adoption, amendment, or repeal of a park rule or regulation.  A change of use may affect an entire park or any portion thereof. "Change of use" includes, but is not limited to, a change of the park or any portion thereof to a condominium, stock cooperative, planned unit development, or any form of ownership wherein spaces within the park are to be sold.

(Amended by Stats. 1980, Chap. 137 (AB 760, Ellis), eff. 1/1/1982)

**798.11       DEFINITION OF RESIDENT**

"Resident" is a homeowner or other person who lawfully occupies a mobilehome.

(Amended by Stats. 1982, Chap. 1397 (AB 2429, Cortese), eff. 1/1/1983)

**798.12       DEFINITION OF TENANCY**

"Tenancy" is the right of a homeowner to the use of a site within a mobilehome park on which to locate, maintain, and occupy a mobilehome, site improvements, and accessory structures for human habitation, including the use of the services and facilities of the park.

(Amended by Stats. 1982, Chap. 1397 (AB 2429, Cortese), eff. 1/1/1983)

**798.13       STATE OWNED PARKS - EMPLOYEES**

(a)   This chapter does not apply to any area owned, operated, or maintained by the state for the purpose of providing employee housing or space for a mobilehome owned or occupied by an employee of the state.

(b)   Notwithstanding subdivision (a), a state employer shall provide the occupant of a privately owned mobilehome that is situated in an employee housing area owned, operated, or maintained by the state, and that is occupied by a state employee by agreement with his or her state employer and subject to the terms and conditions of that state employment, with a minimum of 60-days' notice prior to terminating the tenancy for any reason.

(Added by Stats. 2000, Chap. 471 (AB 2008, Committee on Housing), eff. 1/1/2001)

**798.14       DELIVERY OF NOTICE**

(a)   Unless otherwise provided, all notices required by this chapter shall be either delivered personally to the homeowner or deposited in the United States mail, postage prepaid, addressed to the homeowner at his or her site within the mobilehome park.

(b)   All notices required by this chapter to be delivered prior to February 1 of each year may be combined in one notice that contains all the information required by sections under which the notices are given.

(Amended by Stats. 2012, Chap. 478 (AB 2150, Atkins), eff. 1/1/2013)

<u>ARTICLE 2 - RENTAL AGREEMENT</u>

**798.15       IN-WRITING AND REQUIRED CONTENTS**

The rental agreement shall be in writing and shall contain, in addition to the provisions otherwise required by law to be included, all of the following:

(a)   The term of the tenancy and the rent therefor.

(b)   The rules and regulations of the park.

(c)   A copy of the text of this chapter shall be provided as an exhibit and shall be incorporated into the rental agreement by reference.  Management shall do one of the following prior to February 1 of each year, if a significant change was made in this chapter by legislation enacted in the prior year:

(1)   Provide all homeowners with a copy of this chapter.

(2)   Provide written notice to all homeowners that there has been a change to this chapter and that they may obtain

2

one copy of this chapter from management at no charge.  Management must provide a copy within a reasonable time, not to exceed seven days, upon request.

(d)    A provision specifying that (1) it is the responsibility of the management to provide and maintain physical improvements in the common facilities in good working order and condition and (2) with respect to a sudden or unforeseeable breakdown or deterioration of these improvements, the management shall have a reasonable period of time to repair the sudden or unforeseeable breakdown or deterioration and bring the improvements into good working order and condition after management knows or should have known of the breakdown or deterioration.  For purposes of this subdivision, a reasonable period of time to repair a sudden or unforeseeable breakdown or deterioration shall be as soon as possible in situations affecting a health or safety condition, and shall not exceed 30 days in any other case except where exigent circumstances justify a delay.

(e)    A description of the physical improvements to be provided the homeowner during his or her tenancy.

(f)    A provision listing those services which will be provided at the time the rental agreement is executed and will continue to be offered for the term of tenancy and the fees, if any, to be charged for those services.

(g)    A provision stating that management may charge a reasonable fee for services relating to the maintenance of the land and premises upon which a mobilehome is situated in the event the homeowner fails to maintain the land or premises in accordance with the rules and regulations of the park after written notification to the homeowner and the failure of the homeowner to comply within 14 days.  The written notice shall state the specific condition to be corrected and an estimate of the charges to be imposed by management if the services are performed by management or its agent.

(h)    All other provisions governing the tenancy.

(i)    A copy of the following notice.  Management shall also, prior to February 1 of each year, provide a copy of the following notice to all homeowners:

IMPORTANT NOTICE TO ALL MANUFACTURED HOME/MOBILEHOME OWNERS:

CALIFORNIA LAW REQUIRES THAT YOU BE MADE AWARE OF THE FOLLOWING:

The Mobilehome Residency Law (MRL), found in Section 798 et seq. of the Civil Code, establishes the rights and responsibilities of homeowners and park management. The MRL is deemed a part of the terms of any park rental agreement or lease. This notice is intended to provide you with a general awareness of selected parts of the MRL *and other important laws*. It does not serve as a legal explanation or interpretation. For authoritative information, you must read and understand the laws. These laws change from time to time. In any year in which the law has changed, you may obtain one copy of the full text of the law from management at no charge. This notice is required by Civil Code Section 798.15(i) and the information provided may not be current.

Homeowners and park management have certain rights and responsibilities under the MRL. These include, but are not limited to:

(1)    Management must give a homeowner written notice of any increase in his or her rent at least 90 days before the date of the increase. (Civil Code Section 798.30)

(2)    No rental or sales agreement may contain a provision by which a purchaser or a homeowner waives any of his or her rights under the MRL. (Civil Code Sections 798.19, 798.77)

(3)    Management may not terminate or refuse to renew a homeowner's tenancy except for one or more of the authorized reasons set forth in the MRL. (Civil Code Sections 798.55, 798.56)  Homeowners must pay rent, utility charges, and reasonable incidental service charges in a timely manner.  Failure to comply could be grounds for eviction from the park. (Civil Code Section 798.56)

(4)    Homeowners, residents, and their guests must comply with the rental agreement or lease, including the reasonable rules and regulations of the park and all applicable local ordinances and state laws and regulations relating to mobilehomes. Failure to comply could be grounds for eviction from the park. (Civil Code Section 798.56)

(5)    Homeowners have a right to peacefully assemble and freely communicate with respect to mobilehome living and for social or educational purposes. Homeowners have a right to meet in the park, at reasonable hours and in a reasonable manner, for any lawful purpose. Homeowners may not be charged a cleaning deposit in order to use the park clubhouse for meetings of resident organizations or for other lawful purposes, such as to hear from political candidates, so long as a homeowner of the park is hosting the meeting and all park residents are allowed to attend. Homeowners may not be required to obtain liability insurance in order to use common facilities unless alcohol is served. (Civil Code Sections 798.50, 798.51)

-(6)If a home complies with certain standards, the homeowner is entitled to sell it in place in the park.  If you sell your home, you are required to provide a manufactured home and mobilehome transfer disclosure statement to the buyer prior to sale.  (Civil Code Section 1102.6d)  When a home is sold, the owner is required to transfer the title to the buyer.  The sale of the home is not complete until you receive the title from the seller.  It is the responsibility of the buyer to also file

paperwork with the Department of Housing and Community Development to register the home in his or her name. (Civil Code Sections 798.70-798.74)

    (7) Management has the right to enter the space upon which a mobilehome is situated for maintenance of utilities, trees, and driveways; for inspection and maintenance of the space in accordance with the rules and regulations of the park when the homeowner or resident fails to maintain the space; and for protection and maintenance of the mobilehome park at any reasonable time, but not in a manner or at a time that would interfere with the resident's quiet enjoyment of his or her home. (Civil Code Section 798.26)

    (8) A homeowner may not make any improvements or alterations to his or her space or home without following the rules and regulations of the park and all applicable local ordinances and state laws and regulations, which may include obtaining a permit to construct, and, if required by park rules or the rental agreement, without prior written approval of management. Failure to comply could be grounds for eviction from the park. (Civil Code Section 798.56)

    (9) In California, mobilehome owners must pay annual property tax to the county tax collector or an annual fee in lieu of taxes to the Department of Housing and Community Development (HCD). If you are unsure which to pay, contact HCD. Failure to pay taxes or in lieu fees can have serious consequences, including losing your home at a tax sale.

    (10) For more information on registration, titling, and taxes, contact: the Department of Housing and Community Development www.hcd.ca.gov (800) 952-8356; your County Tax Collector; or call your local county government.

(Amended by Stats. 2016, Chap. 396 (AB 587, Chau), eff. 1/1/2017)

**798.16**        **INCLUSION OF OTHER PROVISIONS**

(a)    The rental agreement may include other provisions permitted by law, but need not include specific language contained in state or local laws not a part of this chapter.

(b)    Management shall return an executed copy of the rental agreement to the homeowner within 15 business days after management has received the rental agreement signed by the homeowner.

(Amended by Stats. 2004, Chap. 302 (AB 2351, Corbett), eff. 1/1/2005)

**798.17**        **RENTAL AGREEMENTS EXEMPT FROM RENT CONTROL; RIGHT TO INSPECT**

(a)  (1)    Rental agreements meeting the criteria of subdivision (b) shall be exempt from any ordinance, rule, regulation, or initiative measure adopted by any local governmental entity which establishes a maximum amount that a landlord may charge a tenant for rent. The terms of a rental agreement meeting the criteria of subdivision (b) shall prevail over conflicting provisions of an ordinance, rule, regulation, or initiative measure limiting or restricting rents in mobilehome parks, only during the term of the rental agreement or one or more uninterrupted, continuous extensions thereof. If the rental agreement is not extended and no new rental agreement in excess of 12 months' duration is entered into, then the last rental rate charged for the space under the previous rental agreement shall be the base rent for purposes of applicable provisions of law concerning rent regulation, if any.

      (2)    In the first sentence of the first paragraph of a rental agreement entered into on or after January 1, 1993, pursuant to this section, there shall be set forth a provision in at least 12-point boldface type if the rental agreement is printed, or in capital letters if the rental agreement is typed, giving notice to the homeowner that the rental agreement will be exempt from any ordinance, rule, regulation, or initiative measure adopted by any local governmental entity which establishes a maximum amount that a landlord may charge a tenant for rent.

(b)    Rental agreements subject to this section shall meet all of the following criteria:

      (1)    The rental agreement shall be in excess of 12 months' duration.

      (2)    The rental agreement shall be entered into between the management and a homeowner for the personal and actual residence of the homeowner.

      (3)    The homeowner shall have at least 30 days from the date the rental agreement is first offered to the homeowner to accept or reject the rental agreement.

      (4)    The homeowner who signs a rental agreement pursuant to this section may void the rental agreement by notifying management in writing within 72 hours of returning the signed rental agreement to management.

      (5)    The homeowner who signs a rental agreement pursuant to this section may void the agreement within 72 hours of receiving an executed copy of the rental agreement pursuant to Section 798.16. This paragraph shall only apply if management does not provide the homeowner with a copy of the signed rental agreement at the time the homeowner returns the signed rental agreement.

(c)    If, pursuant to paragraph (3) or (4) of subdivision (b), the homeowner rejects the offered rental agreement or rescinds

4

a signed rental agreement, the homeowner shall be entitled to instead accept, pursuant to Section 798.18, a rental agreement for a term of 12 months or less from the date the offered rental agreement was to have begun.  In the event the homeowner elects to have a rental agreement for a term of 12 months or less, including a month-to-month rental agreement, the rental agreement shall contain the same rental charges, terms, and conditions as the rental agreement offered pursuant to subdivision (b), during the first 12 months, except for options, if any, contained in the offered rental agreement to extend or renew the rental agreement.

(d)   Nothing in subdivision (c) shall be construed to prohibit the management from offering gifts of value, other than rental rate reductions, to homeowners who execute a rental agreement pursuant to this section.

(e)   With respect to any space in a mobilehome park that is exempt under subdivision (a) from any ordinance, rule, regulation, or initiative measure adopted by any local governmental entity that establishes a maximum amount that a landlord may charge a homeowner for rent, and notwithstanding any ordinance, rule, regulation, or initiative measure, a mobilehome park shall not be assessed any fee or other exaction for a park space that is exempt under subdivision (a) imposed pursuant to any ordinance, rule, regulation, or initiative measure.  No other fee or other exaction shall be imposed for a park space that is exempt under subdivision (a) for the purpose of defraying the cost of administration thereof.

(f)   At the time the rental agreement is first offered to the homeowner, the management shall provide written notice to the homeowner of the homeowner's right (1) to have at least 30 days to inspect the rental agreement, and (2) to void the rental agreement by notifying management in writing within 72 hours of receipt of an executed copy of the rental agreement.  The failure of the management to provide the written notice shall make the rental agreement voidable at the homeowner's option upon the homeowner's discovery of the failure.  The receipt of any written notice provided pursuant to this subdivision shall be acknowledged in writing by the homeowner.

(g)   No rental agreement subject to subdivision (a) that is first entered into on or after January 1, 1993, shall have a provision which authorizes automatic extension or renewal of, or automatically extends or renews, the rental agreement for a period beyond the initial stated term at the sole option of either the management or the homeowner.

(h)   This section does not apply to or supersede other provisions of this part or other state law.

(Amended by Stats. 2012, Chap. 477 (AB 1938, Williams), eff. 1/1/2013)

### 798.18    LENGTH OF AGREEMENT; COMPARABLE MONTHLY TERMS

(a)   A homeowner shall be offered a rental agreement for (1) a term of 12 months, or (2) a lesser period as the homeowner may request, or (3) a longer period as mutually agreed upon by both the homeowner and management.

(b)   No agreement shall contain any terms or conditions with respect to charges for rent, utilities, or incidental reasonable service charges that would be different during the first 12 months of the rental agreement from the corresponding terms or conditions that would be offered to the homeowners on a month-to-month basis.

(c)   No rental agreement for a term of 12 months or less shall include any provision which authorizes automatic extension or renewal of, or automatically extends or renews, the rental agreement beyond the initial term for a term longer than 12 months at the sole option of either the management or the homeowner.

(Amended by Stats. 1992, Chap. 289 (SB 1454, Craven), eff. 1/1/1993)

### 798.19    NO WAIVER OF CHAPTER 2.5 RIGHTS

No rental agreement for a mobilehome shall contain a provision by which the homeowner waives his or her rights under the provisions of Articles 1 to 8, inclusive, of this chapter.  Any such waiver shall be deemed contrary to public policy and void.

(Amended by Stats. 1982, Chap. 1397 (AB 2429, Cortese), eff. 1/1/1983)

### 798.19.5    PARK OWNER RIGHT OF FIRST REFUSAL TO PURCHASE HOME

A rental agreement entered into or renewed on and after January 1, 2006, shall not include a clause, rule, regulation, or any other provision that grants to management the right of first refusal to purchase a homeowner's mobilehome that is in the park and offered for sale to a third party pursuant to Article 7 (commencing with Section 798.70).  This section does not preclude a separate agreement for separate consideration granting the park owner or management a right of first refusal to purchase the homeowner's mobilehome that is in the park and offered for sale.

(Added by Stats. 2005, Chap. 35 (SB 237, Migden), eff. 1/1/2006)

### 798.20    NO PRIVATE CLUB DISCRIMINATION

(a)   Membership in any private club or organization that is a condition for tenancy in a park shall not be denied on any

5

basis listed in subdivision (a) or (d) of Section 12955 of the Government Code, as those bases are defined in Sections 12926, 12926.1, subdivision (m) and paragraph (1) of subdivision (p) of Section 12955, and Section 12955.2 of the Government Code.

(b)  Notwithstanding subdivision (a), with respect to familial status, subdivision (a) shall not be construed to apply to housing for older persons, as defined in Section 12955.9 of the Government Code.  With respect to familial status, nothing in subdivision (a) shall be construed to affect Sections 51.2, 51.3, 51.4, 51.10, 51.11, and 799.5, relating to housing for senior citizens. Subdivision (d) of Section 51 and Section 1360 of this code and subdivisions (n), (o), and (p) of Section 12955 of the Government Code shall apply to subdivision (a).

(Amended by Stats. 2006, Chap. 578 (AB 2800, Laird), eff. 1/1/2007)

**798.21    NON-PRINCIPAL RESIDENCE - RENT CONTROL EXEMPT**

(a)  Notwithstanding Section 798.17, if a mobilehome space within a mobilehome park is not the principal residence of the homeowner and the homeowner has not rented the mobilehome to another party, it shall be exempt from any ordinance, rule, regulation, or initiative measure adopted by any city, county, or city and county, which establishes a maximum amount that the landlord may charge a tenant for rent.

(b)  Nothing in this section is intended to require any homeowner to disclose information concerning his or her personal finances.  Nothing in this section shall be construed to authorize management to gain access to any records which would otherwise be confidential or privileged.

(c)  For purposes of this section, a mobilehome shall be deemed to be the principal residence of the homeowner, unless a review of state or county records demonstrates that the homeowner is receiving a homeowner's exemption for another property or mobilehome in this state, or unless a review of public records reasonably demonstrates that the principal residence of the homeowner is out of state.

(d)  Before modifying the rent or other terms of tenancy as a result of a review of records, as described in subdivision (c), the management shall notify the homeowner, in writing, of the proposed changes and provide the homeowner with a copy of the documents upon which management relied.

(e)  The homeowner shall have 90 days from the date the notice described in subdivision (d) is mailed to review and respond to the notice.  Management may not modify the rent or other terms of tenancy prior to the expiration of the 90-day period or prior to responding, in writing, to information provided by the homeowner.  Management may not modify the rent or other terms of tenancy if the homeowner provides documentation reasonably establishing that the information provided by management is incorrect or that the homeowner is not the same person identified in the documents.  However, nothing in this subdivision shall be construed to authorize the homeowner to change the homeowner's exemption status of the other property or mobilehome owned by the homeowner.

(f)  This section does not apply under any of the following conditions:

 (1)  The homeowner is unable to rent or lease the mobilehome because the owner or management of the mobilehome park in which the mobilehome is located does not permit, or the rental agreement limits or prohibits, the assignment of the mobilehome or the subletting of the park space.

 (2)  The mobilehome is being actively held available for sale by the homeowner, or pursuant to a listing agreement with a real estate broker licensed pursuant to Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, or a mobilehome dealer, as defined in Section 18002.6 of the Health and Safety Code.  A homeowner, real estate broker, or mobilehome dealer attempting to sell a mobilehome shall actively market and advertise the mobilehome for sale in good faith to bona fide purchasers for value in order to remain exempt pursuant to this subdivision.

 (3)  The legal owner has taken possession or ownership, or both, of the mobilehome from registered owner through either a surrender of ownership interest by the registered owner or a foreclosure proceeding.

(Amended by Stats. 2003, Chap. 132 (AB 1173, Haynes), eff. 1/1/2004)

**798.22    RECREATIONAL VEHICLES IN PARKS – DESIGNATED AREAS**

(a)  In any new mobilehome park that is developed after January 1, 1982, mobilehome spaces shall not be rented for the accommodation of recreational vehicles as defined by Section 799.29 unless the mobilehome park has a specifically designated area within the park for recreational vehicles, which is separate and apart from the area designated for mobilehomes.  Recreational vehicles may be located only in the specifically designated area.

(b)  Any new mobilehome park that is developed after January 1, 1982, is not subject to the provisions of this section until 75 percent of the spaces have been rented for the first time.

(Amended by Stats. 1993, Chap. 666 (AB 503, Rainey), eff. 1/1/1994)

ARTICLE 3 - RULES AND REGULATIONS

6

2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

**798.23**  **APPLICATION TO PARK OWNERS AND EMPLOYEES**

(a)  The owner of the park, and any person employed by the park, shall be subject to, and comply with, all park rules and regulations, to the same extent as residents and their guests.

(b)  Subdivision (a) of this section does not apply to either of the following:

(1)  Any rule or regulation that governs the age of any resident or guest.

(2)  Acts of a park owner or park employee which are undertaken to fulfill a park owner's maintenance, management, and business operation responsibilities.

(Amended by Stats. 2002, Chap. 672 (SB 1410, Chesbro), eff. 1/1/2003)

**798.23.5**  **SUBLEASING**

(a)  (1)  Management shall permit a homeowner to rent his or her home that serves as the homeowner's primary residence or sublet his or her space, under the circumstances described in paragraph (2) and subject to the requirements of this section.

(2)  A homeowner shall be permitted to rent or sublet pursuant to paragraph (1) if a medical emergency or medical treatment requires the homeowner to be absent from his or her home and this is confirmed in writing by an attending physician.

(b)  The following provisions shall apply to a rental or sublease pursuant to this section:

(1)  The minimum term of the rental or sublease shall be six months, unless the management approves a shorter term, but no greater than 12 months, unless management approves a longer term.

(2)  The management may require approval of a prospective renter or sublessee, subject to the process and restrictions provided by subdivision (a) of Section 798.74 for prospective purchasers of mobilehomes. A prospective sublessee shall comply with any rule or regulation limiting residency based on age requirements, pursuant to Section 798.76. The management may charge a prospective sublessee a credit screening fee for the actual cost of any personal reference check or consumer credit report that is provided by a consumer credit reporting agency, as defined in Section 1785.3, if the management or his or her agent requires that personal reference check or consumer credit report.

(3)  The renter or sublessee shall comply with all rules and regulations of the park. The failure of a renter or sublessee to comply with the rules and regulations of the park may result in the termination of the homeowner's tenancy in the mobilehome park, in accordance with Section 798.56. A homeowner's tenancy may not be terminated under this paragraph if the homeowner completes an action for unlawful detainer or executes a judgment for possession, pursuant to Chapter 4 (commencing with Section 1159) of Title 3 of Part 3 of the Code of Civil Procedure within 60 days of the homeowner receiving notice of termination of tenancy.

(4)  The homeowner shall remain liable for the mobilehome park rent and other park charges.

(5)  The management may require the homeowner to reside in the mobilehome park for a term of one year before management permits the renting or subletting of a mobilehome or mobilehome space.

(6)  Notwithstanding subdivision (a) of Section 798.39, if a security deposit has been refunded to the homeowner pursuant to subdivision (b) or (c) of Section 798.39, the management may require the homeowner to resubmit a security deposit in an amount or value not to exceed two months' rent in addition to the first month's rent. Management may retain this security deposit for the duration of the term of the rental or sublease.

(7)  The homeowner shall keep his or her current address and telephone number on file with the management during the term of rental or sublease. If applicable, the homeowner may provide the name, address, and telephone number of his or her legal representative.

(c)  A homeowner may not charge a renter or sublessee more than an amount necessary to cover the cost of space rent, utilities, and scheduled loan payments on the mobilehome, if any.

(Added by Stats. 2002, Chap. 672 (SB 1410, Chesbro), eff. 1/1/2003)

**798.24**  **POSTING OF COMMON AREA FACILITY HOURS**

Each common area facility shall be open or available to residents at all reasonable hours and the hours of the common area facility shall be posted at the facility.

(Amended by Stats. 2001, Chap. 83 (AB 1202, Harman), eff. 1/1/2002)

**798.25**  **AMENDMENTS TO RULES AND REGULATIONS – NOTICE**

(a)  Except as provided in subdivision (d), when the management proposes an amendment to the park's rules and regulations, the management shall meet and consult with the homeowners in the park, their representatives, or both,

7

after written notice has been given to all the homeowners in the park 10 days or more before the meeting.  The notice shall set forth the proposed amendment to the park's rules and regulations and shall state the date, time, and location of the meeting.

(b) Except as provided in subdivision (d), following the meeting and consultation with the homeowners, the noticed amendment to the park's rules and regulations may be implemented, as to any homeowner, with the consent of that homeowner, or without the homeowner's consent upon written notice of not less than six months, except for regulations applicable to recreational facilities, which may be amended without homeowner consent upon written notice of not less than 60 days.

(c) Written notice to a homeowner whose tenancy commences within the required period of notice of a proposed amendment to the park's rules and regulations under subdivision (b) or (d) shall constitute compliance with this section where the written notice is given before the inception of the tenancy.

(d) When the management proposes an amendment to the park's rules and regulations mandated by a change in the law, including, but not limited to, a change in a statute, ordinance, or governmental regulation, the management may implement the amendment to the park's rules and regulations, as to any homeowner, with the consent of that homeowner or without the homeowner's consent upon written notice of not less than 60 days.  For purposes of this subdivision, the management shall specify in the notice the citation to the statute, ordinance, or regulation, including the section number, that necessitates the proposed amendment to the park's rules and regulations.

(e) Any amendment to the park's rules and regulations that creates a new fee payable by the homeowner and that has not been expressly agreed upon by the homeowner and management in the written rental agreement or lease, shall be void and unenforceable.

(Amended by Stats. 2005, Chap. 22 (SB 1108, Committee on Judiciary), eff. 1/1/2006)

The following intent language appears in Section 2 of SB 351 (Chap. 323, Stat. 1999) but not in this code:
"The Legislature finds and declares that this act is intended to prohibit park owners from amending park rules and regulations to impose new fees on park residents. The act is not intended to limit the provisions of Article 4 (commencing with Section 798.30) of Chapter 2.5 of Title 2 of Part 2 of Division 2 of the Civil Code) with respect to the imposition of fees."

## 798.25.5     VOID AND UNENFORCEABLE RULES OR REGULATIONS

Any rule or regulation of a mobilehome park that (a) is unilaterally adopted by the management, (b) is implemented without the consent of the homeowners, and (c) by its terms purports to deny homeowners their right to a trial by jury or which would mandate binding arbitration of any dispute between the management and homeowners shall be void and unenforceable.

(Added by Stats. 1993, Chap. 889 (AB 1012, Bornstein), eff. 1/1/1994)

## 798.26     MANAGEMENT ENTRY INTO MOBILEHOMES

(a) Except as provided in subdivision (b), the ownership or management of a park have no right of entry to a mobilehome or enclosed accessory structure without the prior written consent of the resident.  The consent may be revoked in writing by the resident at any time.  The ownership or management shall have a right of entry upon the land upon which a mobilehome is situated for maintenance of utilities, trees, and driveways, for maintenance of the premises in accordance with the rules and regulations of the park when the homeowner or resident fails to so maintain the premises, and protection of the mobilehome park at any reasonable time, but not in a manner or at a time which would interfere with the resident's quiet enjoyment.

(b) The ownership or management of a park may enter a mobilehome or enclosed accessory structure without the prior written consent of the resident in case of an emergency or when the resident has abandoned the mobilehome or accessory structure.

(Amended by Stats. 2008, Chap. 115 (SB 1234, Correa), eff. 1/1/2009)

## 798.27     NOTICE OF ZONING OR USE PERMIT AND DURATION OF LEASE

(a) The management shall give written notice to all homeowners and prospective homeowners concerning the following matters:

  (1) The nature of the zoning or use permit under which the mobilehome park operates.  If the mobilehome park is operating pursuant to a permit subject to a renewal or expiration date, the relevant information and dates shall be included in the notice.

  (2) The duration of any lease of the mobilehome park, or any portion thereof, in which the management is a lessee.

(b) If a change occurs concerning the zoning or use permit under which the park operates or a lease in which the

2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

management is a lessee, all homeowners shall be given written notice within 30 days of that change. Notification regarding the change of use of the park, or any portion thereof, shall be governed by subdivision (g) of Section 798.56. A prospective homeowner shall be notified prior to the inception of the tenancy.

*(Amended by Stats. 1991, Chap. 190 (AB 600, Chacon), eff. 1/1/1992)*

**798.28     DISCLOSURE OF MOBILEHOME PARK OWNER'S NAME**
The management of a mobilehome park shall disclose, in writing, *within 10 business days*, the name, business address, and business telephone number of the mobilehome park owner upon the request of a homeowner.

*(Amended by Stats. 2017~~1991~~, Chap. 62 (AB 294~~577~~, Gipson~~Allen~~), eff. 1/1/2018~~1992~~)*

**798.28.5     VEHICLE REMOVAL FROM PARK**
(a)     Except as otherwise provided in this section, the management may cause the removal, pursuant to Section 22658 of the Vehicle Code, of a vehicle other than a mobilehome that is parked in the park when there is displayed a sign at each entrance to the park as provided in paragraph (1) of subdivision (a) of Section 22658 of the Vehicle Code.
(b)     (1)     Management may not cause the removal of a vehicle from a homeowner's or resident's driveway or a homeowner's or resident's designated parking space except if management has first posted on the windshield of the vehicle a notice stating management's intent to remove the vehicle in seven days and stating the specific park rule that the vehicle has violated that justifies its removal. After the expiration of seven days following the posting of the notice, management may remove a vehicle that remains in violation of a rule for which notice has been posted upon the vehicle. If a vehicle rule violation is corrected within seven days after the rule violation notice is posted on the vehicle, the vehicle may not be removed. If a vehicle upon which a rule violation notice has been posted is removed from the park by a homeowner or resident and subsequently is returned to the park still in violation of the rule stated in the notice, management is not required to post any additional notice on the vehicle, and the vehicle may be removed after the expiration of the seven-day period following the original notice posting
        (2)     If a vehicle poses a significant danger to the health or safety of a park resident or guest, or if a homeowner or resident requests to have a vehicle removed from his or her driveway or designated parking space, the requirements of paragraph (1) do not apply, and management may remove the vehicle pursuant to Section 22658 of the Vehicle Code.

*(Amended by Stats. 2004, Chap. 302 (AB 2351, Corbett), eff. 1/1/2005)*

**798.29     NOTICE OF MOBILEHOME OMBUDSMAN**
The management shall post a mobilehome ombudsman sign provided by the Department of Housing and Community Development, as required by Section 18253.5 of the Health and Safety Code.

*(Amended by Stats. 1996, Chap. 402 (SB 1594, Craven), eff. 1/1/1997)*

**798.29.6     INSTALLATION OF ACCOMMODATIONS FOR THE DISABLED**
The management shall not prohibit a homeowner or resident from installing accommodations for the disabled on the home or the site, lot, or space on which the mobilehome is located, including, but not limited to, ramps or handrails on the outside of the home, as long as the installation of those facilities complies with code, as determined by an enforcement agency, and those facilities are installed pursuant to a permit, if required for the installation, issued by the enforcement agency. The management may require that the accommodations installed pursuant to this section be removed by the current homeowner at the time the mobilehome is removed from the park or pursuant to a written agreement between the current homeowner and the management prior to the completion of the resale of the mobilehome in place in the park. This section is not exclusive and shall not be construed to condition, affect, or supersede any other provision of law or regulation relating to accessibility or accommodations for the disabled.

*(Added by Stats. 2008, Chap. 170 (SB 1107, Correa), eff. 1/1/2009)*

ARTICLE 3.5 - FEES AND CHARGES

**798.30     NOTICE OF RENT INCREASE**
The management shall give a homeowner written notice of any increase in his or her rent at least 90 days before the date of the increase.

*(Amended by Stats. 1993, Chap. 448 (AB 870, Umberg), eff. 1/1/1994)*

9

2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

**798.31      AUTHORIZED FEES CHARGED**

A homeowner shall not be charged a fee for other than rent, utilities, and incidental reasonable charges for services actually rendered.

A homeowner shall not be charged a fee for obtaining a lease on a mobilehome lot for (1) a term of 12 months, or (2) a lesser period as the homeowner may request. A fee may be charged for a lease of more than one year if the fee is mutually agreed upon by both the homeowner and management.

<span style="margin-left:2em">(Amended by Stats. 1984, Chap. 624 (SB 1487, Ellis), eff. 1/1/1985)</span>

**798.32      FEES CHARGED FOR UNLISTED SERVICES WITHOUT NOTICE**

(a)   A homeowner shall not be charged a fee for services actually rendered which are not listed in the rental agreement unless he or she has been given written notice thereof by the management, at least 60 days before imposition of the charge.

(b)   Those fees and charges specified in subdivision (a) shall be separately stated on any monthly or other periodic billing to the homeowner. If the fee or charge has a limited duration or is amortized for a specified period, the expiration date shall be stated on the initial notice and each subsequent billing to the homeowner while the fee or charge is billed to the homeowner.

<span style="margin-left:2em">(Amended by Stats. 1992, Chap. 338 (SB 1365, Leslie), eff. 1/1/1993)</span>

*[handwritten: #37 Collected animals belonging to tenant]*

**798.33      PETS**

(a)   No lease agreement entered into, modified, or renewed on or after January 1, 2001, shall prohibit a homeowner from keeping at least one pet within the park, subject to reasonable rules and regulations of the park. This section may not be construed to affect any other rights provided by law to a homeowner to keep a pet within the park.

(b)   A homeowner shall not be charged a fee for keeping a pet in the park unless the management actually provides special facilities or services for pets. If special pet facilities are maintained by the management, the fee charged shall reasonably relate to the cost of maintenance of the facilities or services and the number of pets kept in the park.

(c)   For purposes of this section, "pet" means any domesticated bird, cat, dog, aquatic animal kept within an aquarium, or other animal as agreed to between the management and the homeowner.

<span style="margin-left:2em">(Amended by Stats. 2000, Chap. 551 (AB 860, Thomson), eff. 1/1/2001)</span>

**798.34      GUESTS AND LIVE-IN CARE PROVIDERS**

(a)   A homeowner shall not be charged a fee for a guest who does not stay with him or her for more than a total of 20 consecutive days or a total of 30 days in a calendar year. A person who is a guest, as described in this subdivision, shall not be required to register with the management.

*[handwritten: #37 Child + under 55 son, occupies home]*

(b)   A homeowner who is living alone *in the mobilehome and who wishes to share occupancy of his or her mobilehome with one other person may do so, and a fee shall not be imposed by management for that person. For purposes of this subdivision, a homeowner may only designate one person as his or her companion per calendar year, except in the case of the companion's death. Park management may refuse to allow a homeowner to share his or her mobilehome with a companion under this subdivision if park residency is subject to age restrictions and the proposed companion is unable or unwilling to provide documentation that the proposed companion meets those age restrictions.* ~~and who wishes to share his or her mobilehome with one person may do so, and a fee shall not be imposed by management for that person. The person shall be considered a guest of the homeowner and any agreement between the homeowner and the person shall not change the terms and conditions of the rental agreement between management and the homeowner. The guest shall comply with the provisions of the rules and regulations of the mobilehome park.~~

(c)   A homeowner may share his or her mobilehome with any person over 18 years of age if that person is providing live-in health care, live-in supportive care*, or supervision to the homeowner.* ~~to the homeowner pursuant to a written treatment plan prepared by the homeowner's physician.~~ *Management shall not charge a fee for the live-in caregiver but may require written confirmation from a licensed health care professional of the homeowner's need for the care or supervision, if the need is not readily apparent or already known to management.* ~~A fee shall not be charged by management for that person. That person shall have no rights of tenancy in the park, and any agreement between the homeowner and the person shall not change the terms and conditions of the rental agreement between management and the homeowner. That person shall comply with the rules and regulations of the mobilehome park.~~

(d)   A senior homeowner who resides in a mobilehome park that has implemented rules or regulations limiting residency based on age requirements for housing for older persons, pursuant to Section 798.76, may share his or her mobilehome with any person over 18 years of age if this person is a parent, sibling, child, or grandchild of the senior

2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

homeowner and requires live-in health care, live-in supportive care, or supervision. ~~pursuant to a written treatment plan prepared by a physician and surgeon.~~ Management *shall not charge a fee for this parent, sibling, child, or grandchild, but may require written confirmation from a licensed health care professional of the need for the care or supervision, if the need is not readily apparent or already known to management.* ~~may not charge a fee for this person. Any agreement between the senior homeowner and this person shall not change the terms and conditions of the rental agreement between management and the senior homeowner. Unless otherwise agreed upon, park management shall not be required to manage, supervise, or provide for this person's care during his or her stay in the mobilehome park. This person shall have no rights of tenancy in the park, but shall comply with the rules and regulations of the mobilehome park. A violation of the mobilehome park rules and regulations by this person shall be deemed a violation of the rules and regulations by the homeowner pursuant to subdivision (d) of Section 798.56.~~ As used in this *section* ~~subdivision~~, "senior homeowner" means a homeowner who is 55 years of age or older.

(e) *A guest, companion, live-in caregiver, or family member under the care of a senior homeowner, as they are described in this section, shall have no rights of tenancy in the park, and any agreement between the homeowner and the guest, companion, live-in caregiver, or family member under the care of a senior homeowner shall not change the terms and conditions of the rental agreement between management and the homeowner.*

(f) *A violation of the mobilehome park rules and regulations by a guest, companion, live-in caregiver, or family member under the care of a senior homeowner, as they are described in this section, shall be deemed a violation of the rules and regulations by the homeowner and subject to subdivision (d) of Section 798.56.*

(g) *Nothing in this section shall be interpreted to create a duty on the part of park management to manage, supervise, or provide care for a homeowner's guest, companion, live-in caregiver, or family member under the care of a senior homeowner, during that person's stay in the mobilehome park.*

(Amended by Stats. 201~~7~~08, Chap. 170 (SB 147~~1~~107, *Dodd*), eff. 1/1/20*18*)

## 798.35    MEMBERS OF IMMEDIATE FAMILY - NO FEES

A homeowner shall not be charged a fee based on the number of members in his or her immediate family. As used in this section, the "immediate family" shall be limited to the homeowner, his or her spouse, their parents, their children, and their grandchildren under 18 years of age.

(Amended by Stats. 1995, Chap. 24 (AB 283, Cortese), eff. 1/1/1996)

## 798.36    ENFORCEMENT OF PARK RULES

(a) A homeowner shall not be charged a fee for the enforcement of any of the rules and regulations of the park, except a reasonable fee may be charged by management for the maintenance or cleanup, as described in subdivision (b), of the land and premises upon which the mobilehome is situated in the event the homeowner fails to do so in accordance with the rules and regulations of the park after written notification to the homeowner and the failure of the homeowner to comply within 14 days. The written notice shall state the specific condition to be corrected and an estimate of the charges to be imposed by management if the services are performed by management or its agent.

(b) (1) If management determines, in good faith, that the removal of a homeowner's or resident's personal property from the land and premises upon which the mobilehome is situated is necessary to bring the premises into compliance with the reasonable rules and regulations of the park or the provisions of the Mobilehome Parks Act (Part 2.1 (commencing with Section 18200) of Division 13 of the Health and Safety Code) or Title 25 of the California Code of Regulations, management may remove the property to a reasonably secure storage facility. Management shall provide written notice of at least 14 days of its intent to remove the personal property, including a description of the property to be removed. The notice shall include the rule, regulation, or code justifying the removal and shall provide an estimate of the charges to be imposed by management. The property to be removed shall not include the mobilehome or its appurtenances or accessory structures.

(2) The homeowner or resident shall be responsible for reimbursing to management the actual, reasonable costs, if any, of removing and storing the property. These costs incurred by management in correcting the rules violation associated with the removal and storage of the property, are deemed reasonable incidental service charges and may be collected pursuant to subdivision (e) of Section 798.56 if a notice of nonpayment of the removal and storage fees, as described in paragraph (3), is personally served on the homeowner.

(3) Within seven days from the date the property is removed to a storage area, management shall provide the homeowner or resident a written notice that includes an inventory of the property removed, the location where the property may be claimed, and notice that the cost of removal and storage shall be paid by the resident or homeowner. If, within 60 days, the homeowner or resident does not claim the property, the property shall be deemed to be abandoned, and management may dispose of the property in any manner. The homeowner's or resident's liability for storage charges shall not exceed 60 days. If the homeowner or resident claims the

11

property, but has not reimbursed management for storage costs, management may bill those costs in a monthly statement which shall constitute notice of nonpayment, and the costs shall become the obligation of the homeowner or resident. If a resident or homeowner communicates in writing his or her intent to abandon the property before 60 days has expired, management may dispose of the property immediately and no further storage charges shall accrue.

(4)  If management elects to dispose of the property by way of sale or auction, and the funds received from the sale or auction exceed the amount owed to management, management shall refund the difference to the homeowner or resident within 15 days from the date of management's receipt of the funds from the sale or auction. The refund shall be delivered to the homeowner or resident by first-class mail postage prepaid to his or her address in the park, or by personal delivery, and shall include an accounting specifying the costs of removal and storage of the property incurred by management in correcting the rules violation and the amount of proceeds realized from any sale or auction. If a sale or auction of the property yields less than the costs incurred by management, the homeowner or resident shall be responsible for the difference, and this amount shall be deemed a reasonable incidental service charge and may be collected pursuant to subdivision (e) of Section 798.56 if a notice of nonpayment of the removal and storage fees, as described in paragraph (3), is personally served on the homeowner. If management elects to proceed under this section, it may not also terminate the tenancy pursuant to subdivision (d) of Section 798.56 based upon the specific violations relied upon to proceed under this section. In any proceeding under this section, management shall bear the burden of proof that enforcement was undertaken in a nondiscriminatory, nonselective fashion.

(Amended by Stats. 2005, Chap. 24 (SB 125, Dutton), eff. 1/1/2006)

**798.37      ENTRY, HOOKUP, LANDSCAPING AND MAINTENANCE CHARGES**

A homeowner may not be charged a fee for the entry, installation, hookup, or landscaping as a condition of tenancy except for an actual fee or cost imposed by a local governmental ordinance or requirement directly related to the occupancy of the specific site upon which the mobilehome is located and not incurred as a portion of the development of the mobilehome park as a whole. However, reasonable landscaping and maintenance requirements may be included in the park rules and regulations. The management may not require a homeowner or prospective homeowner to purchase, rent, or lease goods or services for landscaping, remodeling, or maintenance from any person, company, or corporation.

(Amended by Stats. 2004, Chap. 302 (AB 2351, Corbett), eff. 1/1/2005)

**798.37.5      TREES AND DRIVEWAYS**

(a)  With respect to trees on rental spaces in a mobilehome park, park management shall be solely responsible for the trimming, pruning, or removal of any tree, and the costs thereof, upon written notice by a homeowner or a determination by park management that the tree poses a specific hazard or health and safety violation. In the case of a dispute over that assertion, the park management or a homeowner may request an inspection by the Department of Housing and Community Development or a local agency responsible for the enforcement of the Mobilehome Parks Act (Part 2.1 (commencing with Section 18200) of Division 13 of the Health and Safety Code) in order to determine whether a violation of that act exists.

(b)  With respect to trees in the common areas of a mobilehome park, park management shall be solely responsible for the trimming, pruning, or removal of any tree, and the costs thereof.

(c)  Park management shall be solely responsible for the maintenance, repair, replacement, paving, sealing, and the expenses related to the maintenance of all driveways installed by park management including, but not limited to, repair of root damage to driveways and foundation systems and removal. Homeowners shall be responsible for the maintenance, repair, replacement, paving, sealing, and the expenses related to the maintenance of a homeowner installed driveway. A homeowner may be charged for the cost of any damage to the driveway caused by an act of the homeowner or a breach of the homeowner's responsibilities under the rules and regulations so long as those rules and regulations are not inconsistent with the provisions of this section.

(d)  No homeowner may plant a tree within the mobilehome park without first obtaining written permission from the management.

(e)  This section shall not apply to alter the terms of any rental agreement in effect prior to January 1, 2001, between the park management and the homeowner regarding the responsibility for the maintenance of trees and driveways within the mobilehome park, except that upon any renewal or extension, the rental agreement shall be subject to this section. This section is not intended to abrogate the content of any existing rental agreement or other written agreements regarding trees or driveways that are in effect prior to January 1, 2001.

(f)  This section shall only apply to rental agreements entered into, renewed, or extended on or after January 1, 2001.

(g)  Any mobilehome park rule or regulation shall be in compliance with this section.

12

(Amended by Stats. 2014, Chap. 298 (AB 2753, Committee on Housing), eff. 1/1/2015)

**798.38        NO LIEN/SECURITY INTEREST EXCEPT BY MUTUAL AGREEMENT**

The management shall not acquire a lien or security interest, other than an interest arising by reason of process issued to enforce a judgment of any court, in a mobilehome located in the park unless it is mutually agreed upon by both the homeowner and management.  Any billing and payment upon the obligation shall be kept separate from current rent.

(Amended by Stats. 2009, Chap. 558 (SB 111, Correa), eff. 1/1/2010)

**798.39        SECURITY DEPOSITS**

(a)    The management may only demand a security deposit on or before initial occupancy and the security deposit may not be in an amount or value in excess of an amount equal to two months' rent that is charged at the inception of the occupancy, in addition to any rent for the first month. In no event shall additional security deposits be demanded of a homeowner following the initial occupancy.

(b)    As to all security deposits collected on or after January 1, 1989, after the homeowner has promptly paid to the management, within five days of the date the amount is due, all of the rent, utilities, and reasonable service charges for any 12-consecutive-month period subsequent to the collection of the security deposit by management, or upon resale of the mobilehome, whichever occurs earlier, management shall, upon the receipt of a written request from the homeowner, refund to the homeowner the amount of the security deposit within 30 days following the end of the 12-consecutive-month-period of the prompt payment or the date of the resale of the mobilehome.

(c)    As to all security deposits collected prior to January 1, 1989, upon the extension or renewal of the rental agreement or lease between the homeowner and the management, and upon the receipt of a written request from the homeowner, if the homeowner has promptly paid to the management, within five days of the date the amount is due, all of the rent, utilities, and reasonable service charges for the 12-consecutive-month period preceding the receipt of the written request, the management shall refund to the homeowner the amount of the security deposit within 60 days.

(d)    As to all security deposits collected prior to January 1, 1989, and not disbursed pursuant to subdivision (c), in the event that the mobilehome park is sold or transferred to any other party or entity, the selling park owner shall deposit in escrow an amount equal to all security deposits that the park owner holds.  The seller's escrow instructions shall direct that, upon close of escrow, the security deposits therein that were held by the selling park owner (including the period in escrow) for 12 months or more, shall be disbursed to the persons who paid the deposits to the selling park owner and promptly paid, within five days of the date the amount is due, all rent, utilities, and reasonable service charges for the 12-month period preceding the close of escrow.

(e)    Any and all security deposits in escrow that were held by the selling park owner that are not required to be disbursed pursuant to subdivision (b), (c), or (d) shall be disbursed to the successors in interest to the selling or transferring park owner, who shall have the same obligations of the park's management and ownership specified in this section with respect to security deposits.  The disbursal may be made in escrow by a debit against the selling park owner and a credit to the successors in interest to the selling park owner.

(f)    The management shall not be required to place any security deposit collected in an interest-bearing account or to provide a homeowner with any interest on the security deposit collected.

(g)    Nothing in this section shall affect the validity of title to real property transferred in violation of this section.

(Amended by Stats. 2001, Chap 151 (AB 210, Corbett), eff. 1/1/2002)

**798.39.5        FINES AND FORFIETURES NOT CHARGEABLE**

(a)    (1)    The management shall not charge or impose upon a homeowner any fee or increase in rent which reflects the cost to the management of any fine, forfeiture, penalty, money damages, or fee assessed or awarded by a court of law or any enforcement agency against the management for a violation of this chapter or Part 2.1 (commencing with Section 18200) of Division 13 of the Health and Safety Code, including any attorney's fees and costs incurred by the management in connection therewith.

        (2)    This section shall not apply to violations for which the registered owner of the mobilehome is initially responsible pursuant to subdivision (b) of Section 18420 of the Health and Safety Code.

(b)    A court shall consider the remoteness in time of the assessment or award against the management of any fine, forfeiture, penalty, money damages, or fee in determining whether the homeowner has met the burden of proof that the fee or increase in rent is in violation of this section.

(c)    Any provision in a rental agreement entered into, renewed, or modified on or after January 1, 1995, that permits a fee or increase in rent that reflects the cost to the management of any money damages awarded against the management for a violation of this chapter shall be void.

13

2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

(Amended by Stats. 2012, Chap. 477 (AB 1938, Williams), eff. 1/1/2013)

## ARTICLE 4 – UTILITIES

**798.40    UTILITY SERVICE BILLING; RATE SCHEDULE**

(a)    Where the management provides both master-meter and submeter service of utilities to a homeowner, for each billing period the cost of the charges for the period shall be separately stated along with the opening and closing readings for his or her meter.  The management shall post, in a conspicuous place, the specific current residential utility rate schedule as published by the serving utility or the Internet Web site address of the specific current residential utility rate schedule.  If the management elects to post the Internet Web site address where the schedule may be accessed, the management shall also: (1) provide a copy of the specific current residential utility rate schedule, upon request, at no cost; and (2) state in the posting that a homeowner may request a copy of the rate schedule from management.

(b)    If a third-party billing agent or company prepares utility billing for the park, the management shall disclose on each resident's billing, the name, address, and telephone number of the billing agent or company.

(Amended by Stats. 2013, Chap. 201 (SB 196, Cannella), eff. 1/1/2014)

**798.41    UTILITIES SEPARATELY BILLED - REDUCED FROM RENT**

(a)    Where a rental agreement, including a rental agreement specified in Section 798.17, does not specifically provide otherwise, the park management may elect to bill a homeowner separately for utility service fees and charges assessed by the utility for services provided to or for spaces in the park.  Any separately billed utility fees and charges shall not be deemed to be included in the rent charged for those spaces under the rental agreement, and shall not be deemed to be rent or a rent increase for purposes of any ordinance, rule, regulation, or initiative measure adopted or enforced by any local governmental entity which establishes a maximum amount that a landlord may charge a tenant for rent, provided that at the time of the initial separate billing of any utility fees and charges the rent chargeable under the rental agreement or the base rent chargeable under the terms of a local rent control provision is simultaneously reduced by an amount equal to the fees and charges separately billed.  The amount of this reduction shall be equal to the average amount charged to the park management for that utility service for that space during the 12 months immediately preceding notice of the commencement of the separate billing for that utility service.
      Utility services to which this section applies are natural gas or liquid propane gas, electricity, water, cable television, garbage or refuse service, and sewer service.

(b)    This section does not apply to rental agreements entered into prior to January 1, 1991, until extended or renewed on or after that date.

(c)    Nothing in this section shall require rental agreements to provide for separate billing to homeowners of fees and charges specified in subdivision (a).

(d)    Those fees and charges specified in subdivision (a) shall be separately stated on any monthly or other periodic billing to the homeowner.  If the fee or charge has a limited duration or is amortized for a specified period, the expiration date shall be stated on the initial notice and each subsequent billing to the homeowner while the fee or charge is billed to the homeowner.

(Amended by Stats. 1992, Chap. 338 (SB 1365, Leslie), eff. 1/1/1993)

**798.42    NOTICE OF UTILITY INTERRUPTION**

The management shall provide, by posting notice on the mobilehomes of all affected homeowners and residents, at least 72 hours' written advance notice of an interruption in utility service of more than two hours for the maintenance, repair, or replacement of facilities of utility systems over which the management has control within the park, provided that the interruption is not due to an emergency.  The management shall be liable only for actual damages sustained by a homeowner or resident for violation of this section.

      "Emergency," for purposes of this section, means the interruption of utility service resulting from an accident or act of nature, or cessation of service caused by other than the management's regular or planned maintenance, repair, or replacement of utility facilities.

(Amended by Stats. 2009, Chap. 558 (SB 111, Correa), eff. 1/1/2010)

**798.43    DISCLOSURE OF COMMON AREA UTILITY CHARGES**

(a)    Except as provided in subdivision (b), whenever a homeowner is responsible for payment of gas, water, or electric

utility service, management shall disclose to the homeowner any condition by which a gas, water, or electric meter on the homeowner's site measures gas, water, or electric service for common area facilities or equipment, including lighting, provided that management has knowledge of the condition.

Management shall disclose this information prior to the inception of the tenancy or upon discovery and shall complete either of the following:

(1) Enter into a mutual written agreement with the homeowner for compensation by management for the cost of the portion of the service measured by the homeowner's meter for the common area facilities or equipment to the extent that this cost accrues on or after January 1, 1991.

(2) Discontinue using the meter on the homeowner's site for the utility service to the common area facilities and equipment.

(b) On or after January 1, 1994, if the electric meter on the homeowner's site measures electricity for lighting mandated by Section 18602 of the Health and Safety Code and this lighting provides lighting for the homeowner's site, management shall be required to comply with subdivision (a).

(Amended by Stats. 1993, Chap. 147 (AB 1140, Epple), eff. 1/1/1994)

**798.43.1     CALIFORNIA ALTERNATE RATES FOR ENERGY PROGRAM (CARE)**

(a) The management of a master-meter park shall give written notice to homeowners and residents on or before February 1 of each year in their utility billing statements about assistance to low-income persons for utility costs available under the California Alternate Rates for Energy (CARE) program, established pursuant to Section 739.1 of the Public Utilities Code. The notice shall include CARE information available to master-meter customers from their serving utility, to include, at a minimum: (1) the fact that CARE offers a discount on monthly gas or electric bills for qualifying low-income residents; and (2) the telephone number of the serving utility which provides CARE information and applications. The park shall also post the notice in a conspicuous place in the clubhouse, or if there is no clubhouse, in a conspicuous public place in the park.

(b) The management of a master-meter park may accept and help process CARE program applications from homeowners and residents in the park, fill in the necessary account or other park information required by the serving utility to process the applications, and send the applications to the serving utility. The management shall not deny a homeowner or resident who chooses to submit a CARE application to the utility himself or herself any park information, including a utility account number, the serving utility requires to process a homeowner or resident CARE program application.

(c) The management of a master-meter park shall pass through the full amount of the CARE program discount in monthly utility billings to homeowners and residents who have qualified for the CARE rate schedule, as defined in the serving utility's applicable rate schedule. The management shall notice the discount on the billing statement of any homeowner or resident who has qualified for the CARE rate schedule as either the itemized amount of the discount or a notation on the statement that the homeowner or resident is receiving the CARE discount on the electric bill, the gas bill, or both the electric and gas bills.

(d) ''Master-meter park'' as used in this section means ''master-meter customer'' as used in Section 739.5 of the Public Utilities Code.

(Amended by Stats. 2001, Chap. 437 (SB 920, Dunn), eff. 1/1/2002)

**798.44     LIQUEFIED PETROLEUM GAS SALES**

(a) The management of a park that does not permit mobilehome owners or park residents to purchase liquefied petroleum gas for use in the mobilehome park from someone other than the mobilehome park management shall not sell liquefied petroleum gas to mobilehome owners and residents within the park at a cost which exceeds 110 percent of the actual price paid by the management of the park for liquefied petroleum gas.

(b) The management of a park shall post in a visible location the actual price paid by management for liquefied petroleum gas sold pursuant to subdivision (a).

(c) This section shall apply only to mobilehome parks regulated under the Mobilehome Residency Law. This section shall not apply to recreational vehicle parks, as defined in Section 18215 of the Health and Safety Code, which exclusively serve recreational vehicles, as defined in Section 18010 of the Health and Safety Code.

(d) Nothing in this section is intended to abrogate any rights a mobilehome park owner may have under Section 798.31 of the Civil Code.

(e) In addition to a mobilehome park described in subdivision (a), the requirements of subdivisions (a) and (b) shall apply to a mobilehome park where requirements of federal, state, or local law or regulation, including, but not limited to, requirements for setbacks between mobilehomes, prohibit homeowners or residents from installing their own

liquefied petroleum gas supply tanks, notwithstanding that the management of the mobilehome park permits mobilehome owners and park residents to buy their own liquefied petroleum gas.

(Amended by Stats. 2009, Chap. 558 (SB 111, Correa), eff. 1/1/2010)

ARTICLE 4.5 - RENT CONTROL

**798.45     NEW CONSTRUCTION EXEMPT**

Notwithstanding Section 798.17, "new construction" as defined in Section 798.7, shall be exempt from any ordinance, rule, regulation, or initiative measure adopted by any city, county, or city and county, which establishes a maximum amount that a landlord may charge a tenant for rent.

(Added by Stats. 1989, Chap. 412 (SB 1241, Leonard), eff. 1/1/1990)

**798.49     GOVERNMENT FEES AND ASSESSMENTS THAT ARE EXEMPT**

(a)   Except as provided in subdivision (d), the local agency of any city, including a charter city, county, or city and county, which administers an ordinance, rule, regulation, or initiative measure that establishes a maximum amount that management may charge a tenant for rent shall permit the management to separately charge a homeowner for any of the following:

    (1)   The amount of any fee, assessment or other charge first imposed by a city, including a charter city, a county, or a city and county, the state, or the federal government on or after January 1, 1995, upon the space rented by the homeowner.

    (2)   The amount of any increase on or after January 1, 1995, in an existing fee, assessment or other charge imposed by any governmental entity upon the space rented by the homeowner.

    (3)   The amount of any fee, assessment or other charge upon the space first imposed or increased on or after January 1, 1993, pursuant to any state or locally mandated program relating to housing contained in the Health and Safety Code.

(b)   If management has charged the homeowner for a fee, assessment, or other charge specified in subdivision (a) that was increased or first imposed on or after January 1, 1993, and the fee, assessment, or other charge is decreased or eliminated thereafter, the charge to the homeowner shall be decreased or eliminated accordingly.

(c)   The amount of the fee, assessment or other charges authorized by subdivision (a) shall be separately stated on any billing to the homeowner.  Any change in the amount of the fee, assessment, or other charges that are separately billed pursuant to subdivision (a) shall be considered when determining any rental adjustment under the local ordinance.

(d)   This section shall not apply to any of the following:

    (1)   Those fees, assessments, or charges imposed pursuant to the Mobilehome Parks Act (Part 2.1 (commencing with Section 18200) of Division 13 of the Health and Safety Code), unless specifically authorized by Section 18502 of the Health and Safety Code.

    (2)   Those costs that are imposed on management by a court pursuant to Section 798.42.

    (3)   Any fee or other exaction imposed upon management for the specific purpose of defraying the cost of administration of any ordinance, rule, regulation, or initiative measure that establishes a maximum amount that management may charge a tenant for rent.

    (4)   Any tax imposed upon the property by a city, including a charter city, county, or city and county.

(e)   Those fees and charges specified in subdivision (a) shall be separately stated on any monthly or other periodic billing to the homeowner.  If the fee or charge has a limited duration or is amortized for a specified period, the expiration date shall be stated on the initial notice and each subsequent billing to the homeowner while the fee or charge is billed to the homeowner.

(Amended by Stats. 1994, Chap. 340 (SB 1510, Lewis), eff. 1/1/1995)

ARTICLE 5 - HOMEOWNER COMMUNICATIONS AND MEETINGS

**798.50     LEGISLATIVE INTENT**

It is the intent of the Legislature in enacting this article to ensure that homeowners and residents of mobilehome parks have the right to peacefully assemble and freely communicate with one another and with others with respect to mobilehome living or for social or educational purposes.

(Added by Stats. 1989, Chap. 198 (SB 175, Craven), eff. 1/1/1990)

**798.51     RIGHT TO ASSEMBLE, MEET, CANVASS, PETITION & INVITE SPEAKERS**

16

(a)  No provision contained in any mobilehome park rental agreement, rule, or regulation shall deny or prohibit the right of any homeowner or resident in the park to do any of the following:

    (1)  Peacefully assemble or meet in the park, at reasonable hours and in a reasonable manner, for any lawful purpose.  Meetings may be held in the park community or recreation hall or clubhouse when the facility is not otherwise in use, and, with the consent of the homeowner, in any mobilehome within the park.

    (2)  Invite public officials, candidates for public office, or representatives of mobilehome owner organizations to meet with homeowners and residents and speak upon matters of public interest, in accordance with Section 798.50.

    (3)  Canvass and petition homeowners and residents for noncommercial purposes relating to mobilehome living, election to public office, or the initiative, referendum, or recall processes, at reasonable hours and in a reasonable manner, including the distribution or circulation of information.

(b)  A homeowner or resident may not be charged a cleaning deposit in order to use the park recreation hall or clubhouse for meetings of resident organizations for any of the purposes stated in Section 798.50 and this section, whether or not guests or visitors from outside the park are invited to attend the meeting, if a homeowner or resident of the park is hosting the meeting and all homeowners or residents of the park are allowed to attend.

(c)  A homeowner or resident may not be required to obtain liability insurance in order to use common area facilities for the purposes specified in this section and Section 798.50. However, if alcoholic beverages are to be served at any meeting or private function, a liability insurance binder may be required by the park ownership or management.  The ownership or management of a mobilehome park may prohibit the consumption of alcoholic beverages in the park common area facilities if the terms of the rental agreement or the rules and regulations of the park prohibit it.

(d)  A homeowner, organization, or group of homeowners using a recreation hall or clubhouse pursuant to this section shall be required to adhere to any limitations or restrictions regarding vehicle parking or maximum occupancy for the clubhouse or recreation hall.

(e)  A homeowner or resident may not be prohibited from displaying a political campaign sign relating to a candidate for election to public office or to the initiative, referendum, or recall process in the window or on the side of a manufactured home or mobilehome, or within the site on which the home is located or installed.  The size of the face of a political sign may not exceed six square feet, and the sign may not be displayed in excess of a period of time from 90 days prior to an election to 15 days following the election, unless a local ordinance within the jurisdiction where the mobilehome park is located imposes a more restrictive period of time for the display of such a sign.

(Amended by Stats. 2003, Chap. 249 (SB 116, Dunn), eff. 1/1/2004)

The following intent language appears in Section 4 of SB 116 (Chapter 249) but not in this code:
"It is the intent of the Legislature that enactment of this bill not affect any other form of political expression by a homeowner or resident of a mobilehome park where that expression is not associated with an election or political campaign."

**798.52**    **INJUNCTIVE ACTION TO ENFORCE RIGHTS**

Any homeowner or resident who is prevented by management from exercising the rights provided for in Section 798.51 may bring an action in a court of law to enjoin enforcement of any rule, regulation, or other policy which unreasonably deprives a homeowner or resident of those rights.

(Added by Stats. 1989, Chap. 198 (SB 175, Craven), eff. 1/1/1990)

ARTICLE 5.5 - HOMEOWNERS MEETINGS WITH MANAGEMENT

**798.53**    **MANAGEMENT MEETINGS WITH RESIDENTS**

The management shall meet and consult with the homeowners, upon written request, within 30 days of the request, either individually, collectively, or with representatives of a group of homeowners who have signed a request to be so represented on the following matters:

(a)  Resident concerns regarding existing park rules that are not subject to Section 798.25.

(b)  Standards for maintenance of physical improvements in the park.

(c)  Addition, alteration, or deletion of service, equipment, or physical improvements.

(d)  Rental agreements offered pursuant to Section 798.17.

Any collective meeting shall be conducted only after notice thereof has been given to all the requesting homeowners 10 days or more before the meeting.

(Amended by Stats. 1994, Chap. 340 (SB 1510, Lewis), eff. 1/1/1995)

ARTICLE 6 - TERMINATION OF TENANCY

**798.55    LEGISLATIVE INTENT; TERMINATION FOR CAUSE; 60-DAY NOTICE**

(a)    The Legislature finds and declares that, because of the high cost of moving mobilehomes, the potential for damage resulting therefrom, the requirements relating to the installation of mobilehomes, and the cost of landscaping or lot preparation, it is necessary that the owners of mobilehomes occupied within mobilehome parks be provided with the unique protection from actual or constructive eviction afforded by the provisions of this chapter.

(b)    (1)    The management may not terminate or refuse to renew a tenancy, except for a reason specified in this article and upon the giving of written notice to the homeowner, in the manner prescribed by Section 1162 of the Code of Civil Procedure, to sell or remove, at the homeowner's election, the mobilehome from the park within a period of not less than 60 days, which period shall be specified in the notice.  A copy of this notice shall be sent to the legal owner, as defined in Section 18005.8 of the Health and Safety Code, each junior lienholder, as defined in Section 18005.3 of the Health and Safety Code, and the registered owner of the mobilehome, if other than the homeowner, by United States mail within 10 days after notice to the homeowner.  The copy may be sent by regular mail or by certified or registered mail with return receipt requested, at the option of the management.

(2)    The homeowner shall pay past due rent and utilities upon the sale of a mobilehome pursuant to paragraph (1).

(c)    If the homeowner has not paid the rent due within three days after notice to the homeowner, and if the first notice was not sent by certified or registered mail with return receipt requested, a copy of the notice shall again be sent to the legal owner, each junior lienholder, and the registered owner, if other than the homeowner, by certified or registered mail with return receipt requested within 10 days after notice to the homeowner.  Copies of the notice shall be addressed to the legal owner, each junior lienholder, and the registered owner at their addresses, as set forth in the registration card specified in Section 18091.5 of the Health and Safety Code.

(d)    If management obtains a court judgment against a homeowner or resident, the cost incurred by management in obtaining a title search for the purpose of complying with the notice requirements of this section shall be recoverable as a cost of suit.

(e)    The resident of a mobilehome that remains in the mobilehome park after service of the notice to sell or remove the mobilehome shall continue to be subject to this chapter and the rules and regulations of the park, including rules regarding maintenance of the space.

(f)    No lawful act by the management to enforce this chapter or the rules and regulations of the park may be deemed or construed to waive or otherwise affect the notice to remove the mobilehome.

(Amended by Stats. 2005, Chap. 24 (SB 125, Dutton), eff. 1/1/2006)

The following intent language appears in Section 4 of AB 682 (Chap. 561, Stat. 2003) but not in this code:
"This act is not intended to affect park management's existing rights and remedies to recover unpaid rent, utility charges, or reasonable incidental charges, and may not be construed to provide for an exclusive remedy."

**798.56    SEVEN AUTHORIZED REASONS FOR TERMINATION OF TENANCY**

A tenancy shall be terminated by the management only for one or more of the following reasons:

(a)    Failure of the homeowner or resident to comply with a local ordinance or state law or regulation relating to mobilehomes within a reasonable time after the homeowner receives a notice of noncompliance from the appropriate governmental agency.

(b)    Conduct by the homeowner or resident, upon the park premises, that constitutes a substantial annoyance to other homeowners or residents.

(c)    (1)    Conviction of the homeowner or resident for prostitution, for a violation of subdivision (d) of Section 243, paragraph (2) of subdivision (a), or subdivision (b), of Section 245, Section 288, or Section 451, of the Penal Code, or a felony controlled substance offense, if the act resulting in the conviction was committed anywhere on the premises of the mobilehome park, including, but not limited to, within the homeowner's mobilehome.

(2)    However the tenancy may not be terminated for the reason specified in this subdivision if the person convicted of the offense has permanently vacated, and does not subsequently reoccupy, the mobilehome.

(d)    Failure of the homeowner or resident to comply with a reasonable rule or regulation of the park that is part of the rental agreement or any amendment thereto.

No act or omission of the homeowner or resident shall constitute a failure to comply with a reasonable rule or regulation unless and until the management has given the homeowner written notice of the alleged rule or regulation violation and the homeowner or resident has failed to adhere to the rule or regulation within seven days.  However, if a homeowner has been given a written notice of an alleged violation of the same rule or regulation on three or more occasions within a 12-month period after the homeowner or resident has violated that rule or regulation, no written notice shall be required for a subsequent violation of the same rule or regulation.

Nothing in this subdivision shall relieve the management from its obligation to demonstrate that a rule or regulation

18

has in fact been violated.

(e) (1) Nonpayment of rent, utility charges, or reasonable incidental service charges; provided that the amount due has been unpaid for a period of at least five days from its due date, and provided that the homeowner shall be given a three-day written notice subsequent to that five-day period to pay the amount due or to vacate the tenancy. For purposes of this subdivision, the five-day period does not include the date the payment is due. The three-day written notice shall be given to the homeowner in the manner prescribed by Section 1162 of the Code of Civil Procedure. A copy of this notice shall be sent to the persons or entities specified in subdivision (b) of Section 798.55 within 10 days after notice is delivered to the homeowner. If the homeowner cures the default, the notice need not be sent. The notice may be given at the same time as the 60 days' notice required for termination of the tenancy. A three-day notice given pursuant to this subdivision shall contain the following provisions printed in at least 12-point boldface type at the top of the notice, with the appropriate number written in the blank:

> "Warning: This notice is the [insert number] three-day notice for nonpayment of rent, utility charges, or other reasonable incidental services that has been served upon you in the last 12 months. Pursuant to Civil Code Section 798.56(e)(5), if you have been given a three-day notice to either pay rent, utility charges, or other reasonable incidental services or to vacate your tenancy on three or more occasions within a 12-month period, management is not required to give you a further three-day period to pay rent or vacate the tenancy before your tenancy can be terminated."

(2) Payment by the homeowner prior to the expiration of the three-day notice period shall cure a default under this subdivision. If the homeowner does not pay prior to the expiration of the three-day notice period, the homeowner shall remain liable for all payments due up until the time the tenancy is vacated.

(3) Payment by the legal owner, as defined in Section 18005.8 of the Health and Safety Code, any junior lienholder, as defined in Section 18005.3 of the Health & Safety Code, or the registered owner, as defined in Section 18009.5 of the Health and Safety Code, if other than the homeowner, on behalf of the homeowner prior to the expiration of 30 calendar days following the mailing of the notice to the legal owner, each junior lienholder, and the registered owner provided in subdivision (b) of Section 798.55, shall cure a default under this subdivision with respect to that payment.

(4) Cure of a default of rent, utility charges, or reasonable incidental service charges by the legal owner, any junior lienholder, or the registered owner, if other than the homeowner, as provided by this subdivision, may not be exercised more than twice during a 12-month period.

(5) If a homeowner has been given a three-day notice to pay the amount due or to vacate the tenancy on three or more occasions within the preceding 12-month period and each notice includes the provisions specified in paragraph (1), no written three-day notice shall be required in the case of a subsequent nonpayment of rent, utility charges, or reasonable incidental service charges.

In that event, the management shall give written notice to the homeowner in the manner prescribed by Section 1162 of the Code of Civil Procedure to remove the mobilehome from the park within a period of not less than 60 days, which period shall be specified in the notice. A copy of this notice shall be sent to the legal owner, each junior lienholder, and the registered owner of the mobilehome, if other than the homeowner, as specified in paragraph (b) of Section 798.55, by certified or registered mail, return receipt requested, within 10 days after notice is sent to the homeowner.

(6) When a copy of the 60 days' notice described in paragraph (5) is sent to the legal owner, each junior lienholder, and the registered owner of the mobilehome, if other than the homeowner, the default may be cured by any of them on behalf of the homeowner prior to the expiration of 30 calendar days following the mailing of the notice, if all of the following conditions exist:

(A) A copy of a three-day notice sent pursuant to subdivision (b) of Section 798.55 to a homeowner for the nonpayment of rent, utility charges, or reasonable incidental service charges was not sent to the legal owner, junior lienholder, or registered owner, of the mobilehome, if other than the homeowner, during the preceding 12-month period.

(B) The legal owner, junior lienholder, or registered owner of the mobilehome, if other than the homeowner, has not previously cured a default of the homeowner during the preceding 12-month period.

(C) The legal owner, junior lienholder or registered owner, if other than the homeowner, is not a financial institution or mobilehome dealer.

If the default is cured by the legal owner, junior lienholder, or registered owner within the 30-day period, the notice to remove the mobilehome from the park described in paragraph (5) shall be rescinded.

(f) Condemnation of the park.

*[handwritten: no key to amenities ✓]*

2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

(g) Change of use of the park or any portion thereof, provided:
  (1) The management gives the homeowners at least 15 days' written notice that the management will be appearing before a local governmental board, commission, or body to request permits for a change of use of the mobilehome park.
  (2) After all required permits requesting a change of use have been approved by the local governmental board, commission, or body, the management shall give the homeowners six months' or more written notice of termination of tenancy.
    If the change of use requires no local governmental permits, then notice shall be given 12 months or more prior to the management's determination that a change of use will occur. The management in the notice shall disclose and describe in detail the nature of the change of use.
  (3) The management gives each proposed homeowner written notice thereof prior to the inception of his or her tenancy that the management is requesting a change of use before local governmental bodies or that a change of use request has been granted.
  (4) The notice requirements for termination of tenancy set forth in Sections 798.56 and 798.57 shall be followed if the proposed change actually occurs.
  (5) A notice of a proposed change of use given prior to January 1, 1980, that conforms to the requirements in effect at that time shall be valid. The requirements for a notice of a proposed change of use imposed by this subdivision shall be governed by the law in effect at the time the notice was given.
(h) The report required pursuant to subdivisions (b) and (i) of Section 65863.7 of the Government Code shall be given to the homeowners or residents at the same time that notice is required pursuant to subdivision (g) of this section.
(i) For purposes of this section, "financial institution" means a state or national bank, state or federal savings and loan association or credit union, or similar organization, and mobilehome dealer as defined in Section 18002.6 of the Health and Safety Code or any other organization that, as part of its usual course of business, originates, owns, or provides loan servicing for loans secured by a mobilehome.

(Amended by Stats. 2003, Chap. 85 (AB 805, Diaz) and Chap. 388 (AB 767, Nakano), eff. 1/1/2004)

**798.56a    NOTICE REQUIREMENT OF LEGAL OWNER/JUNIOR LIENHOLDER**

(a) Within 60 days after receipt of, or no later than 65 days after the mailing of, the notice of termination of tenancy pursuant to any reason provided in Section 798.56, the legal owner, if any, and each junior lienholder, if any, shall notify the management in writing of at least one of the following:
  (1) Its offer to sell the obligation secured by the mobilehome to the management for the amount specified in its written offer. In that event, the management shall have 15 days following receipt of the offer to accept or reject the offer in writing. If the offer is rejected, the person or entity that made the offer shall have 10 days in which to exercise one of the other options contained in this section and shall notify management in writing of its choice.
  (2) Its intention to foreclose on its security interest in the mobilehome.
  (3) Its request that management pursue termination of tenancy against the homeowner and its offer to reimburse management for the reasonable attorney's fees and court costs incurred by the management in that action. If this request and offer are made, the legal owner, if any, or junior lienholder, if any, shall reimburse the management the amount of reasonable attorney's fees and court costs, as agreed upon by the management and the legal owner or junior lienholder, incurred by the management in an action to terminate the homeowner's tenancy, on or before the earlier of (A) the 60th calendar day following receipt of written notice from the management of the aggregate amount of those reasonable attorney's fees and costs or (B) the date the mobilehome is resold.
(b) A legal owner, if any, or junior lienholder, if any, may sell the mobilehome within the park to a third party and keep the mobilehome on the site within the mobilehome park until it is resold only if all of the following requirements are met:
  (1) The legal owner, if any, or junior lienholder, if any, notifies management in writing of the intention to exercise either option described in paragraph (2) or (3) of subdivision (a) within 60 days following receipt of, or no later than 65 days after the mailing of, the notice of termination of tenancy and satisfies all of the responsibilities and liabilities of the homeowner owing to the management for the 90 days preceding the mailing of the notice of termination of tenancy and then continues to satisfy these responsibilities and liabilities as they accrue from the date of the mailing of that notice until the date the mobilehome is resold.
  (2) Within 60 days following receipt of, or no later than 65 days after the mailing of, the notice of termination of tenancy, the legal owner or junior lienholder commences all repairs and necessary corrective actions so that the mobilehome complies with park rules and regulations in existence at the time the notice of termination of

20

tenancy was given as well as the health and safety standards specified in Sections 18550, 18552, and 18605 of the Health and Safety Code, and completes these repairs and corrective actions within 90 calendar days of that notice, or before the date that the mobilehome is sold, whichever is earlier.

(3) The legal owner, if any, or junior lienholder, if any, complies with the requirements of Article 7 (commencing with Section 798.70) as it relates to the transfer of the mobilehome to a third party.

(c) For purposes of subdivision (b), the "homeowner's responsibilities and liabilities" means all rents, utilities, reasonable maintenance charges of the mobilehome and its premises, and reasonable maintenance of the mobilehome and its premises pursuant to existing park rules and regulations.

(d) If the homeowner files for bankruptcy, the periods set forth in this section are tolled until the mobilehome is released from bankruptcy.

(e) (1) Notwithstanding any other provision of law, including, but not limited to, Section 18099.5 of the Health and Safety Code, if neither the legal owner nor a junior lienholder notifies the management of its decision pursuant to subdivision (a) within the period allowed, or performs as agreed within 30 days, or if a registered owner of a mobilehome, that is not encumbered by a lien held by a legal owner or a junior lienholder, fails to comply with a notice of termination and is either legally evicted or vacates the premises, the management may either remove the mobilehome from the premises and place it in storage or store it on its site. In this case, notwithstanding any other provision of law, the management shall have a warehouse lien in accordance with Section 7209 of the Commercial Code against the mobilehome for the costs of dismantling and moving, if appropriate, as well as storage, that shall be superior to all other liens, except the lien provided for in Section 18116.1 of the Health and Safety Code, and may enforce the lien pursuant to Section 7210 of the Commercial Code either after the date of judgment in an unlawful detainer action or after the date the mobilehome is physically vacated by the resident, whichever occurs earlier. Upon completion of any sale to enforce the warehouse lien in accordance with Section 7210 of the Commercial Code, the management shall provide the purchaser at the sale with evidence of the sale, as shall be specified by the Department of Housing and Community Development, that shall, upon proper request by the purchaser of the mobilehome, register title to the mobilehome to this purchaser, whether or not there existed a legal owner or junior lienholder on this title to the mobilehome.

(2) (A) Notwithstanding any other law, if the management of a mobilehome park acquires a mobilehome after enforcing the warehouse lien and files a notice of disposal pursuant to subparagraph (B) with the Department of Housing and Community Development to designate the mobilehome for disposal, management or any other person enforcing this warehouse lien shall not be required to pay past or current vehicle license fees required by Section 18115 of the Health and Safety Code or obtain a tax clearance certificate, as set forth in Section 5832 of the Revenue and Taxation Code, provided that management notifies the county tax collector in the county in which the mobilehome is located of management's intent to apply to have the mobilehome designated for disposal after a warehouse lien sale. The written notice shall be sent to the county tax collector no less than 30 days after the date of the sale to enforce the lien against the mobilehome by first class mail, postage prepaid.

(B) (i) In order to dispose of a mobilehome after a warehouse lien sale, the management shall file a notice of disposal with the Department of Housing and Community Development in the form and manner as prescribed by the department, no less than 30 days after the date of sale to enforce the lien against the mobilehome.

(ii) After filing a notice of disposal pursuant to clause (i), the management may dispose of the mobilehome after obtaining the information required by applicable laws.

(C) (i) Within 30 days of the date of the disposal of the mobilehome, the management shall submit to the Department of Housing and Community Development all of the following information required for completing the disposal process:

(I) Photographs identifying and demonstrating that the mobilehome was uninhabitable by the removal or destruction of all appliances and fixtures such as ovens, stoves, bathroom fixtures, and heating or cooling appliances prior to its being moved.

(II) A statement of facts as to the condition of the mobilehome when moved, the date it was moved, and the anticipated site of further dismantling or disposal.

(III) The name, address, and license number of the person or entity removing the mobilehome from the mobilehome park.

(ii) The information required pursuant to clause (i) shall be submitted under penalty of perjury.

(D) For purposes of this paragraph, "dispose" or "disposal" shall mean the removal and destruction of an abandoned mobilehome from a mobilehome park, thus making it unusable for any purpose and not subject to, or eligible for, use in the future as a mobilehome.

(f)   All written notices required by this section, except the notice in paragraph (2) of subdivision (e), shall be sent to the other party by certified or registered mail with return receipt requested.

(g)   Satisfaction, pursuant to this section, of the homeowner's accrued or accruing responsibilities and liabilities shall not cure the default of the homeowner.

(Amended by Stats. 2015, Chap. 376 (AB 999, Daly), eff. 1/1/2016)

**798.57      STATEMENT OF REASONS IN NOTICE**
The management shall set forth in a notice of termination, the reason relied upon for the termination with specific facts to permit determination of the date, place, witnesses, and circumstances concerning that reason.  Neither reference to the section number or a subdivision thereof, nor a recital of the language of this article will constitute compliance with this section.

(Enacted by Stats. 1978, Chap. 1031 (SB 2119, Mills), eff. 1/1/1979)

**798.58      NO TERMINATION TO MAKE SPACE FOR PARK OWNER'S BUYER**
Tenancy may only be terminated for reasons contained in Section 798.56, and a tenancy may not be terminated for the purpose of making a homeowner's site available for a person who purchased or proposes to purchase, or rents or proposes to rent, a mobilehome from the owner of the park or the owner's agent.

(Amended by Stats. 2002, Chap. 672 (SB 1410, Chesbro), eff. 1/1/2003)

**798.59      60-DAY NOTICE BY RESIDENT OF TERMINATION**
A homeowner shall give written notice to the management of not less than 60 days before vacating his or her tenancy.

(Amended by Stats. 1982, Chap. 1397 (AB 2429, Cortese), eff. 1/1/1983)

**798.60      APPLICATION OF OTHER UNLAWFUL DETAINER LAWS**
The provisions of this article shall not affect any rights or proceedings set forth in Chapter 4 (commencing with Section 1159) of Title 3 of Part 3 of the Code of Civil Procedure except as otherwise provided herein.

(Amended by Stats. 1978, Chap. 1033 (SB 2120, Mills), eff. 1/1/1979)

**798.61      ABANDONED MOBILEHOMES - PROCEDURES**
(a)   (1)   As used in this section, "abandoned mobilehome" means a mobilehome about which all of the following are true:
            (A)   It is located in a mobilehome park on a site for which no rent has been paid to the management for the preceding 60 days.
            (B)   It is unoccupied.
            (C)   A reasonable person would believe it to be abandoned.
            (D)   It is not permanently affixed to the land.
      (2)   As used in this section:
            (A)   "Mobilehome" shall include a trailer coach, as defined in Section 635 of the Vehicle Code, or a recreational vehicle, as defined in Section 18010 of the Health and Safety Code, if the trailer coach or recreational vehicle also satisfies the requirements of paragraph (1), including being located on any site within a mobilehome park, even if the site is in a separate designated section pursuant to Section 18215 of the Health and Safety Code.
            (B)   "Abandoned mobilehome" shall include a mobilehome that is uninhabitable because of its total or partial destruction which cannot be rehabilitated, if the mobilehome also satisfies the requirements of paragraph (1).
            (C)   "Dispose" or "disposal" shall mean the removal and destruction of an abandoned mobilehome from a mobilehome park, thus making it unusable for any purpose and not subject to, or eligible for, use in the future as a mobilehome.

(b)   After determining a mobilehome in a mobilehome park to be an abandoned mobilehome, the management shall post a notice of belief of abandonment on the mobilehome for not less than 30 days, and shall deposit copies of the notice in the United States mail, postage prepaid, addressed to the homeowner at the last known address and to any known registered owner, if different from the homeowner, and to any known holder of a security interest in the abandoned mobilehome.  This notice shall be mailed by registered or certified mail with a return receipt requested.

(c)   (1)   Thirty or more days following posting pursuant to subdivision (b), the management may file a petition in the superior court in the county in which the mobilehome park is located, for a judicial declaration of abandonment of the mobilehome.  A proceeding under this subdivision is a limited civil case.  Copies of the petition shall be

served upon the homeowner, any known registered owner, and any known person having a lien or security interest of record in the mobilehome by posting a copy on the mobilehome and mailing copies to those persons at their last known addresses by registered or certified mail with a return receipt requested in the United States mail, postage prepaid.

(2) To dispose of an abandoned mobilehome pursuant to subdivision (f), the management shall also do all of the following:

    (A) Declare in the petition that the management will dispose of the abandoned mobilehome, and therefore will not seek a tax clearance certificate as set forth in Section 5832 of the Revenue and Taxation Code.

    (B) Declare in the petition whether the management intends to sell the contents of the abandoned mobilehome before its disposal.

    (C) Notify the county tax collector in the county in which the mobilehome park is located of the declaration that management will dispose of the abandoned mobilehome by sending a copy of the petition by first class mail.

    (D) Declare in the petition that management intends to file a notice of disposal with the Department of Housing and Community Development and complete the disposal process consistent with the requirements of subdivision (f).

(d) (1) Hearing on the petition shall be given precedence over other matters on the court's calendar.

    (2) If, at the hearing, the petitioner shows by a preponderance of the evidence that the criteria for an abandoned mobilehome has been satisfied and no party establishes an interest therein at the hearing and tenders all past due rent and other charges, the court shall enter a judgment of abandonment, determine the amount of charges to which the petitioner is entitled, and award attorney's fees and costs to the petitioner. For purposes of this subdivision, an interest in the mobilehome shall be established by evidence of a right to possession of the mobilehome or a security or ownership interest in the mobilehome.

    (3) A default may be entered by the court clerk upon request of the petitioner, and a default judgment shall be thereupon entered, if no responsive pleading is filed within 15 days after service of the petition by mail.

(e) To sell an abandoned mobilehome, the management shall do all of the following:

    (1) (A) Within 10 days following a judgment of abandonment, the management shall enter the abandoned mobilehome and complete an inventory of the contents and submit the inventory to the court.

        (B) During this period the management shall post and mail a notice of intent to sell the abandoned mobilehome and its contents under this section, and announcing the date of sale, in the same manner as provided for the notice of determination of abandonment under subdivision (b). The management shall also provide notice to the county tax collector in the county in which the mobilehome park is located.

        (C) At any time prior to the sale of an abandoned mobilehome or its contents under this section, any person having a right to possession of the abandoned mobilehome may recover and remove it from the premises upon payment to the management of all rent or other charges due, including reasonable costs of storage and other costs awarded by the court. Upon receipt of this payment and removal of the abandoned mobilehome from the premises pursuant to this paragraph, the management shall immediately file an acknowledgment of satisfaction of judgment pursuant to Section 724.030 of the Code of Civil Procedure.

    (2) Following the judgment of abandonment, but not less than 10 days following the notice of sale specified in paragraph (1), the management may conduct a public sale of the abandoned mobilehome its contents, or both. The management may bid at the sale and shall have the right to offset its bids to the extent of the total amount due it under this section. The proceeds of the sale shall be retained by the management, but any unclaimed amount thus retained over and above the amount to which the management is entitled under this section shall be deemed abandoned property and shall be paid into the treasury of the county in which the sale took place within 30 days of the date of the sale. The former homeowner or any other owner may claim any or all of that unclaimed amount within one year from the date of payment to the county by making application to the county treasurer or other official designated by the county. If the county pays any or all of that unclaimed amount to a claimant, neither the county nor any officer or employee of the county is liable to any other claimant as to the amount paid.

    (3) Within 30 days of the date of the sale, the management shall submit to the court an accounting of the moneys received from the sale and the disposition of the money and the items contained in the inventory submitted to the court pursuant to paragraph (1).

    (4) The management shall provide the purchaser at the sale of an abandoned mobilehome with a copy of the judgment of abandonment and evidence of the sale, as shall be specified by the Department of Housing and Community Development, which shall register title in the abandoned mobilehome to the purchaser upon presentation thereof within 20 days of purchase. The sale shall pass title to the purchaser free of any prior

2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

interest, including any security interest or lien, except the lien provided for in Section 18116.1 of the Health & Safety Code, in the abandoned mobilehome.

(f)    To dispose of an abandoned mobilehome, the management shall do all of the following:

    (1)    (A)    Within 10 days following a judgment of abandonment, the management shall enter the abandoned mobilehome and complete an inventory of the contents and submit the inventory to the court.

        (B)    Within 10 days following a judgment of abandonment, the management shall post and mail a notice of intent to dispose of the abandoned

        mobilehome and its contents under this section, and announcing the date of disposal, in the same manner as provided for the notice of determination of abandonment under subdivision (b). The management shall also provide notice to the county tax collector in the county in which the mobilehome park is located.

        (C)    (i)    Within 30 days following a judgment of abandonment, the management shall file a notice of disposal with the Department of Housing and Community Development in the form and manner as prescribed by the department.

            (ii)    Notwithstanding any other law, when filing a notice of disposal pursuant to clause (i), the management shall not be required to pay past or current vehicle license fees required by Section 18115 of the Health and Safety Code or obtain a tax clearance certificated as set forth in Section 5832 of the Revenue and Taxation Code, provided that the management notifies the county tax collector in the county in which the mobilehome is located of the management's intent to apply to have the mobilehome designated for disposal pursuant to this subdivision. The written notice shall be sent to the county tax collector no less than 10 days after the date of the abandonment judgment by first class mail, postage prepaid.

        (D)    At any time prior to the disposal of an abandoned mobilehome or its contents under this section, any person having a right to possession of the abandoned mobilehome may recover and remove it from the premises upon payment to the management of all rent or other charges due, including reasonable costs of storage and other costs awarded by the court. Upon receipt of this payment and removal of the abandoned mobilehome from the premises pursuant to this subparagraph, the management shall immediately file an acknowledgment of satisfaction of judgment pursuant to Section 724.030 of the Code of Civil Procedure and a cancellation of the notice of disposal with the Department of Housing and Community Development.

    (2)    Following the judgment of abandonment and approval of the notice of disposal by the Department of Housing and Community Development, but not less than 10 days following the notice of disposal specified in paragraph (1), the management may dispose of the abandoned mobilehome after obtaining the information required in subparagraph (A) of paragraph (3).

    (3)    (A)    Within 30 days of the date of the disposal of an abandoned mobilehome and its contents, the management shall do both of the following:

        (i)    Submit to the court and the county tax collector in the county in which the mobilehome park is located a statement that the abandoned mobilehome and its contents were disposed with supporting documentation.

        (ii)    (I)    Submit to the Department of Housing and Community Development all of the following information required for completing the disposal process:

            (ia)    Photographs identifying and demonstrating that the mobilehome was uninhabitable by the removal or destruction of all appliances and fixtures such as ovens, stoves, bathroom fixtures, and heating or cooling appliances prior to its being moved.

            (ib)    A statement of facts as to the condition of the mobilehome when moved, the date it was moved, and the anticipated site of further dismantling or disposal.

            (ic)    The name, address, and license number of the person or entity removing the mobilehome from the mobilehome park.

          (II)    The information required pursuant to subclause (I) shall be submitted under penalty of perjury.

        (B)    Within 30 days of the date of the disposal of an abandoned mobilehome or the date of the sale of its contents, whichever date is later, the management shall submit to the court and the county tax collector in the county in which the mobilehome park is located an accounting of the moneys received from the sale and the disposition of the money and the items contained in the inventory submitted to the court pursuant to paragraph (1) and a statement that the abandoned mobilehome was disposed with supporting documentation.

(g)    Notwithstanding any other law, the management shall not be required to obtain a tax clearance certificate, as set forth in Section 5832 of the Revenue and Taxation Code, to dispose of an abandoned mobilehome and its contents pursuant to subdivision (f). However, any sale pursuant to this section shall be subject to the registration

24

requirements of Section 18100.5 of the Health and Safety Code and the tax clearance certificate requirements of Section 18092.7 of the Health and Safety Code.

(Amended by Stats. 2015, Chap. 376 (AB 999, Daly), eff. 1/1/2016)

ARTICLE 7 - TRANSFER OF MOBILEHOME OR MOBILEHOME PARK

**798.70    "FOR SALE" SIGNS**

(a)    A homeowner, an heir, joint tenant, or personal representative of the estate who gains ownership of a mobilehome in the mobilehome park through the death of the owner of the mobilehome who was a homeowner at the time of his or her death, or the agent of any such person, may advertise the sale or exchange of his or her mobilehome, or, if not prohibited by the terms of an agreement with the management, may advertise the rental of his or her mobilehome, by displaying one sign in the window of the mobilehome, or by one sign posted on the side of the mobilehome facing the street, or by one sign in front of the mobilehome facing the street, stating that the mobilehome is for sale or exchange or, if not prohibited, for rent by the owner of the mobilehome or his or her agent. Any such person also may display one sign conforming to these requirements indicating that the mobilehome is on display for an "open house," if allowed by the park. The park may allow open houses and may establish reasonable rules or regulations governing how an open house may be conducted, including rules regarding the number of houses allowed to be open at one time, hours, and parking. The sign shall state the name, address, and telephone number of the owner of the mobilehome or his or her agent and the sign face shall not exceed 24 inches in width and 36 inches in height. Signs posted in front of a mobilehome pursuant to this section may be of an H-frame, A-frame, L-frame, or generally accepted yard-arm type design with the sign face perpendicular to, but not extending into, the street. Management may require the use of a step-in L-frame sign. Homeowners may attach to the sign or their mobilehome tubes or holders for leaflets that provide information on the mobilehome for sale, exchange, or rent.

(b)    This section shall become operative on July 1, 2016.

(Added by Chap. 288, Stats. of 2015 (SB 419, McGuire), eff. 7/1/2016)

**798.71    MANAGEMENT SHOWING OR LISTING – PROHIBITIONS**

(a)    (1)    The management may not show or list for sale a manufactured home or mobilehome without first obtaining the owner's written authorization. The authorization shall specify the terms and conditions regarding the showing or listing.

   (2)    Management may require that a homeowner advise management in writing that his or her manufactured home or mobilehome is for sale. If management requires that a homeowner advise management in writing that his or her manufactured home or mobilehome is for sale, failure to comply with this requirement does not invalidate a transfer.

(b)    The management shall prohibit neither the listing nor the sale of a manufactured home or mobilehome within the park by the homeowner, an heir, joint tenant, or personal representative of the estate who gains ownership of a manufactured home or mobilehome in the mobilehome park through the death of the owner of the manufactured home or mobilehome who was a homeowner at the time of his or her death, or the agent of any such person other than the management. For purposes of this section, "listing" includes advertising the address of the home to the general public.

(c)    The management shall not require the selling homeowner, or an heir, joint tenant, or personal representative of the estate who gains ownership of a manufactured home or mobilehome in the mobilehome park through the death of the owner of the manufactured home or mobilehome who was a homeowner at the time of his or her death, to authorize the management or any other specified broker, dealer, or person to act as the agent in the sale of a manufactured home or mobilehome as a condition of resale of the home in the park or of management's approval of the buyer or prospective homeowner for residency in the park.

(d)    The management shall not require a homeowner, who is replacing a mobilehome or manufactured home on a space in the park, in which he or she resides, to use a specific broker, dealer, or other person as an agent in the purchase of or installation of the replacement home.

(e)    Nothing in this section shall be construed as affecting the provisions of the Health and Safety Code governing the licensing of manufactured home or mobilehome salespersons or dealers.

(f)    This section shall become operative on July 1, 2016.

(Added by Chap. 288, Stats. 2015 (SB 419; McGuire), eff. 7/1/2016)

**798.72    NO TRANSFER OR SELLING FEE**

(a)    The management shall not charge a homeowner, an heir, joint tenant, or personal representative of the estate who

25

gains ownership of a mobilehome in the mobilehome park through the death of the owner of the mobilehome who was a homeowner at the time of his or her death, or the agent of any such person a transfer or selling fee as a condition of a sale of his mobilehome within a park unless the management performs a service in the sale.  The management shall not perform any such service in connection with the sale unless so requested, in writing, by the homeowner, an heir, joint tenant, or personal representative of the estate who gains ownership of a mobilehome in the mobilehome park through the death of the owner of the mobilehome who was a homeowner at the time of his or her death, or the agent of any such person.

(b)  The management shall not charge a prospective homeowner or his or her agent, upon purchase of a mobilehome, a fee as a condition of approval for residency in a park unless the management performs a specific service in the sale.  The management shall not impose a fee, other than for a credit check in accordance with subdivision (b) of Section 798.74, for an interview of a prospective homeowner.

(Amended by Stats. 1989, Chap. 745 (AB 1914, N.Waters), eff. 1/1/1990)

**798.73        REMOVAL OF MOBILEHOME UPON SALE TO THIRD PARTY**

The management shall not require the removal of a mobilehome from the park in the event of the sale of the mobilehome to a third party during the term of the homeowner's rental agreement or in the 60 days following the initial notice required by paragraph (1) of subdivision (b) of Section 798.55.  However, in the event of a sale to a third party, in order to upgrade the quality of the park, the management may require that a mobilehome be removed from the park where:

(a)  It is not a "mobilehome" within the meaning of Section 798.3.

(b)  It is more than 20 years old, or more than 25 years old if manufactured after September 15, 1971, and is 20 feet wide or more, and the mobilehome does not comply with the health and safety standards provided in Sections 18550, 18552, and 18605 of the Health and Safety Code and the regulations established thereunder, as determined following an inspection by the appropriate enforcement agency, as defined in Section 18207 of the Health and Safety Code.

(c)  The mobilehome is more than 17 years old, or more than 25 years old if manufactured after September 15, 1971, and is less than 20 feet wide, and the mobilehome does not comply with the construction and safety standards under Sections 18550, 18552, and 18605 of the Health and Safety Code and the regulations established thereunder, as determined following an inspection by the appropriate enforcement agency, as defined in Section 18207 of the Health and Safety Code.

(d)  It is in a significantly rundown condition or in disrepair, as determined by the general condition of the mobilehome and its acceptability to the health and safety of the occupants and to the public, exclusive of its age.  The management shall use reasonable discretion in determining the general condition of the mobilehome and its accessory structures.  The management shall bear the burden of demonstrating that the mobilehome is in a significantly rundown condition or in disrepair.  The management of the park may not require repairs or improvements to the park space or property owned by the management, except for damage caused by the actions or negligence of the homeowner or an agent of the homeowner.

(e)  The management shall not require a mobilehome to be removed from the park, pursuant to this section, unless the management has provided to the homeowner notice particularly specifying the condition that permits the removal of the mobilehome.

(Amended by Stats. 2008, Chap. 179 (SB 1498, Committee on Judiciary), eff. 1/1/2009)

The following intent language appears in Section 3 of AB 682 (Chap. 561, Stat. 2004) but not in this code:
"This act is not intended to provide the purchaser of a mobilehome a right to a tenancy in a mobilehome park when the selling tenant has had his or her tenancy terminated pursuant to subdivision (f) or (g) of Section 798.56 of the Civil Code."
The following intent language appears in Section 4 of AB 682 (Chap. 561, Stat. 2004) but not in this code:
"This act is not intended to affect park management's existing rights and remedies to recover unpaid rent, utility charges, or reasonable incidental charges, and may not be construed to provide for an exclusive remedy."

**798.73.5        HOME UPGRADES ON RESALE**

(a)  In the case of a sale or transfer of a mobilehome that will remain in the park, the management may only require repairs or improvements to the mobilehome, its appurtenances, or an accessory structure that meet all of the following conditions:

(1)  Except as provided by Section 798.83, the repair or improvement is to the mobilehome, its appurtenances, or an accessory structure that is not owned and installed by the management.

(2)  The repair or improvement is based upon or is required by a local ordinance or state statute or regulation relating to mobilehomes, or a rule or regulation of the mobilehome park that implements or enforces a local ordinance or a state statute or regulation relating to mobilehomes.

(3)  The repair or improvement relates to the exterior of the mobilehome, its appurtenances, or an accessory structure that is not owned and installed by the management.

(b)  The management, in the case of sale or transfer of a mobilehome that will remain in the park, shall provide a homeowner with a written summary of repairs or improvements that management requires to the mobilehome, its appurtenances, or an accessory structure that is not owned and installed by the management no later than 10 business days following the receipt of a request for this information, as part of the notice required by Section 798.59. This summary shall include specific references to park rules and regulations, local ordinances, and state statutes and regulations relating to mobilehomes upon which the request for repair or improvement is based.

(c)  The provisions of this section enacted at the 1999–2000 Regular Session of the Legislature are declarative of existing law as they pertain to allowing park management to enforce park rules and regulations; these provisions specifically limit repairs and improvements that can be required of a homeowner by park management at the time of sale or transfer to the same repairs and improvements that can be required during any other time of a residency.

(Added by Stats. 2000, Chap. 554 (AB 2239, Corbett), eff. 1/1/2001)

### 798.74   MANAGEMENT APPROVAL OF BUYER; CREDIT RATING REFUND

(a)  The management may require the right of prior approval of a purchaser of a mobilehome that will remain in the park and that the selling homeowner or his or her agent give notice of the sale to the management before the close of the sale. Approval cannot be withheld if the purchaser has the financial ability to pay the rent and charges of the park unless the management reasonably determines that, based on the purchaser's prior tenancies, he or she will not comply with the rules and regulations of the park. In determining whether the purchaser has the financial ability to pay the rent and charges of the park, the management shall not require the purchaser to submit copies of any personal income tax returns in order to obtain approval for residency in the park. However, management may require the purchaser to document the amount and source of his or her gross monthly income or means of financial support. Upon written request of any selling homeowner or prospective homeowner who proposes to purchase a mobilehome that will remain in the park, management shall inform that person, in writing, of the information management will require and the standards that will be utilized in determining if the person will be acceptable as a homeowner in the park.

Within 15 business days of receiving all of the information requested from the prospective homeowner, the management shall notify the seller and the prospective homeowner, in writing, of either acceptance or rejection of the application, and the reason if rejected. During this 15-day period the prospective homeowner shall comply with the management's request, if any, for a personal interview. If the approval of a prospective homeowner is withheld for any reason other than either of the following, the management or owner may be held liable for all damages proximately resulting therefrom:

(1)  Reasons stated in this article.

(2)  Reasons based upon fraud, deceit, or concealment of material facts by the prospective purchaser.

(b)  If the management collects a fee or charge from a prospective purchaser of a mobilehome in order to obtain a financial report or credit rating, the full amount of the fee or charge shall be credited toward payment of the first month's rent for that mobilehome purchaser. If, for whatever reason, the prospective purchaser is rejected by the management, the management shall refund to the prospective purchaser the full amount of that fee or charge within 30 days from the date of rejection. If the prospective purchaser is approved by the management, but, for whatever reason, the prospective purchaser elects not to purchase the mobilehome, the management may retain the fee, or a portion thereof, to defray its administrative costs under this section.

(c)  This section shall become operative on July 1, 2016.

(Added by Stat. 2015, Chap. 288 (SB 419, McGuire), eff. 7/1/2016)

### 798.74.4   MOBILEHOME RESALE DISCLOSURE TO NEW BUYER

The transfer or sale of a manufactured home or mobilehome in a mobilehome park is subject to the transfer disclosure requirements and provisions set forth in Article 1.5 (commencing with Section 1102) of Chapter 2 of Title 4 of Part 4 of the Civil Code.  The requirements include, but are not limited to, the use of the Manufactured Home and Mobilehome Transfer Disclosure Statement set forth in Section 1102.6d of the Civil Code.

(Added by Stats. 2003, Chap. 249 (SB 116, Dunn), eff. 1/1/2004)

### 798.74.5   RENT DISCLOSURE TO PROSPECTIVE HOMEOWNERS

(a)  Within two business days of receiving a request from a prospective homeowner for an application for residency for a specific space within a mobilehome park, if management has been advised that the mobilehome occupying that space is for sale, the management shall give the prospective homeowner a separate document in at least 12-point type entitled ''INFORMATION FOR PROSPECTIVE HOMEOWNERS,'' which includes the following statements:

2018 CALIFORNIA MOBILEHOME RESIDENCY LAW

"As a prospective homeowner you are being provided with certain information you should know prior to applying for tenancy in a mobilehome park. This is not meant to be a complete list of information.

Owning a home in a mobilehome park incorporates the dual role of "homeowner" (the owner of the home) and park resident or tenant (also called a "homeowner" in the Mobilehome Residency Law). As a homeowner under the Mobilehome Residency Law, you will be responsible for paying the amount necessary to rent the space for your home, in addition to other fees and charges described below. You must also follow certain rules and regulations to reside in the park.

If you are approved for tenancy, and your tenancy commences within the next 30 days, your beginning monthly rent will be $_____ (must be completed by the management) for space number _____ (must be completed by the management). Additional information regarding future rent or fee increases may also be provided.

In addition to the monthly rent, you will be obligated to pay to the park the following additional fees and charges listed below. Other fees or charges may apply depending upon your specific requests. Metered utility charges are based on use.

_____

_____

(Management shall describe the fee or charge and a good faith estimate of each fee or charge.)

Some spaces are governed by an ordinance, rule, regulation, or initiative measure that limits or restricts rents in mobilehome parks. These laws are commonly known as "rent control." Prospective purchasers who do not occupy the mobilehome as their principal residence may be subject to rent levels which are not governed by these laws. (Civil Code Section 798.21) Long-term leases specify rent increases during the term of the lease. By signing a rental agreement or lease for a term of more than one year, you may be removing your rental space from a local rent control ordinance during the term, or any extension, of the lease if a local rent control ordinance is in effect for the area in which the space is located.

A fully executed lease or rental agreement, or a statement signed by the park's management and by you stating that you and the management have agreed to the terms and conditions of a rental agreement, is required to complete the sale or escrow process of the home. You have no rights to tenancy without a properly executed lease or agreement or that statement. (Civil Code Section 798.75)

If the management collects a fee or charge from you in order to obtain a financial report or credit rating, the full amount of the fee or charge will be either credited toward your first month's rent or, if you are rejected for any reason, refunded to you. However, if you are approved by management, but, for whatever reason, you elect not to purchase the mobilehome, the management may retain the fee to defray its administrative costs. (Civil Code Section 798.74)

We encourage you to request from management a copy of the lease or rental agreement, the park's rules and regulations, and a copy of the Mobilehome Residency Law. Upon request, park management will provide you a copy of each document. We urge you to read these documents before making the decision that you want to become a mobilehome park resident.

Dated: _____

Signature of Park Manager: _____

Acknowledge Receipt by Prospective Homeowner: _____

(b) Management shall provide a prospective homeowner, upon his or her request, with a copy of the rules and regulations of the park and with a copy of this chapter.

(Amended by Stats. 2012, Chap. 337 (AB 317, Calderon), eff. 10/1/2013)

**798.75      RENTAL AGREEMENT REQUIRED FOR PARK OCCUPANCY**

(a) An escrow, sale, or transfer agreement involving a mobilehome located in a park at the time of the sale, where the mobilehome is to remain in the park, shall contain a copy of either a fully executed rental agreement or a statement signed by the park's management and the prospective homeowner that the parties have agreed to the terms and conditions of a rental agreement.

(b) In the event the purchaser fails to execute the rental agreement, the purchaser shall not have any rights of tenancy.

(c) In the event that an occupant of a mobilehome has no rights of tenancy and is not otherwise entitled to occupy the mobilehome pursuant to this chapter, the occupant is considered an unlawful occupant if, after a demand is made for the surrender of the mobilehome park site, for a period of five days, the occupant refuses to surrender the site to the mobilehome park management. In the event the unlawful occupant fails to comply with the demand, the unlawful occupant shall be subject to the proceedings set forth in Chapter 4 (commencing with Section 1159) of Title 3 of Part 3 of the Code of Civil Procedure.

(d) The occupant of the mobilehome shall not be considered an unlawful occupant and shall not be subject to the

provisions of subdivision (c) if all of the following conditions are present:

(1)    The occupant is the registered owner of the mobilehome.

(2)    The management has determined that the occupant has the financial ability to pay the rent and charges of the park, will comply with the rules and regulations of the park, based on the occupant's prior tenancies, and will comply with this article.

(3)    The management failed or refused to offer the occupant a rental agreement.

(Amended by Stats. 1990, Chap. 645 (SB 2340, Kopp), eff. 1/1/1991)

**798.75.5    MOBILEHOME PARK DISCLOSURE FORM**

(a)    The management shall provide a prospective homeowner with a completed written disclosure form concerning the park described in subdivision (b) at least three days prior to execution of a rental agreement or statement signed by the park management and the prospective homeowner that the parties have agreed to the terms and conditions of the rental agreement.  The management shall update the information on the disclosure form annually, or, in the event of a material change in the condition of the mobilehome park, at the time of the material change in that condition.

(b)    The written disclosure form shall read as follows:

(see next page)

*rent decrease*

**#46**  **Can the park manager reduce or eliminate park services and amenities that resident have already been paying for?**

~~Yes, if the services or amenities~~ are not guaranteed in a signed rental or lease agreement.  However, if the services and amenities are part of a signed lease or rental agreement (Civil Code 798.15(f)), they may be eliminated with equal reduction in rent.

**Recap:**
- The park management can reduce or eliminate park features if they are not agreed upon in a signed lease or rental agreement.

**#47**  **Can the park owner or manager move lot lines without permission from residents whose spaces are affected?**

Before moving a lot line, the management must obtain a permit (H&S Code Sec. 18610.5) from the state Department of Housing and Community Development and verify that the park has obtained the consent of homeowners affected by the lot line change.  However, in some older parks there are no markers or defined lot lines and no plot maps indicating where the lot lines should be.  In cases where there is no documented evidence of original lot lines, HCD may not be able to determine that the lot line has been moved and that a permit is required.  The issue then becomes a legal matter between the park management and the affected homeowners.

**Recap:**
- A permit is required from the state Dept. of Housing before the park moves lot lines.
- In old parks with no official lot line maps, moving lot lines may require legal or regulatory oversight.

**#48**  **Can the park manager force residents to pay for maintenance or removal of a tree on their space and for maintenance of their driveway?**

It depends on the facts of the case.  The "tree and driveway" issue has been subject to major debate for years.  The park owner is responsible for maintenance or removal of a tree on the homeowner's space only if it is a hazard or constitutes a health and safety violation, as determined by the enforcement/inspection agency (usually HCD).  (Civil Code §798.37.5)  Homeowners may have to pay a fee for an inspection where there is a dispute between the park and the homeowner over the tree and where the homeowner requests an inspection by HCD or the local enforcement agency.  Inspectors have wide discretion in this regard, and if the inspector does not find a violation, the homeowner may end up having to pay to remove the tree anyway.

With regard to driveways, the park owner is responsible for maintenance unless the homeowner has damaged the driveway or the driveway was homeowner installed.  Legal counsel has suggested, however, that Civil Code Sec. 798.37.5(c) seems to leave open the question whether a current homeowner is responsible for maintenance of a driveway installed by a prior homeowner, arguing that such a prior installed fixture belongs to the park.

**Recap:**
- If the signed lease or rental agreement makes the homeowner responsible, then the homeowner must pay.
- If there is no stipulation of responsibility in the lease agreement, then the park is only responsible if it is a health and safety hazard.
- Driveways may be the responsibility of park unless the driveway was homeowner installed or damaged by the homeowner.

*#3~~5~~*

**#49**  **Is the mobilehome owner or the park owner responsible for correcting pre-existing code violations on the space?**

The mobilehome owner is responsible.  (Civil Code 798.36).  Although the park operator is ultimately responsible for assuring that all citations on park property are corrected, the law does not require the park operator to pay for code violations involving the home or space except in rare instances.  The homeowner is primarily responsible for correcting any violations concerning the home or space on which he/she resides, including any pre-existing code violations after the sale of the home.  This is one of the reasons that real estate disclosure was enacted in 2000 for mobilehome resales, although conditions not known to the seller cannot be disclosed.  (Civil Code §1102.6d)

**Recap:**
- The homeowner is responsible for correcting any code violations in or on their home, space and accessory structures, including pre-existing code violations.

**#50**  **Does a resident need a permit from HCD to remodel their home, even though all the changes and upgrades are on the inside?**

Homeowners need a permit from the state Department of Housing and Community Development (HCD).  Only HCD, not local government, may issue permits for alterations of a mobile home's structural, fire safety, electrical,

#25   **Do residents have any rights to compensation for being dislocated when the park closes down?**

Mobilehome park residents' associations have rights under the notice requirements in the MRL (Civil Code §798.80), and potential relocation assistance under the state Government Code. Where no city permits are required to close or convert the park to another use, the park must give residents at least a one-year written notice of termination of tenancy. (Civil Code §798.56(g)) Where local permits are required, which is usually the case, the park must give residents a 15-day written notice that park management will appear before a local board or planning commission to request permits for a change of use. At the same time, the park must make public the impact report requirements (Civil Code §798.56(h)), and only after approval of all permits by the city can the park then give the residents a 6-month notice of termination. (Govt. §65863.7) Upon approval of the closure or conversion of a mobilehome park to another use, the park must render an impact report to the city on the effect the conversion will have on the residents' dislocation and their ability to find alternative housing. (Govt. §65863.7) The city must then hold a hearing on the impact report and may require the park to pay the reasonable costs of relocation to displaced residents as a condition for obtaining various permits to convert the park and develop the land for another use. Usually this takes several hearings and a number of months. Actual relocation assistance afforded to residents is determined by the city, usually the planning commission or a delegated committee or agency of the commission. Often local governments will have a mobilehome park conversion ordinance which parallels the requirements of state law and fills in the details of the relocation assistance that may be required by the city, whether it is actual relocation of the mobilehome or a buy-out of the home, and how the mobilehome is to be valued for these purposes. If the park is to be subdivided into individual parcels (where a conventional subdivision will replace the park) and where a tentative or final map is required, the city may impose even more stringent relocation requirements. (Govt. Code §66427.4.) Local officials are the final arbiters of any relocation assistance to which displaced mobilehome owners may be entitled.

Recap:
- If no local permits are required for park closure or conversion, then the park must give residents at least one year advance written notice.
- If local permits are required for park closure or conversion, then the park must proceed with relocation guidelines established by state and local law.
- Local officials are the final arbiters of any relocation assistance.

#26   **Do mobilehome park rules prevail over state law?**

No. The park rental agreement and the park rules and regulations must be consistent with the MRL and other laws that apply in parks. For example, a park rental agreement or rule that provides the park may increase the rent with a 30-day notice to a homeowner who owns the mobilehome in the park would be in conflict with Civil Code Sec. 798.30, which provides that such a rent increase requires a 90-day notice. In this example, the MRL prevails over the conflicting park rule.

Recap:
- State laws prevail over park rules.

#26.1   **Is the park manager responsible for distributing the Mobilehome Residency Law to every resident annually?**

Prior to February 1 of each year, if a significant change was made to the MRL, the park owner or manager shall provide all homeowners with a copy of the MRL, or provide written notice to all homeowners that there has been a change to the MRL and that homeowners may obtain a copy of the MRL from the management at no charge. Upon request of the homeowner, management must provide a copy within seven days. (Civil Code §798.15(c)). NOTE: The management must provide a copy of the MRL only, as specified. The MRL is Civil Code 798-798.88. Management is not required to distribute the handbook published by the State Senate, casually referred to as "The MRL."

#26.2   **When will the CA State Senate's MRL handbook be translated? There is great demand for Spanish, Vietnamese and other languages.**

For many years, the State Senate translated the Mobilehome Residency Law (MRL) into Spanish. At one time the MRL was also available in Vietnamese. The last Spanish translation was done in 2012, and the last Vietnamese translation was done in 2007. Over the years, budget cuts have made it impossible to acquire updated translations. Since the MRL is in the public domain, communities may translate the MRL for their members. NOTE: For 2017, the FAQs will be available in Spanish.

**Recap:**
- Lease agreements that stipulate "senior" status and provide for specific senior amenities could be viewed as breached if the senior-status of the park is changed.
- Senior park status requires 80% of park units to have at least one resident 55 or older.
- The law does not require parks that are converted to "all-age" to install children's recreational facilities.
- No federal law specifically addresses guidelines for changing from "senior" to "all-age".

**#31   Is it legal for our all-age park to change back to a senior-only park?**
This is an issue that has changed over the years. Pursuant to the passage of the Federal Fair Housing Amendments Act in 1988, and the adoption of federal HUD regulations to carry out the Act, it was originally believed that multiple residential communities could not backtrack once they had decided to open up to an "all-age" status. However, under the Housing for Older Persons Act of 1995 (HOPA), which amended the 1988 Act, regulations established a transition period until 2000 to provide a mechanism for communities to become housing for older persons if they had abandoned or did not achieve such status before HOPA. Then, in 2006, HUD adopted a memo to clarify how communities that did not convert to housing for older persons before the 2000 transition period deadline could do so. If vacated spaces fill up with qualifying seniors (55 or older), and the park does not discourage or discriminate against younger people from buying available homes when these vacancies occur, the park can be "built back" to a senior status. However, this is difficult to achieve and few parks, once they become family parks, have been able to go back to a 55-or-older status.
**Recap:**
- Reverting to a senior-only park is allowable, but rarely achievable.

**#32   What rights do residents with disabilities have?**
Residents with disabilities are entitled to be free from harassment and discrimination in all aspects of housing. They also have a right to reasonable accommodation in rules, policies, practices, or services related to housing. This normally takes the form of a change in an existing rule, policy, practice or service, such as allowing an assistive animal even though the current rental agreement has a "no pet" provision. Residents with disabilities are also permitted, at their own expense and with proper permits, to modify their dwellings, e.g., by building a ramp, to ensure full enjoyment of the premises. (Civ. 798.29.6) Modifications require obtaining proper permits beforehand. For additional information, contact the state Department of Fair Employment and Housing at (800) 233-3212, or at *www.dfeh.ca.gov.*
**Recap:**
- Disabled homeowners have the right to reasonable accommodations.
- Disabled homeowners are permitted to modify their own homes with proper permits.

**#32.1   I am a manager in a mobilehome park where an elderly resident is putting herself in danger. When I call her family, they are unresponsive. What do I do to make sure she and the other residents are safe from harm?**
Contact your county's Adult Protective Services program. APS is a state-mandated program (Welfare & Institutions Code Sec. 15610.10) that provides evaluation and assistance for seniors (age 65 and older) and dependent adults (age 18-64 and physically or mentally impaired) who are reported to be unable to meet their own needs. APS agencies investigate reports of alleged victims endangered by physical, sexual or financial abuse, isolation, neglect, or self-neglect.
**Recap:**
- Call county APS for assistance, evaluation and intervention. (See Community Resources, p. 83)

**#33   Can the government force park management to limit the number of people living in a mobilehome?**
The occupancy standard issue is difficult to solve. The issue has arisen at both the federal and state levels. Legislation has been considered but not enacted to create a "2 persons per bedroom plus 1" standard that is presently only a HUD guideline (e.g., if the home had 1 bedroom, the occupancy standard would be 3 persons; if the home had 2 bedrooms, the standard would be 5 persons, etc.). Proponents argue that occupancy standards are necessary to avoid overcrowding and unhealthy living conditions. Opponents contend that, especially in areas where the cost of housing is high, an occupancy standard may be interpreted as a form of discrimination against persons who can't afford larger homes. Some cities have attempted to legislate occupancy standards, only to have their ordinances challenged in court. Mobilehomes usually have a design standard established by the manufacturer as the recommended occupancy for the size of the home. The park manager could try to establish an occupancy

license/registration/microchip, dog bites, neglect/abuse, spay/neuter, and prohibited aggressive breeds.  Also, according to California Code of Regulations, Title 25 (health and safety requirements for mobilehome parks), Article 2, Section 1114(a), "Dogs and other domestic animals, and cats (domestic or feral) shall not be permitted to roam at-large (free) in any park."  Finally, pet owners may be liable for damage or harm caused by their pets.

**Recap:**
- Contact city or county animal control agency.  (See Community Resources, p. 83)
- Pet owner may be legally liable for damage or harm caused by their pet.
- Feral animals are not pets.

#37    **Is management allowed to restrict parking and have residents' cars towed?**
Residents or guests who park in fire lanes, or in front of park entrances or fire hydrants, can be towed without notice.  Residents' cars cannot be towed from their own parking space or driveway unless the vehicle does not conform to the park rules, in which case a 7-day notice is required. (Civil Code §798.28.5)  However, if a vehicle presents a significant danger to the health and safety of residents, or is parked in another resident's space and that resident requests it be removed, the vehicle could be towed without the 7-day notice. (Civil Code §798.25(b)(2))  The extensive provisions of Vehicle Code Sec. 22658 apply to both the management's and tow company's procedures in removal of the vehicle.

**Recap:**
- Management may have cars towed without notice if the parked car violates the health and safety of residents.
- Management may have cars towed, upon request, if one resident's car is parked in another resident's space.
- A 7-day written advance notice is required if a parked car does not conform to park rules.
- A 7-day notice is not required if a resident parks their car in another resident's space and the displaced resident requests the car be towed.

#38    **Can the park prevent residents from subleasing their mobilehome?**
Yes.  Most mobilehome parks have rules that prohibit homeowners from subleasing their mobilehomes, even in hardship cases.  However, in cases of seniors who require medical convalescence away from their homes, they may sublet for up to one year.  (Civil Code §798.23.5)

**Recap:**
- The park may prohibit a resident from subleasing.

#39    **Is it legal to place RVs on mobilehome spaces?**
It depends on the circumstances.  When mobilehome parks were first constructed, designation as a park would normally have been made as a condition of city or county use permits or zoning requirements.  Therefore, the city would have to enforce the conditions of the permit or zoning ordinance.  The State Department of Housing's Permit to Operate (PTO) reflects the number of mobilehome spaces and the number of RV lots.  In the absence of local permit conditions though, a pre-1982 mobilehome park may allow RV's and mobilehomes to be situated on mobilehome spaces, but only RV's can be situated on RV spaces.  In a mobilehome park developed after January 1, 1982, however, state law provides that mobilehome spaces shall not be rented for the accommodation of RVs unless they are in a separate area of the park designated for RVs and apart from the mobilehomes.

**Recap:**
- In parks developed before 1982: If there are no local permit or zoning restrictions, then RVs and mobilehomes may occupy mobilehome spaces, but mobilehomes may not occupy RV spaces.
- In parks developed after Jan. 1, 1982: No RVs are allowed on mobilehome spaces unless the mobilehome space is in the RV section of the park.

#40    **Can the manager evict a homeowner's caregiver from the park after the homeowner has died?**
It depends upon the circumstances.  Generally, a caregiver – including a caregiver-relative – does not have the right to continue to live in the park even if he or she has inherited the mobilehome.  The caregiver statute (Civil Code §798.34) recognizes that a senior homeowner has the right to have a caregiver, even someone who is 18 or older in a senior park, to assist them with medical needs under a doctor's treatment plan, but the caregiver resident has no right of residency (Civil Code 798.34(c), (d)) and is considered a guest of the homeowner.  Therefore, when the homeowner dies, the caregiver's right to continue to live in the park normally ends.  If, however, the caregiver was a party to the homeowner's rental agreement, or had otherwise been accepted for co-residency by the park while the homeowner was alive, the park could not evict the caregiver after the homeowner's death except for the same

kind of reason they could have evicted the homeowner, such as failure to pay the rent. In either case, whether or not the caregiver has a right of residency in the park, if the caregiver inherits the home, he or she would have the right to resell it in place if they continue to pay the rent and fees and comply with other requirements of resale until the home is sold. (Civ. 798.78)

**Recap:**
- If the caregiver, or caregiver-heir is not listed on the rental or lease agreement, then they cannot assume they have inherited residency rights.
- The heir is responsible for rents and fees until the home is sold.

#41    **How do residents get the park owner to fix the failing utility systems?**
Contact the Department of Housing and Community Development (HCD) or local government, whichever has jurisdiction to inspect mobilehome parks. In more serious cases, residents may wish to consider legal counsel.

**Recap:**
- Contact the code enforcement agency -- either state Dept. of Housing or local health department.

#42    **Is the park manager allowed to force residents to correct code violations to their homes and spaces before a scheduled inspection by the state Dept. of Housing?**
The state Department of Housing (HCD) operates a park inspection program with a goal of completing inspections in at least 5% of the parks in the state per year in order to assure that a reasonable level of health and safety is maintained in those parks. The inspection includes the park common facilities, such as lighting, roads, clubhouse, utilities, and other facilities for which the park is responsible, as well as individual home site spaces, including the outside of the homes and accessory structures for which the homeowner is responsible. HCD inspectors do not go inside a home unless requested to do so by the homeowner. Citations for violations, depending upon how serious, must either be corrected as soon as possible or within 30 to 60 days. Inspectors have the authority to extend the deadline for compliance if the situation warrants it. Homeowners may appeal a citation to HCD if they feel it is unwarranted. (HCD does not have authority to assess fines against homeowners who do not comply.)

**Recap:**
- The park manager may urge residents to correct code violations on the outside of their homes or on their spaces, or else the resident may risk citation by HCD.

#43    **Which government agency is responsible for enforcement of health and safety regulations in my park?**
In most cases, the state Department of Housing and Community Development has enforcement authority over mobilehome and RV parks. However, there are a few cities and counties that maintain code enforcement in their jurisdictions. View the "Mobilehome and Special Occupancy (RV) Parks listing" at *www.hcd.ca.gov* to find out which agency is responsible for code enforcement in your park.

#44    **What is the difference between the Mobilehome Residency Law (MRL) and Title 25?**
The MRL is the "landlord-tenant" law (Civil Code 798. et seq.) for mobilehome park residency, governing the rights of park residents. "Title 25", a section of the California Code of Regulations, governs the health and safety aspects of a mobilehome park's buildings, lot lines, and utilities infrastructure, to name a few. Find Title 25 at *www.hcd.ca.gov.*

#45    **Does the park manager have the right to tell me to remove my belongings that are stored on my space?**
The park manager has an obligation to keep the park safe from fire. According to California Code of Regulations, Title 25 (health and safety requirements for mobilehome parks), Article 2, Section 1120, "Occupants shall keep the lot area and the area under, around, or on their unit and accessory buildings or structures free from an accumulation of refuse, rubbish, paper, leaves, brush or other combustible material," and that park operators "...shall ensure that a collection system is provided and maintained, with covered containers, for the safe disposal of rubbish."

*Stored*

**Recap:**
- There are strict fire prevention rules for mobilehome parks. Residents and park employees must comply with Title 25.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# EXHIBIT   D

23
24
25
26
27
28

CIVIL RIGHTS ACT OF 1866AS AMENDED 42 U.C. S.  1981, CALIFORNIA CIVIL RIGHTS   2000 ET. SEQ. WITH RETALIATIONSLANDER ORALLY/WRITTEN WITH SEXUAL ORIENTATION WITH CIVIL CODE 46, 44,558,563,577 (1)CAC  1700-1701, 1703, 1706, 1707, 1708-DEFAMATION PER SE WITH MALICE AND OPPRESSION AND DESPICABLE CONDUCT AND FRAUDNEGLIGENT INFLICTION OF EMOTIONAL DISTRESS GOV. C.  1601, 1602 ,1603 ,1604, 1606U.S.C.  463, 5 U.S.C  2301 WITH RETALIATION-"WHISTLE-BLOWER "VIOLATION OF "HATE CRIME" VIOLATION OF LGBTQ FEDERAL, STATE LAWSFALSE PUBLICATIONS CC  45VIOLATION OF CONSTITUTIONAL RIGHTS,      1 AND 2HOSTILE LIVING (SENIOR) CONDITIONSCAC 3600, 3601, 3700 CONSPIRACY AGAINST PLAINTIFF; CORRUPTION/FRAUDGOV. CODE  818  18, USC  371 6.18, 37 CONSPIRACYMEMBERSHIP IN AGREEMENT 6.18, 371K CONSPIRACY AND STATEMENTS OF CO-CONSPIRATORATIONSCAL CC 1714 REASONABLE STEPS TO PREVENT  A CRIME798.84 CT SEQ. BREACH OF  COVENANT  OF A HATE CRIMECAC NO. 1005 NEGLIGENT OR INTENTIONAL CRIMINAL CONDUCT OFA 3RD PARTY (WITH CONSPIRACY) CACI 3700 CONSPIRACY - 68

# RULES AND REGULATIONS

## of

# AZTEC MOBILE HOME ESTATES

### Date:  October 29, 2019

### Equal Housing Opportunity

**We do business in accordance with
the Federal Fair Housing Law**



**It is illegal to discriminate against any person
because of race, color, religion, sex, gender or gender identity,
handicap, familial status or national origin**

**This Community is designated as
"housing for older persons"
with minimum age requirements for residency**

**AZTEC MOBILE HOME ESTATES
7425 Church Street
Yucca Valley, California 92843
760-365-5090**

# TABLE OF CONTENTS

Page

1.  INTRODUCTION....................................................................................1

2.  COMMUNITY STATUS.........................................................................1

3.  ANNUAL VERIFICATION OF INCOME. ............................................1

4.  DEFINITIONS. .......................................................................................2

5.  COMPLIANCE WITH LAW AND RULES AND REGULATIONS. ...................3

6.  COMMUNITY PERSONNEL. ...............................................................3

7.  GUESTS. .................................................................................................3

8.  MOBILEHOME OCCUPANCY...........................................................4

9.  MOBILEHOME STANDARDS.............................................................5

    A.  Mobilehomes...........................................................................5

    B.  Mobilehome Sizes..................................................................5

    C.  Accessory Equipment and Structures.................................5

    D.  Standards for Incoming Mobilehomes and for New Construction and Installation of Accessory Equipment and Structures ......................6

        (1)  Electrical Appliances................................................6

        (2)  Air Conditioners.......................................................7

        (3)  Porches and Patios...................................................7

        (4)  Sunshades, Windscreens and Privacy Screens ............7

        (5)  Siding .........................................................................7

        (6)  Carports.....................................................................7

        (7)  Skirting and Awnings...............................................7

        (8)  Facias and Flashing .................................................8

        (9)  Roofing.......................................................................8

        (10) Rain Gutters..............................................................8

        (11) Earthquake Bracing.................................................8

        (12) Exterior Storage Building .......................................8

        (13) Fences.........................................................................8

        (14) Antennas and Receptions Devices.........................8

        (15) Flagpoles ...................................................................9

        (16) Spas.........................................................................10

       (17)  Water Softeners............................................10

  E.    Special Standards.............................................10

  F.    Solar Panels......................................................10

  G.   Work Done By Contractors............................10

  H.   Underground Utility Location........................10

10.   LANDSCAPING........................................................11

11.   GENERAL MAINTENANCE OF HOMESITE. ...........14

  A.   Storage..............................................................14

  B.   Maintenance and Appearance of Homesite........15

     (1)  Exterior Painting......................................15

     (2)  Concrete...................................................15

     (3)  Driveway and Street Area......................15

     (4)  Damage.....................................................15

  C.   Hazardous Substances....................................15

  D.   Sewer System...................................................16

  F.    Licenses and Fees...........................................17

  G.   Exterior Lighting...............................................17

  H.   Mailboxes.........................................................17

12.   ADVERTISEMENTS...............................................17

13.   ENTRY UPON RESIDENT'S HOMESITE. ..............18

14.   RECREATIONAL FACILITIES. ...............................19

15.   EXERCISE ROOM AND SAUNA RULES................20

16.   SWIMMING POOL RULES. ....................................21

17.   REST ROOM AND SHOWER FACILITIES. .............22

18.   LAUNDRY FACILITIES..........................................22

19.   PARKING. ...............................................................23

20.   MOTOR VEHICLES AND BICYCLES. ....................24

21.   CONDUCT. .............................................................25

22.   PET/ANIMALS. .......................................................27

23.   ZONING AND CONDITIONAL USE PERMIT INFORMATION. .......29

24.   RENTING, SUBLETTING OR ASSIGNMENT. ........29

25.    FIXTURES...................................................................................29

26.    INSURANCE................................................................................30

27.    OCCUPANCY QUESTIONNAIRE....................................................31

28.    SOLICITATION.............................................................................31

29.    COMMUNITY OFFICE AND COMPLAINTS. ....................................31

30.    REVISIONS OF RULES AND SEVERABILITY. ................................32

31.    APPROVAL OF PURCHASER AND SUBSEQUENT HOMEOWNERS........32

32.    APPROVAL OF PURCHASER AND SUBSEQUENT HOMEOWNERS AFTER
       SERVICE OF SIXTY DAY NOTICE TO TERMINATE POSSESSION UNDER
       CIVIL CODE § 798.55. ..............................................................33

33.    PARAGRAPH HEADINGS. ...........................................................34

1.    **INTRODUCTION.**

These Rules and Regulations have been developed as a basis for good relations within Aztec Mobile Home Estates. Because this is a mobilehome community, it has unique conditions which must be recognized and dealt with in a fair and reasonable manner, and applied and complied with on an impartial basis. The spirit behind these Rules and Regulations is the Golden Rule: "Do unto others as you would have others do unto you." We trust we will have your complete cooperation not only to keep Community standards high and to maintain a happy and friendly atmosphere, but also to assure each Resident a maximum of convenience and comfort.

The following Rules and Regulations are a part of your rental agreement. Please read the Rules and Regulations carefully and keep them on file as they constitute a binding agreement between you and the Community Management. Furthermore, the regulations contained in these Rules and Regulations will apply to any legal owner, registered owner, junior lien holder, heir, joint tenant, or personal representative of the estate of a Resident or any other person or party who gains ownership of Resident's mobilehome pursuant to the Mobilehome Residency Law or other California law. The Community Management will interpret and enforce these Rules and Regulations in a reasonable manner.

2.    **COMMUNITY STATUS.**

Aztec Mobile Home Estates is designated as housing for older persons. All occupants, who have signed the rental agreement for Resident's Homesite, must be at least fifty-five (55) years of age. In no event may a Guest who is under fifty-five (55) years of age occupy the Resident's Homesite longer than ten (10) hours per day for a total of twenty (20) consecutive days or a total of thirty (30) days in a calendar year, unless expressly exempted by Civil Code § 798.34. Any Guest who is occupying the Homesite pursuant to Civil Code §§ 798.34(c) or (d) and who does not meet the minimum age requirements set forth in this provision may not remain in the Community upon the death of Resident.

3.    **ANNUAL VERIFICATION OF INCOME.**

The Community operates as a community for low-income housing pursuant to Federal guidelines and California Health and Safety Code section 33418. Under these guidelines, a copy of which is available for review in the Community's office during normal business hours, the Community is required to verify the income of the Community's Residents. Accordingly, Resident shall be required to verify his or her income annually on the anniversary of this Agreement after being given ten (10) days written notice of the same. Failure of Resident to comply with this provision will constitute a violation of these Rules and Regulations, and may subject Resident to eviction.

## 4.    DEFINITIONS.

The definitions set forth below shall apply unless the context indicates that a different meaning is intended:

A.    "Guests" includes all of Resident's agents, employees, persons sharing the Homesite pursuant to Civil Code §§ 798.34(b), (c), or (d), invitees, companions, permittees or licensees or other persons in the Community or on the Homesite at the invitation, request or tolerance of Resident such persons do not have the right to occupy Resident's mobilehome as a member of Resident's immediate family as defined by Civil Code § 798.35. "Guests" also include any Residents who are not homeowners.

B.    "Homesite" means the real property rented to Resident by Owner. The boundaries of the real property rented to Resident shall be the lesser of either: (1) the lot lines as determined by a governmentally approved survey or by a recorded plot plan; or (2) the apparent physical boundaries of the Homesite as they exist at the time the rental agreement is/was entered into. PLEASE NOTE: The boundaries of the Homesite end at the top of the roofline of the Resident's mobilehome. The rental of the Homesite does not include any right or easement for light or view. Regarding maintenance of the Homesite, Resident shall be responsible for the greater area as defined by this paragraph.

C.    "Owner" includes, but it is not limited to, the owners of the Community (including the owner's partners, directors, representatives, officers, employees, and agents) and the management of the Community (herein referred to as the "Community Management").

D.    "Community" means Aztec Mobile Home Estates

E.    "Community Facilities" means those services and facilities of the Community generally available to Residents and their Guests.

F.    "Community Management's approval" or "approval of Community Management," "Community Management's consent" or "consent of Community Management" or other similar terms as used in these Rules and Regulations or in other documents referred to in these Rules and Regulations, means that the Community Management's prior written approval must have been obtained by Resident before Resident commences any such action requiring Community Management's approval. If Community Management's prior written approval is required, Resident shall submit a written request to Community Management which describes the action Resident proposes to take and requests Community Management to give prior written approval.

G.    "Resident" is a homeowner or other person who lawfully occupies a mobilehome. A prospective homeowner, purchaser, or those persons listed on the last page of the Lease Agreement/Rental Agreement as "Homeowner" who have not been approved for tenancy by the Owner and have not closed escrow on the mobilehome occupying the Homesite shall not be deemed a "Resident."

5.    **COMPLIANCE WITH LAW AND RULES AND REGULATIONS.**

A.    Residents, their accompanied guests and employees have the right to use the Homesite and Community Facilities only if they comply with these Rules and Regulations and the other provisions of the Community's residency documents.

B.    Resident agrees to abide and conform with all applicable laws and ordinances, all terms and conditions of these Rules and Regulations, all rules, regulations, terms and provisions contained in any document referred to in Resident's Lease Agreement/Rental Agreement, and said rules, regulations, terms and provisions as may, from time to time, be amended, modified or otherwise changed by Owner.

C.    Community Management will attempt to promptly, equally and impartially obtain the cooperation and compliance of all Residents with respect to the Rules and Regulations and other conditions of residency.  Resident recognizes, however, that Community Management's ability to obtain compliance is dependent upon a number of factors, including the cooperation of all Residents and their guests.  Resident agrees, therefore, that the enforcement of the Rules and Regulations and conditions of tenancy are a private matter between Community Management and each Resident individually. Resident agrees that he or she is not a third party beneficiary of any other agreement between Owner/Community Management and any other Resident in this Community.

D.    Resident must recognize that Community Management will not be responsible to Resident for normal, day-to-day disturbances that may result from the close proximity of other Residents and persons within the Community.  Community Management will not be liable to Resident for monitoring each routine disturbance, disagreement or minor problem that may occur between neighbors.  If Resident is unreasonably disturbed or bothered by the activity of another Resident or the Guest of another Resident, Resident should attempt to reasonably resolve any such problem.

E.    Any violation of the Rules and Regulations shall be deemed a public nuisance.  Resident agrees that a breach of any of the Rules and Regulations cannot reasonably or adequately be compensated in damages in an action of law and, therefore, Owner shall be entitled to injunctive relief including, but not limited to, restraining Resident from continuing to breach any such rules and regulations, term, or condition, or to allow a condition in violative of a rule or regulation, term or condition to exist or continue to exist.

6.    **COMMUNITY PERSONNEL.**

Owner shall be represented by Community Management, including a Resident Manager, who is vested with all the legal right and authority to enforce the Rules and Regulations on behalf of the Community's Owner.

7.    **GUESTS.**

A.    For any Guest who stays with Resident more than ten (10) hours a day for a total of twenty (20) consecutive days or a total of thirty (30) days in a calendar year

(hereinafter "grace period"), Resident may be charged a guest fee for each month following the expiration of such grace period. The additional charge shall be due and payable on the day after the expiration of such grace period and shall thereafter be due on a monthly basis, paid in advance. No such charge will be imposed if the Guest is an immediate family member of Resident (as set forth in Civil Code § 798.35) or if the Guest is sharing Resident's mobilehome pursuant to Civil Code §§ 798.34(b), (c) or (d).

B.    Before any additional person (other than the ones listed on the last page of Resident's rental agreement) may stay longer than the grace period and/or is permitted to reside with Resident, Resident must insure that such person comply with the following: register with Community Management; (2) complete an application for tenancy; (3) be approved by Community Management; and (4) sign a copy of the then current Rules and Regulations and execute all other residency documents as required by Community Management. However, no such person or registered Guest will have any rights of tenancy in the Community in the absence of Resident.

C.    Resident agrees to acquaint all Guests with the conditions of tenancy of the Community, including, but not limited to, the Community's Rules and Regulations. Resident is personally responsible for all the actions and conduct of Resident's Guests.

D.    Community Management reserves the right to determine whether the Community's recreational and other facilities can accommodate all the Residents and their Guests; therefore, Community Management may refuse any Guest access to said facilities if the Guest's presence would unreasonably detract from the use and enjoyment of these facilities by other Residents and Guests who are then using the Community Facilities.

E.    A Guest is permitted to use the recreational facilities only while accompanied by a Resident.

F.    If Resident will not be present, then no Guests may occupy or otherwise use Resident's mobilehome without Community Management's consent. If a Guest has received approval by the Community, such Guest may be permitted to occupy Resident's mobilehome and to use the Community's recreational facilities.

8.    **MOBILEHOME OCCUPANCY.**

A.    The number of occupants of a mobilehome shall be limited to two (2) persons per the number of bedrooms present in the mobilehome, plus one (1) additional occupant. A bedroom is defined as a living space which is designed for sleeping and which has closet space, but does not have plumbing.

B.    At all times, at least one person who regularly occupies the mobilehome must be the registered owner of the mobilehome and must be a homeowner of the Homesite.

9.   **MOBILEHOME STANDARDS.**

A.   <u>Mobilehomes</u>.   To insure architectural compatibility, construction and installation standards, all incoming mobilehomes must be in good condition, must be approved by Community Management, and must have detachable hitches.  Furthermore, Resident is responsible for determining that Resident's mobilehome (as well as all appliances and additional equipment used on or at the Homesite) is compatible with the electric service of the Community.  The Community has both 50 and 100 Amp Electric Pedestals.   It is Resident's responsibility to check to determine that resident's mobilehome is compatible with the Community's utilities and pedestals for gas and electricity. Under no circumstances may any Resident or Guest touch, alter or tamper with the Community's utilities and pedestals for gas, electricity and water.  Such utilities and pedestals for gas, electricity and water are the sole property of the Community.

B.   <u>Mobilehome Sizes</u>.  All mobilehomes in the Community shall conform in size to the requirements of the Homesite on which they are placed as established by Community Management.    Placement of mobilehomes shall be determined by Community Management.

C.   <u>Accessory Equipment and Structures</u>.  The installation of all appliances, accessory equipment and structures on incoming mobilehomes by Resident shall be completed within sixty (60) days of the date Resident signs the Community's rental agreement or first occupies the mobilehome, whichever is earlier.

(1)   Building permits, licenses and other similar permission from government or quasi-governmental bodies or agencies must be obtained, if so required, before any installation or construction of certain accessory equipment and structures.  All such equipment and structures must comply with all federal, state and local laws and ordinances, including, but not limited to, Title 25 of the California Code of Regulations.

(2)   Prior to commencing a new installation of or a change in accessory equipment and structures or a change in any appliance which is to be connected to the gas, electric or water supply, Resident shall submit for Community Management's approval a written plan describing in detail the accessory equipment and structures which Resident proposes to install or change.  Such plan must include, but may not be limited to, dimensions of mobilehome, placement of mobilehome on the Homesite, and proposed placement of accessory equipment in relation to lot lines and all other structures.

(3)   Only accessory equipment and structures which are prefabricated or otherwise manufactured may be installed on Resident's Homesite.  No "homemade" structure is permitted, but accessory equipment and structures which are constructed to contractor standards may be permitted with prior written approval of Community Management.

(4)   Any accessory equipment or structure not in compliance with the Community's residency documents shall be removed by Resident within ten (10) days of receipt of written notice.

(5)    If Resident does repair or replace Resident's mobilehome or any existing accessory equipment, or if Resident adds any new improvements or accessory equipment, the standards for incoming mobilehomes and for accessory equipment and structures must be met.  All such repair, replacement or installation shall be completed within sixty (60) days of approval and must be done by an appropriate, licensed, bonded and insured contractor.

(6)    Resident is cautioned that there are mobilehomes and Homesites in the Community which contain accessory equipment and structures which no longer conform with present Community standards and regulations; therefore, Resident may not assume Resident's plans will be approved because the plans conform to accessory equipment and structures existing on other mobilehomes or Homesites.

(7) Resident is responsible for making sure that Resident's Home and all appliances and equipment in the Home are compatible with the electric service and capacity now available, and Community and Owner shall have no liability or responsibility to Resident if the available electrical supply is incompatible.  Resident agrees not to install electrical appliances, which will use energy in excess of the electrical service and capacity available to the Homesite.  Resident also agrees that Resident will not attempt to increase the electrical service and capacity of your space by installing any device or doing anything else unless you have received our prior written permission. Any work on the Community's Electrical pedestal shall be done by the Community in its sole discretion.  If Resident's electrical demands exceed the capability of the Community, or are otherwise inconsistent with the capabilities of the Park, Resident will be deemed to be in default under Resident's rental or lease agreement and Resident will, in addition to all of the remedies available to Community, reimburse Community within ten (10) working days for any costs and expense Owner incurs in remedying the situation created by Resident's use of excessive or inconsistent electrical demands.  Resident also agrees to indemnify and hold Community and Owner harmless against any loss, cost, damage, expense (including attorneys' fees and cost) or other liability incurred or imposed by reason of any injury to persons or property which occurs as a result of Resident's electrical demands.  As the amount of such electrical services and capacity will affect Resident's ability to have electrical appliances, Resident must determine in advance from us in writing the amount of electrical service and capacity available to Resident's Home and all appliances and equipment in it are compatible with that service and capacity.

D.    Standards for Incoming Mobilehomes and for New Construction and Installation of Accessory Equipment and Structures.  The following are the applicable standards for specific equipment and structures for all incoming manufactured homes and for all new construction and installations (including repairs and replacements):

(1)    Electrical Appliances.  Due to the potential for overloading of the Community's electrical system, the installation of electric heat pumps and other major appliances must be approved by Community Management prior to installation. Community Management may require removal of any appliances (including, but not limited to, air conditioning units) that, in Community Management's reasonable discretion,

adversely affect the utility systems of the Community.    No water softener which discharges in the Community's sewer system is permitted.

Due to the limited capacity of the community's sewer system, resident must receive prior approval before installing any washing machine, garbage disposal or dishwasher. To ensure acceptable loads to the sewer system, resident's application for approval for these appliances may be denied. Existing appliances being replaced due to age or are no longer serviceable (like for like) are excluded.

(2)    Air Conditioners.  Because the capacity of the Community's electrical system is extremely limited, no additional air conditioners may be installed at the Community without prior written approval of Community Management.    Evaporative (swamp) coolers are permitted provided the cooler is in good operating condition and does not make excessive noise that will be disruptive to any other Resident.    Should Resident receive Community Approval for installing an air conditioner, then air conditioner must be wired through the electrical supply of the mobilehome and not through the Community's electrical pedestal.

(3)    Porches and Patios.  Porches and patios are required and must be constructed under permit and meet the appropriate governmental building codes, including without limitation California Code of Regulations, Title 25, Section 1498 and 1504.  Porches must be of an approved material matching the exterior material of the mobilehome.    Porches shall be a minimum size as determined by Community Management.  Unless made of masonry, surfaces of porches, patios and steps must be covered with outdoor carpet or other approved material.  All steps must be of good manufactured quality and side faced to match the mobilehome's exterior.  Steps and ramps must have approved handrails, as required by law.  The temporary steps provided by the mobilehome dealer must be removed from the Homesite no later than sixty (60) days from the date the mobilehome is moved into the Community.

(4)    Sunshades, Windscreens and Privacy Screens.  Roll-up, aluminum wind screens or privacy enclosures are permitted on Resident's Homesite with prior written approval of Community Management; however, temporary, roll-up type sun shades (such as plastic, canvas, cloth, bamboo or matchstick blinds) are not allowed. Shrubbery may also be used for windbreaks or for privacy.

(5)    Siding.  All mobilehomes must have exterior siding that is either painted or stained wood, Masonite, horizontal, house-type siding or stucco.  All colors must be approved by Community Management.

(6)    Carports.  A minimum of eleven feet by forty feet (11' x 40') carport is required with approved roof materials and facias.

(7)    Skirting and Awnings.  Skirting and awnings are required on all mobilehomes.  Any patio must be covered by an awning which is at least as large as the patio. All textured materials and color must coordinate with the mobilehome. All awnings must be painted or be of anodized aluminum or steel and must be of an approved manufactured type.  Skirting may be of Masonite, masonry or other approved material,

which matches the siding of the mobilehome. Resident may not install any "awning extenders" and "slanted awning stanchions" without Prior Community Approval.

(8)    Facias and Flashing.  All mobilehomes shall have facias (unitizing) that blend with the roofing and siding materials and shall tie into the awnings in such a manner as to eliminate a line of demarcation between the mobilehome and the awnings. This facia shall be installed completely around the perimeter of the mobilehome.  Where the mobilehome is joined at the roof, the facia shall be of the same material as the roof.

(9)    Roofing.  All roofing materials on carports and storage sheds, as well as replacement roofs on mobilehomes, must be non-glare aluminum, composition asphalt shingles or tile.

(10)    Rain Gutters.  All mobilehomes must be fitted with rain gutters and down spouts which extend to the ground and drain water to the street.

(11)    Earthquake Bracing.    If Resident installs a manufactured home earthquake-resistant bracing system, such system must be installed and maintained in compliance with the California Health & Safety Code and Title 25 of the California Code of Regulations.

(12)    Exterior Storage Building.  Resident may install up to two (2) storage buildings, which shall not exceed a combined floor area of one hundred twenty square feet (120').  Community Management must approve the type of storage building and where the storage building(s) will be placed.

(13)    Fences.  Resident must obtain prior written approval of Community Management before erecting any fence on Resident's Homesite.  All fences must be painted or stained to match Resident's mobilehome.  No fence may exceed six feet (6') in height (if located to the side or rear of the Homesite) or thirty-six inches (36") (if located between Resident's mobilehome and the street).  Any fence must be placed inside Resident's lot line and not infringe on any adjacent Homesite or common area.

(14)    Antennas and Receptions Devices.  Resident must abide by the following standards regarding the installation of any exterior reception device or antenna on Resident's Homesite:

(a)    In order to maintain an attractive Community, Residents are strongly urged to rely on only indoor broadcast devices like cable T.V., internet and/or fiber optics, as opposed to installing an outdoor reception device.

(b)    Only reception devices with a diameter or diagonal measurement of one meter (approximately thirty-nine inches (39")) or less will be permitted.  Any permitted reception device must not be visible from the streets or common areas of the Community and must be located on the ground or on the rooftop to the rear of the of Resident's mobilehome, unless such location interferes with the quality of reception.

(c)     Reception Device shall be installed and secured in a manner that complies with all applicable codes, state and local laws and regulations and manufacturer instructions. Every Reception Device must be installed and secured so that it does not jeopardize the safety of any neighboring property or any person located at or near the Reception Device. In addition, no Reception Device may be installed or placed in such a way as to obstruct a driver's view of any street, driveway, sidewalk or intersection.

(d)     Resident shall be solely responsible for the maintenance and repair, including any and all costs associated therewith, of any installed Reception Device at the Homesite and shall not allow any such Reception Device to fall into disrepair or to become a safety hazard.

(e)     Every Reception Device must be painted an appropriate color to match the surrounding environment and so it is least visible.

(f)     Due to changes in the installation policy of DirecTV and Dish respecting reception devices, any installation of reception devices now requires prior Community approval for placement of the same.  Please contact the Community Manager's office if you are having a reception device installed and the Community Manager will make arrangements to be available when the installer is at Resident's home. In all instances, trip hazards must be avoided.  If any reception device placement is not pre-approved, then Resident may be required to have the same relocated at Resident's sole cost.

(g)     Any installed reception device must be properly maintained.

(h)     An installer (including Resident) of a reception device must indemnify or reimburse Community for loss or damage caused by the installation, maintenance, or use of Resident's reception device.

(i)     Television antennas must be located to the rear of the mobilehome (away from the street) and may not extend more than twelve feet (12') above the highest point on Resident's mobilehome, unless such location interferes with the quality of reception.  Any antenna or reception device must be properly installed and secured to comply with all laws, codes and manufacturer instructions and must be operational. In other words, if you are no longer using the signal from the television antenna, then it must be removed from the Home and Homesite.

(j)     All other antennas (including, but not limited to, ham radio and CB antennas) must have prior written Community manager approval.

(k)     Cable television service is available through the local service provider.

(15)   Flagpoles.  No permanent flagpoles are permitted.  Only small flagpoles, which are four feet (4') in length or less and are designed to be mounted on the front of the mobilehome, are allowed.

(16)    Spas.  No spa pool may be installed on the Homesite without prior submission of a plan to and approval by Community Management.  Manufacturer specifications must be followed, and a locking cover must be in place when the spa is not in use.

(17)    Water Softeners.  Any water softener which discharges in the Community's sewer system is prohibited.

E.    Special Standards.  In order to maintain the aesthetic beauty of the Community, Community Management retains the right to impose additional standards on those Residents who have corner Homesites or Homesites in unique locations.

F.    Solar Panels.  Solar heating panels are permitted with prior Community approval.  Manufacturer specifications must be followed regarding installation.  Solar heating equipment or other similar devices will not extend more than twelve inches (12") above the existing roof or awnings.  All exposed surfaces, except the solar collecting surface must be of a non-glare material and/or painted to match the existing roof and mobilehome.

G.    Work Done By Contractors.  Management must give written approval of all work to be done by contractors in the Community.  The Community requires all permitted work to be done by licensed, insured and bonded contractors.  Proof of adequate liability and Worker's Compensation insurance is required before any work is done in the Community and the Homesite.  No liens against the Community will be allowed, and Resident agrees to immediately take any and all action to remove the same, and protect the Community at Resident's sole cost.  In addition, Residents need to instruct any contractors they bring into the Community to place at least two safety cones, one next to both the front and rear bumpers, on street side of vehicle when parked in front of Homesite. H. Underground Utility Location.  To avoid damage to underground utilities, Resident must have Community Management's consent before digging or driving rods or stakes into the ground.  Resident shall bear the cost of repairs to any utilities or Community property damaged by Resident.  In addition, prior to beginning any digging on the Homesite, Resident must contact the Community Management in order to locate and mark out all utility lines in digging area.  Resident is responsible for damage to any of the Community or utility company's utility lines caused by Resident or Resident's agents.  All holes must be filled and leveled.

H. Underground Utility Location.  To avoid damage to underground utilities, Resident must have Community Management's consent before digging or driving rods or stakes into the ground.  Resident shall bear the cost of repairs to any utilities or Community property damaged by Resident.  In addition, prior to beginning any digging on the Homesite, Resident must contact the Community Management in order to locate and mark out all utility lines in digging area.  Resident is responsible for damage to any of the Community or utility company's utility lines caused by Resident or Resident's agents.  All holes must be filled and leveled.

I.     The Community is not responsible to inspect and approve any work done by Resident or by Resident's contractors or agents, including, but not limited to, the installation of Resident's mobilehome, driveway, walkways fences or any other equipment or improvements of any type.  To the extent that Community may inspect or approve something, it is for Community's own purpose only and Resident is not entitled to rely on that inspection or approval to ensure that the items have been installed or constructed correctly or that the work has otherwise been done as required.  Instead, Resident is responsible for all required inspections, permits and approvals.  Resident is solely responsible for any work which is improperly done and which causes any damage to Community or other residents in the Community.

## 10.     LANDSCAPING.

A.     Landscaping of un-landscaped Homesites or changes to existing landscaping shall be completed within ninety (90) days of the date Resident signs the Community's rental agreement or first occupies the mobilehome, whichever is earlier.

B.     Prior to commencing any landscaping, including changes to existing landscaping, Resident shall submit a detailed landscaping plan to Community Management for approval.

(1)     All changes made by Residents already residing in the Community must be completed within sixty (60) days of approval.

(2)     Any landscaping which has been installed by Resident without Community Management approval and/or in violation of these Rules and Regulations must be removed by Resident within ten (10) days of written notice.

(3)     Any irrigation system must have prior written approval of Community Management.

(4)     Resident is cautioned that there are Homesites within the Community which may have landscaping which no longer conforms with present Community standards and regulations.  Therefore, Resident may not assume Resident's plans will be approved because the plans conform to existing landscaping.

C.     The following general landscaping standards are provided only to assist Residents in their preliminary planning:

(1)     Only live plants may be used. Artificial plants may be used with prior approval by the Community manager.

(2)     Evergreen grasses, ground covers, flowers and small shrubs are generally acceptable, and Resident is encouraged to install and maintain same. Succulent plants are recommended. Artificial green turf may be acceptable with prior approval by the Community manager.

(3)    Resident shall not, unless authorization is given by Community Management, remove any plants upon Resident vacating the Community.

(4)    Community Management expressly prohibits the use of any manures or odorous chemical fertilizers.

(5)    Waterfalls, statuary and other forms of decor will be permitted only with Community Management's approval.

(6)    Some form of planted ground cover, acceptable to Community Management, is required.

(7)    Redwood bark, wood chips or decorative rock (no larger than 3/4"), with an underlining of black plastic for weed control, may be used by the Resident.  All decorative rock must be cleaned as needed.  Additional bark, chips and/or rock must be added as necessary, to insure that there is sufficient material at all times to adequately cover the area over which the bark, chips or rock is spread.

(8)    No large trees and tall plantings are permitted.  However, a small tree (which, at maturity, may not exceed eight feet (8') in height) may be planted on Resident's Homesite only with prior written approval of Community Management. Community Management retains the option to determine the location of and the type of tree which may be planted.  In no event may any tree be planted within six feet (6') of any lot line or in the vicinity of any underground utility system.

(9)    No plant, tree, or shrub may be planted which has a root structure that may cause any damage, including, but not limited to, cracking or buckling of streets, driveways or other community facilities or which may interfere with any underground utility system.

(10)    Small vegetable or fruit gardens not to exceed one hundred square feet (100') are permissible in the rear of the Homesite providing it is out of view from the Community streets.  Resident must contact Community Management to determine whether the vegetables or plants they intend to plant are permissible, as several varieties of plants that may infringe on a neighbor's property, or are unsightly, are expressly prohibited.

(11)    Underground Utilities.  To avoid damage to underground utilities, Resident must have Community Management's consent before digging or driving rods or stakes into the ground.  Resident shall bear the cost of repairs to any utilities or Community property damaged by Resident.

(12)    The existing drainage pattern and grading of the Homesite may not be changed without Community Management's consent.  Resident is responsible for insuring that water does not puddle or stand and drains away from Resident's mobilehome into the street, but not onto other Homesites or common areas.  Resident may be required to correct improper drainage at Resident's expense, including, but not

limited to, re-leveling or otherwise adjusting Resident's mobilehome or repairing and/or replacing any improvements.

(13)    Prohibition on Growing Marijuana Plants.  Due to health and safety concerns, as well as concerns regarding violations of federal law, marijuana, opium, and similar illegal plants are expressly prohibited from being kept or planted: (a) in the mobilehome or recreational vehicle; (b) anywhere around, in or on the Homesite; and (c) anywhere on or at the common areas or facilities of the Community.  With respect to safety issues, the Management is concerned as to avoiding the violent crimes associated with the presence of these substances within the Community, and the dangers such crimes pose to Residents and their guests or invitees.

D.    All landscaping, including, but not limited to, shrubs, vines, bushes and lawns, shall be well maintained by Resident.  Such maintenance shall include, but not be limited to:

(1)    The frequent, at least once each week, mowing of any lawns.

(2)    Homesite must be kept free of weeds and debris at all times.

(3)    The trimming of all shrubs, vines and bushes in a manner that maintains an attractive shape and prevents such plants from blocking a neighbor's view or from being excessively high or brushing against a neighbor's mobilehome or awning. In no event shall Resident's landscaping be allowed to over-hang onto another Resident's Homesite or any common areas of the Community, to exceed the height of Resident's mobilehome, or to obscure the vision of persons driving in the Community.

(4)    Resident shall be responsible for the maintenance of any tree located on Resident's Homesite, unless Resident has given written notice to Community Management (or unless Community Management has determined) that the tree poses a specific hazard or health and safety violation; upon such a determination, Community Management shall only be responsible for the pruning, trimming and/or removal of such tree.

(5)    Resident will not trim trees or shrubs on Community property other than on his or her Homesite without Community Management's written consent.

(6)    When vacationing or absent for any other reason, it is the responsibility of the Resident to arrange for someone to water and to maintain the Homesite.

(7)    Resident must be careful when using water to maintain Resident's landscaping.  To prevent the waste of water, nuisance to other Residents, or damage to the roadway, water must be conserved and not permitted to overflow into the Community's streets or onto the yards of neighboring Residents.

E.    CONSERVATION AND DROUGHT ISSUES.

(1)    Responsibility for Fines.  The Resident acknowledges and agrees that Resident shall be responsible to pay any and all fees or fines, however denominated (collectively, "Fines") incurred by the Management based on or as a result of the Resident's (or their guests or invitees) non-compliance with any Water Laws then in effect. In the event that the Management is assessed Fines based on or as a result of the usage of water by Residents (or their guests or invitees) in violation of any such Water Laws, Resident further acknowledges and agrees to promptly reimburse the Management for any such Fines paid by the Management to any government agency or officials with interest at the rate of eight percent (8%) per annum, from the date paid by the Management until reimbursement is made in full by the Resident. Management shall deliver a Notice of Seeking Reimbursement under California Civil Code §798.32, to the extent not already addressed in the Resident's Rental Agreement or Lease.

(2)    Posting Notice Regarding Amendments to Water Laws.  In event that the local, city or county authorities in the jurisdiction where the Community is located impose more restrictive water usage provisions whether as days or times that watering, doing laundry or other actions or activities which entail water usage may occur or be performed, or otherwise, then the Resident understands and agrees that the Management shall post notice of same at the Management office as well as in any common areas and facilities such as the clubhouse or pool, as the case may be, and Resident agrees to comply with all such postings as to additional or more specific restrictions that may be imposed from time-to-time under the Water Laws.

(3)    Municipal Water District Prohibitions/Restrictions.  Resident must be careful when using water to maintain Resident's landscaping.  To prevent the waste of water, nuisance to other Residents, or damage to the roadway, water must be conserved and not permitted to overflow into the Community's streets or onto the yards of neighboring Residents.  If any local municipal or regional water district for the City of Yucca Valley cites the Resident, the fine must be reimbursed to the Management as noted above.  A copy of the applicable local water district policy is available upon request for review in the Community Management office.  No gutter flooding is allowed, and irrigation must be kept on the landscape.  No irrigation is allowed for 48 hours following measurable rainfall.

## 11.    GENERAL MAINTENANCE OF HOMESITE.

A.    Storage.  Storage of anything beneath, behind or on the outside of the mobilehome is prohibited.  This includes, but is not limited to, storage of boxes, trunks, wood, pipe, bottles, garden tools, mops, ladders, paint cans or any item which is unsightly in appearance, as required by California Code of Regulations, Title 25, Section 1120.

(1)    Only outdoor patio furniture and barbecues approved for use by Community Management may be used on the patio, porch, yard or other portions of the Homesite.

(2)    No appliances (e.g., washers, dryers, refrigerators, etc.) may be placed outside the Home.

(3)    Towels, rugs, wearing apparel or laundry of any description may be hung only in the back of the homesite and not visible from the street.

B.    Maintenance and Appearance of Homesite.  Resident shall at all times maintain Resident's mobilehome and Homesite in a clean and sanitary condition, and shall cause all rubbish and other debris to be removed from Resident's mobilehome and Homesite on a regular basis.  Resident is financially responsible to maintain, repair and replace (as necessary) Resident's mobilehome and all accessory equipment and structures, and Resident must keep these items in good condition and repair at all times.  Resident's obligation applies, without limitation, to the following: Resident's mobilehome; all accessory equipment and structures; walkways; plantings; any banks or slopes located on Resident's Homesite; any utility connecting lines from the meter or utility pedestal to Resident's mobilehome.

(1)    Exterior Painting.  The exterior paint on Resident's mobilehome, accessory structures and equipment shall be properly maintained.  Proper maintenance shall include, but not be limited to, the repainting of the exterior whenever the paint begins to fade, peel, flake, chip or deteriorate in any other manner that detracts from the aesthetic beauty of the Community.  Written approval must be obtained from Community Management prior to any painting.  Any change in color requires advance approval of Community Management. Resident assumes full responsibility for any damage done to neighboring property or common areas.

(2)    Concrete.  All concrete, asphalt and other surfaces shall be kept clean and maintained free of oil and all other sticky or oily substances.

(3)    Driveway and Street Area.  Individual driveway maintenance shall be Resident's responsibility, unless the driveway was installed by the Community.  Residents shall keep the street area in front of their Homesite free from debris.

(4)    Damage.  If any portion of the exterior of the mobilehome or its accessory equipment, structures, or appliances or the Homesite are damaged, the damage must be repaired or replaced within thirty (30) days of the incident.  This includes, but is not limited to, damage to the siding, awnings, awning supports, down spouts, skirting, porch or storage shed.  If Resident's mobilehome has not been repaired, reconstructed, or restored within a reasonable time after work has been commenced on it, then Resident shall remove the mobilehome from the Community at Resident's expense.  Upon such removal, Resident shall continue to be bound to perform all of Resident's obligations under the rental agreement, unless Resident has given Community Management sixty (60) days' written notice that Resident is vacating the tenancy.

C.    Hazardous Substances.  Anything which creates a threat to health and safety shall not be permitted on the Homesite.

(1)    For the purpose of this provision, "hazardous substance" refers to any flammable, combustible, explosive or toxic fluid, material, chemical, or substance (including, but not limited to, paint, motor oil and other vehicle fluids, herbicides, insecticides, poisons, chemicals or other toxic materials).

(2)    No hazardous substances may be stored on the Homesite, except those customarily used for normal household purposes (and then only in quantities reasonably necessary for normal household purposes which shall be properly stored within the mobilehome and/or storage building).

(3)    Resident shall not dispose of any hazardous substances under or about Resident's Homesite, other Homesites in the Community, the Community's common areas or any other area of the Community (including, but not limited to, the sewer system or other drainage areas, the street gutters, the driveway areas or the ground beneath Resident's mobilehome, accessory equipment, or elsewhere on the Homesite).

(4)    In the event Resident stores or disposes of hazardous substances under or about Resident's Homesite or elsewhere in Community, Resident shall immediately and appropriately remove the hazardous substances at Resident's own expense.  If the Resident fails to remove the hazardous substances within ten (10) days after Community Management gives Resident written notice to remove the hazardous substances, the actual cost of such removal shall be immediately due and payable to Owner.  Resident agrees to indemnify Community against (and hold Community harmless from) any loss, liability, damage or expense, including, without limitation, reasonable attorneys' fees, which (either directly or indirectly) Community may incur or suffer by reason of the storage or disposal by Resident of any hazardous substances on or under Resident's Homesite, other Homesites in the Community or any other areas of the Community.

D.    <u>Sewer System</u>.  No objects that resist water (including, but not limited to, facial tissue, disposable diapers, paper towels, tampons, cotton balls) may be flushed or otherwise deposited into the system.  Grease, coffee grounds, facial tissue, disposable diapers, baby wipes, sanitary napkins and wipes or other inappropriate items shall not be placed in the sewer system.  Community Management shall not be responsible for damage done to any mobilehome because of the stoppage or backing up of the sewer system due to the placement in the sewer system of any prohibited material.  Resident acknowledges that the placement of such prohibited material into the sewer system is difficult, if not impossible, to police.  Resident, therefore, waives any and all claims for personal injury or property damage caused by a stoppage in the sewer line due to the placement of prohibited materials into the sewer system, by any persons, known or unknown.

E.    <u>Utility Pedestals</u>.  The utility pedestals (water and utility hookups) must be accessible at all times.  If one of the Community's water shut-off valves is located on Resident's Homesite, it must be kept uncovered and accessible at all times.  Resident shall not connect, except through existing electrical or natural gas outlets or water pipes

on the Homesite, any apparatus or device for the purposes of using electric current, natural gas or water.  All drain and line connections must be gas and water tight.

F.    Licenses and Fees.  All mobilehomes within the Community must bear a current license and decal issued by the appropriate agency of the State of California.  Any fee, tax or registration charge for Resident's mobilehome by any county, state or federal agency must be paid by Resident.  Resident shall provide to Community Management, on three (3) days' written notice, a copy of the registration card issued by the Department of Housing and Community Development for the mobilehome occupying the Resident's Homesite.

G.    Exterior Lighting.  Except for security/motion lighting fixtures, any lightbulb used on the exterior of Resident's mobilehome may only be a maximum of 60 watts (15 watt LED) and must be aimed only to portions of Resident's Homesite, but not to any other Resident's Homesite or mobilehome.  Only UL approved Christmas lights and decorations shall be used on Resident's Homesite.  Any decoration and/or lights used on the outside of Resident's mobilehome must be UL approved and are subject to Community Management's approval.  Christmas lights and decorations may be displayed only after Thanksgiving, and no later than mid-January; in no event may Christmas lighting and decorations be left up any other time of the year.

H.    Mailboxes.  Mail will be delivered by the United States Postal Service to mailboxes located throughout the Community.  Individual mailboxes shall be Resident's responsibility and shall be maintained in good condition, including, but not limited to, periodic cleaning and repainting as necessary. Maintenance of the mailbox posts that were installed by the Community will be the Community's responsibility.

I.    Garbage and Trash Disposal.  Garbage must be wrapped and, with other refuse, must be placed in plastic trash bags and kept inside the mobilehome or storage shed until deposited in the designated disposal bins.  Sanitary and health laws must be obeyed at all times.  Combustible, noxious, or hazardous materials should be removed from the Community and not placed in bins.  Lids on the disposal bins are to be kept closed.  At no time may bins be so loaded with landscaping and pruning matter or other materials as to render the disposal of garbage impossible by other Residents.  Materials must not be left outside of the bins.  Bringing trash from outside the Community to dump in the Community's disposal bins is not permitted.  Trash will be picked up periodically by the local refuse hauler.

## 12.    ADVERTISEMENTS.

A.    All exterior advertising flags, including, but not limited to, for sale signs, open house signs and garage sale signs, and political signs are prohibited.  However, Resident may place a sign in the window of the mobilehome, on the side of the mobilehome or in front of the mobilehome facing the street stating that the mobilehome is for sale or exchange in accordance with 798.70 of the MRL. Political campaign signs are permitted only as described in section of 799.10 of the MRL.

B.    Signs or banners are not allowed to be posted within the Community, on the exterior walls of the Community, or on individual units, fences, driveways or sidewalks other than as allowed in the then-current provisions of the Mobilehome Residency Law. Political campaign signs may not exceed two (2) signs, measuring not more than six square feet and may not be displayed in excess of a period of time from (90) ninety days prior to an election to fifteen (15) days following the election.

C.    Signs posted in front of a Home may be of an H-frame or an A-frame with the sign face perpendicular to, but not extending into the street. Any change in the Mobilehome Residency Law or other law affecting these restrictions shall automatically become applicable and become a part of these Rules and Regulations. Under Community Rules, a Homeowner may have a "for sale" sign on the Space for no more than a maximum of (6) six months in any (12) twelve month period. You may not have any "Open House" signs or other similar advertisements, unless approved in advance by Community Management.

D.    Signs posted in front of a Home may be of an H-frame or an A-frame with the sign face perpendicular to, but not extending into the street. Any change in the Mobilehome Residency Law or other law affecting these restrictions shall automatically become applicable and become a part of these Rules and Regulations. Under Community Rules, a Homeowner may have a "for sale" sign on the Space for no more than a maximum of (6) six months in any (12) twelve month period. You may not have any "Open House" signs or other similar advertisements, unless approved in advance by Community Management.

E.    The Community bulletin boards may be used by Resident for no longer than seven (7) days to advertise the sale of a specific item or items, all with manager's approval.

F.    "Patio sales," "moving sales," and "yard sales" are expressly prohibited, unless conducted with prior written approval of Community Management.

## 13.    ENTRY UPON RESIDENT'S HOMESITE.

Community Management shall have a right of entry upon the Homesite for maintenance of utilities, for reading of utility meters, for maintenance of the Homesite where the Resident fails to maintain the Homesite in accordance with the Rules and Regulations, and for the protection of the Community at any reasonable time, but Community Management may not do so in a manner or at a time which would interfere with the occupant's quiet enjoyment. Community Management may enter a mobilehome or enclosed accessory structure without the prior written consent of Resident in the case of an emergency or when Resident has abandoned the mobilehome or accessory structure.

## 14.     RECREATIONAL FACILITIES.

A.     Recreational facilities are provided for the exclusive use of Residents and their accompanied Guests.  Use of the facilities by the public is prohibited.  No business or commercial activity may be conducted in the recreational facilities.

B.     Hours for the recreational facilities and additional rules and regulations governing the use of the recreational facilities are posted in and about the facilities and are incorporated into these Rules and Regulations by reference.

C.     No drinking of alcoholic beverages is allowed in or around the recreation area or community buildings, except at special functions approved in advance by Community Management.  If alcoholic beverages are to be consumed at a special function, then a liability insurance binder may be required.  No glassware or soft drink bottles may be taken into the recreation areas.

D.     Persons under the influence of alcohol or drugs will be cause for immediate expulsion of the offending party or parties.

E.     No gambling will be permitted at any time.  However, bingo is allowed if organized by the Community Residents' Committee, written approval is given by Community Management, and if bingo games are conducted in compliance with applicable law.

F.     Persons in swimming suits or trunks, wet or dry, will not be allowed in the clubhouse.  All persons must be fully clothed at all times in the clubhouse and other Community buildings.  Footwear must be worn in all Community buildings.

G.     Smoking (including e-cigarettes and similar devices) is not permitted in the clubhouse and other enclosed areas of the Community's common facilities.

H..     No one may put their feet against the wall, windows or tables within the recreational areas.

H.     Screaming, running, horseplay and loud noises are not allowed in the recreational areas.

I.     Recreational facilities and swimming pool rules may be changed or revised upon sixty (60) days' notice to Resident.

J.     Radios, CD players, boom boxes, televisions, and other such entertainment devices are not permitted in the pool area or other recreational areas (unless used with earphones) without prior written permission from the Community Manager.

K     Residents wishing to reserve the clubhouse or rooms in the clubhouse for private parties, meetings or other functions must apply by making arrangements with Community Management forty-eight (48) hours in advance.  Should the date not conflict with any other applications, social events or planned use of the facilities, and upon

Case 5:22-cv-01273-MWF-MAA   Document 1   Filed 07/21/22   Page 182 of 196   Page ID #:182


approval by the Community Management, the request will be granted.  During such a scheduled event or party, the reserved clubhouse facilities will not be open to other Residents and their Guests.

There will be no charge for the use of the clubhouse; however, Resident will be required to pay for any damage that may occur.  Those scheduling the function will be responsible for normal cleanup immediately after the event or party.  All such functions must be carried on in full compliance with these Rules and Regulations and the other residency documents of the Community.  Resident will, therefore, be required to provide Community Management with information relating to the function so that Community Management may evaluate the function.

L.      The recreational facilities are used and occupied at Resident and guest's sole risk of peril.

M.      Access to the recreational facilities and other common facilities is based on the awareness of inherent risks of injury and harm in the use and presence in the facilities.

N.      Inherent risks of injury and harm exist even when utmost caution is exercised by Resident.

O.      Entering the common areas is not part of a core function of or Owner's duty to provide habitability of the Community.

P.      Resident shall take all reasonable precautions to avoid unreasonable risks of harm to Resident, all other members of the Resident's household, and guests and invitees.

Q.      Despite the inherent risks, Resident shall, on behalf of all members of the household, guests and invitees, assume full responsibility for injury, harm and damage to Resident and all others and release owner and hold Owner free and harmless from all claims, demands and lawsuits for injury, damage or other harm, loss, expense caused in or about the facilities as now provided.

## 15.    EXERCISE ROOM AND SAUNA RULES.

A.      Persons using the exercise equipment and sauna do so at their own risk.  It is advised that Resident and Resident's Guests and family members should not use these facilities alone.

B.      Smoking (including but not limited to e-cigarettes and similar devices) and alcoholic beverages are prohibited in the sauna and exercise room.

C.      Use of the exercise room for the changing of clothes is prohibited.

D.      Guests are not permitted to use the exercise equipment or sauna unless accompanied by a Resident.

38283.177/4825-7177-6936v.1

Rules and Regulations

-20-

AZTEC

(October 7, 2019)

E.     These facilities will be closed from time to time at Community Management's discretion for cleaning and repairs.  However, Resident may not lock the exercise room for any private use at any time.

F.     Hours and additional rules are posted in the exercise room and are incorporated herein by this reference.

G.     The exercise room are used and occupied at Resident and guest's sole risk of peril.

H.     Access to the exercise room is based on the awareness of inherent risks of injury and harm in the use and presence in the facilities.

I.     Inherent risks of injury and harm exist even when utmost caution is exercised by Resident.

J.     Entering the exercise room is not part of a core function of or Owner's duty to provide habitability of the Community.

K.     Resident shall take all reasonable precautions to avoid unreasonable risks of harm to Resident, all other members of the Resident's household, and guests and invitees.

L.     Despite the inherent risks, Resident shall, on behalf of all members of the household, guests and invitees, assume full responsibility for injury, harm and damage to Resident and all others and release owner and hold Owner free and harmless from all claims, demands and lawsuits for injury, damage or other harm, loss, expense caused in or about the exercise room as now provided.

## 16.   SWIMMING POOL RULES.

A.     Persons using the pool must do so at their own risk.  There is no lifeguard on duty.

B.     A Swimming Pool Release Agreement must be signed by Resident before Resident, Resident's children and Resident's Guest(s) may use the swimming pool.

C.     All persons must shower before using the pool or spa pool.

D.     Swim fins, diving masks, rubber floats, and the like are not permitted to be used while others are using the pool.

E.     The swimming pool, sauna and spa are available year around. The facilities may close from time to time, at manager's sole discretion, for maintenance and other reasons where it may be unsafe to use or swim. The pool will not be heated from November 1 through April 30.

F.     Only manufactured swim wear in good condition may be used.  No cutoffs or other similar "homemade" swim wear is permitted.

G.    It is recommended that children under eighteen (18) years of age should not use the swimming pool or spa pool unless accompanied by an adult resident.

H.    Guests are not permitted to use the swimming pool unless accompanied by a Resident at all times.

I.    All persons who are incontinent or who are not "potty trained" are not permitted in the pool or spa area.

J.    Smoking (including but not limited to e-cigarettes and similar devices) and alcoholic beverages are prohibited in the swimming pool or spa area.

K.    For protection of deck furniture, please place towels over chairs when using suntan oil, creams, or lotions.  No person may enter the swimming pool or spa pool with suntan oil or suntan products on her/his body.

L.    No one with a skin disease or open wound will be permitted in any of the pools.

M.    Shoes or sandals must be worn to and from the pool area.

N.    Community Management reserves the right to limit the use of the pool at any time and to restrict use of the pool by anyone.  Residents are responsible for the conduct of their Guests.

O.    No food or glass containers of any kind are permitted in the pool or spa area.

P.    Pool hours and additional pool rules are posted in the pool area and are incorporated herein by this reference.

**17.    REST ROOM AND SHOWER FACILITIES.**

A.    Rest rooms and showers are provided for the exclusive use of Residents and their accompanied Guests.  These facilities are available for showering before and/or after using the swimming pool or as a rest room for persons using the laundry room or swimming pool.  At all other times, Resident is to use the bathroom(s) located in Resident's mobilehome.

B.    These facilities will be closed from time to time at Community Management's discretion for cleaning and repairs.

**18.    LAUNDRY FACILITIES.**

A.    The laundry facilities are provided for the exclusive use of Residents of the Park.

B.    Laundry hours are posted.  These facilities will be closed from time to time at Park Management's discretion for cleaning and repairs.

C.    Washers, dryers, and all other laundry facilities are to be cleaned by Resident, inside and out, immediately after use.  Clothes are to be removed from dryers as soon as they are dry.  Dyeing may not be done in the washers.  The laundry is to be left in a clean, neat and orderly condition.  Pet/animal laundry may not be done in the washers.

D.    Additional rules and regulations governing the use of the laundry and its facilities are posted and are incorporated herein by reference.

## 19.  PARKING.



A.    Only "permitted vehicles," may be parked on Resident's Homesite, and all of Resident's vehicles defined as "other vehicles" must be parked outside of the Community.   Any vehicle parked in Resident's driveway may not extend beyond the front of the Resident's mobilehome..

(1)    "Permitted vehicles" specifically include motor scooters, mopeds sports cars, coupes, sedans, vans, station wagons, pickup trucks under one (1) ton or sport utility vehicles.  Not included as permitted vehicles are "other vehicles" such as campers, buses, trucks and other commercial vehicles of every kind and description, boats, trailers (except the mobilehome occupied by Resident), "RVs," dune buggies, , minibikes, and other two and three wheeled motorized or self-propelled transportation.

(2)    A pickup truck or van may not, without Community Management's consent, be substituted for one of the two permitted vehicles if it is equipped with exterior racks, storage containers or compartments or other similar devices or contains tools or equipment which are mounted on the outside of the vehicle or are otherwise visible from the street or adjacent mobilehomes.

(3)    Notwithstanding anything contained herein to the contrary, one (1) motorcycle may be parked on Resident's Homesite if used by Resident on a daily basis. The permission to Community a motorcycle does not relieve Resident of the obligation to abide by all other rules and regulations relating to motorcycles.

B.    Parking is permitted only in designated areas.  Unless otherwise posted or permitted by these Rules and Regulations, no parking, including the parking of recreational vehicles, is permitted on the streets of the Community at any time.  Exceptions can be approved by the Community Manager.  Emergency flashers must be turned on during this time period. Vehicles belonging to repairmen, delivery persons, health care personnel or Community employees may be parked for longer periods of time on the street immediately adjoining the Homesite where repairs are being performed or where services are being provided.  Someone with a key to the vehicle must be available at all times.

C.    Vehicles parked on Resident's Homesite may only be parked on the driveway, and not on the landscaped or other areas of the Homesite.  Parking is not permitted on vacant Homesites.

D.    Guests may only park in designated guest parking spaces or on the host Resident's Homesite.  Because of the limited parking facilities, traffic congestion and noise, Community Management reserves the right to restrict the number of Guests bringing automobiles or other vehicles into the Community.

E.    Resident may not park in spaces designated for Guests without Community Management's approval.

F.    Any vehicle parked in violation of these Rules and Regulations or in violation of signs posted throughout the Community may be towed from the Community at the expense of the vehicle's owner.

G.    Sleeping in vehicles is prohibited. Vehicles are not to be used as a living space at any time.

H.    No automobile may be "stored" on the Homesite.  "Storage" shall include, but not be limited to, the parking of an inoperative vehicle for a period exceeding two (2) weeks, the parking of an operative vehicle that is not used for a period exceeding four (4) weeks or the parking of more than one vehicle for the purpose of selling those vehicles as part of a commercial activity.  However, Residents may leave their vehicle in their parking space when on vacation.

I.    No permanent parking of trailers, trucks larger than one (1) ton or boats is permitted in the driveways.  Permanent parking shall include, but not be limited to, parking for a period exceeding 24-hours or parking on the Homesite or street more than five (5) times in any one month, except for short periods (1 hour) for loading and unloading.

J.    A limited number of parking spaces are available for travel trailers, boats, campers, trucks and extra cars on a first come first serve basis.  By providing such spaces to the Residents, Community Management is providing a service, but is not under any obligation to provide such a service.  Therefore, Community Management may impose an additional fee for the storage of any vehicle, boat or trailer.

## 20.    MOTOR VEHICLES AND BICYCLES.

A.    No vehicle leaking oil or any other substances or fluids shall be allowed in the Community.  Any car dripping oil or gasoline must be repaired immediately.

B.    No maintenance, repair or other work of any kind on any vehicle, boat or trailer (other than the mobilehome Resident resides in) may be done on the Homesite without Community Management's consent.  This includes, but is not limited to, the changing of oil.

C.    Cars may be washed in the driveway or carport area of Resident's Homesite in accordance with local ordinances.

D.     For the safety of Community Residents and their Guests, no vehicle may be driven in an unsafe manner.  All traffic signs must be obeyed.  The speed limit in the Community is 10 miles per hour (MPH).

E.     Pedestrians, electric carts and bicycles shall be given the right-of-way.

F.     No vehicle may be operated in the Community by any person who is not properly licensed.  All vehicles operated within the Community must be registered and licensed for street usage.

G.     Excessively noisy vehicles are not permitted in the Community.

H.     Motorcycles, motor scooters, minibikes, mopeds, motorized wheel chairs, or other two and three wheel motorized vehicles , entering or leaving the Community must be driven by the most direct route between the Community's entrance and Resident's home and may not otherwise be driven on any other street in the Community.  All such vehicles shall be equipped with mufflers or other necessary noise suppressing devices.  Furthermore, all such vehicles shall be licensed street legal and driven by a licensed driver only.

I.     Bicycles may only be driven on the roadways and not on sidewalks, grass, vacant Homesites or any other paved area.  Bicycles must obey the same traffic regulations as cars.

J.     If driven at night or at dusk, bicycles must be equipped with a light on the front and a reflector in the rear.

K.     Skateboard riding, and roller skating and hoverboards are not permitted in the Community.

L.     Vehicles are not permitted in the Community unless they are regularly maintained in normal operating condition and are neat and clean in appearance.  This includes, but is not limited to, vehicles whose exterior appearance has deteriorated to a point where they are unsightly and detract from the appearance of the Community, or vehicles which contain unsightly loads that are visible to other persons.

## 21.   CONDUCT.

A.     Actions by any person of any nature which may be dangerous or may create a health and safety problem or disturb others are not permitted.  This includes, but is not limited to, any unusual, disturbing or excessive noise, intoxication, quarreling, threatening, fighting, immoral or illegal conduct, profanity, panhandling or rude, boisterous, objectionable or abusive language or conduct.  The use or display of any weapon, including, but not limited to, a bow and arrow, BB guns, knives, fireworks and guns is expressly forbidden.  Persons under the influence of alcohol or any other substance shall not be permitted in any area of the Community which is generally open to Residents and their Guests.

B.      Radios, televisions, record players, musical instruments and other devices must be used so as not to disturb others. "Ham" or "CB" radios or other radio transmitters may not be operated in the Community.

C.      Residents and their Guests shall not encroach or trespass on any other Resident's Homesite or upon any area which is not open for general use by Residents and their Guests. All Community property which is not for the use of Residents and their Guests, including, but not limited to, gas, electric, water and sewer connections and other equipment connected with utility services and tools and equipment of Community Management, shall not be used, tampered with or interfered with in any way by Resident.

D.      Residents and their Guests must be quiet and orderly and shall not be allowed to do anything which might be cause for complaint. Residents must acquaint all Guests and all occupants of the mobilehome with the Community's Rules and Regulations.

E.      The Community's streets shall not be used for the playing of games and sports.

F.      Except for gas and electric barbecues approved for use by Community Management or fireplaces and other appliances installed in Resident's mobilehome, no burning of anything flammable (wood, paper, coal or any other material), is allowed in the Community.

G.      The violation of any law or ordinance of the city, county, state or federal government will not be tolerated. No acts or demeanor shall be permitted which would place the Community Management in violation of any law or ordinance.

H.      Resident is responsible for the actions and conduct of all other occupants or Residents of Resident's mobilehome and for the actions and conduct of Resident's Guests and invitees. Such responsibility shall include, but not be limited to, financial responsibility for any breakage, destruction, or vandalism of the Community's recreational facilities and common areas.

I.      The mobilehome and Homesite shall be used only for private residential purposes and no business or commercial activity of any nature shall be conducted thereon. This prohibition applies to any commercial or business activity, including, but not limited to, the following:

(1)     Any activity requiring the issuance of a business license or permit by any governmental agency.

(2)     The leasing, subleasing, sale or exchange of mobilehomes.

J.      Prohibition on Use of Drones. Due to privacy concerns and health and safety issues, the use of drones with cameras in the Community by Residents or their guests or invitees is strictly prohibited at all times.

K.    Compliance with Water Conservation Policies.  Resident agrees that their conduct at all times within their Homesite or anywhere in the Community shall comply in all respects with the water conservation objectives in place at the Community in order ensure compliance with all Water Laws, as the same may be amended from time-to-time, and understanding that the Management shall post any such amendments both in the Management offices, as well as in common areas within the Community, all as further described under the landscaping provisions set forth in these Rules.

## 22.    PET/ANIMALS.

A.    <u>Special permission to keep a house pet/animal in the Community must be obtained from Community Management</u>.  A house pet/animal is defined as a pet/animal that spends its primary existence within the mobilehome.  Community Management reserves the right to deny a Resident a pet/animal if a proposed pet/animal would pose a threat to the health and safety of Residents of the Community.  No more than two (2) pet/animals are allowed per mobilehome.

(1)    The types of pet/animals permitted are: a domesticated bird, cat, dog, or aquatic animal kept within an aquarium.  Only medium-sized cats or dogs (which, at maturity, do not exceed twenty-five pounds (25 lbs.) in weight or eighteen inches (18") in height when measured at the shoulders in a standing position) are permitted.  Guide dogs, signal dogs, and other service dogs as defined by Civil Code § 54.1 are exempt from the size limitation otherwise applicable to dogs.  Pit Bulls, Chow Chows, Rottweilers, Doberman Pinschers and other aggressive breeds are expressly prohibited.

(2)    Non-house pet/animals (including farm animals) are prohibited under any circumstances.  Strange and exotic pet/animals are not permitted.

(3)    After moving into the Community, a pet/animal may not be acquired without written permission from the Community Management.  Community Management must approve all pet/animals before application to rent is accepted.  The prospective pet/animal must be personally presented to the Community Management and a photo provided with the application.

(4)    If a pet/animal is lost or dies, written permission to acquire a new pet/animal must be obtained from Community Management in order to verify the pet/animal meets all the restrictions required by this section.

(5)    If any of the rules regarding pet/animals is violated, and such violation is noted by Community Management or a valid complaint is made by another Resident, the Resident owner of the pet/animal will receive an official notice in writing stating that the right to keep a pet/animal within the Community is terminated.

B.    The following rules must be strictly followed by all pet/animal owners:

(1)    Each pet/animal must be licensed and inoculated in accordance with local law.  Evidence of licensing and inoculation shall be submitted to Community Management within seven (7) days of receipt of written request for such information.

(2)    Pet/animals must be on a leash at all times when not inside the mobilehome.

(3)    Any pet/animal running loose in the Community  may be taken to Animal Control.  Recurring violations of this rule will lead to the loss of the privilege to maintain a pet/animal.

(4)    Other than guide dogs, signal dogs and other service dogs as defined by Civil Code § 54.1, pet/animals will not be allowed in the clubhouse or any recreational area at any time.

(5)    Pet/animals will not be allowed to cause any disturbance which might annoy neighbors, including, but not limited to, barking, growling, biting or any other unusual noises or damage.  Under no condition is a pet/animal to invade the privacy of anyone's Homesite, flower beds, shrubs, etc.  Pet/animal owners are responsible at all times for their pet/animals, including injury, destruction, and annoyances to other Residents, and the Community and Community Management shall not be liable for any loss, damage or injury of any kind whatsoever caused by Resident's pet/animal. Pet/animal owners are responsible for the cleanup after their pet/animal.

(6)    No exterior pet/animal housing is permitted in the Community.  This includes, but is not limited to, any type of confining barricade or structure.

(7)    Guests are not permitted to bring any pet/animal into the Community, other than guide dogs, signal dogs, and other service dogs as defined by Civil Code § 54.1.

(8)    Feeding of stray cats and other animals is prohibited.

(9)    The tying up of pet/animals outside the mobilehome and leaving them unattended is prohibited.

(10)    Community Management encourages pet/animals to be spayed or neutered.  However, in the event of offspring, Community Management must be immediately notified and written permission of Community Management must be obtained for the offspring to stay in the Community for a temporary period not to exceed eight (8) weeks.

(11)    Owners need to pick up and dispose of all pet/animal waste immediately.

(12)    Guide dogs, signal dogs and other service dogs as defined by Civil Code § 54.1, must comply with the Pet/Animal Conduct Rules of these Rules and Regulations.

## 23.    ZONING AND CONDITIONAL USE PERMIT INFORMATION.

A.    The nature of the zoning under which the Community operates is as follows:

RM 10

B.    The date of expiration or renewal of any conditional use or other permits required to operate the Community which are subject to expiration or renewal is as follows:  The Community is not operating pursuant to a conditional use permit which has an expiration date.

C.    The duration of any agreement of the Community or any portion thereof in which the Community is a lessee is as follows:  The Community is not subject to any underlying ground lease.

D.    If a change occurs concerning the zoning permit under which the Community operates or an agreement in which the Community is a lessee, all Residents shall be given written notice within thirty (30) days of such change.

## 24.    RENTING, SUBLETTING OR ASSIGNMENT.

Resident shall not sublease, rent or assign Resident's mobilehome, the Homesite or any rights or interest that Resident may have under Resident's rental agreement, except as permitted by the Mobilehome Residency Law and other applicable law and upon the prior approval of Community Management.  Community may place such restrictions upon subletting as are permitted by law, may increase the rent charged to Homeowner as permitted by law, and may amend these Rules and Regulations to include provisions regarding subletting.

## 25.    FIXTURES.

Resident is exclusively responsible for the maintenance of all accessory equipment, structures or other improvements (hereinafter "Fixtures") permanently attached to Resident's mobilehome or embedded in the ground at Resident's Homesite whether installed by Resident or pre-existing as of the date of commencement of Resident's tenancy.  Resident shall insure that such Fixtures are kept in a safe condition and comply with these Rules and Regulations, and Resident shall prevent the deterioration of any Fixture and shall be liable for any damage caused by Resident's lack of proper maintenance respecting such Fixtures.

A.    Upon the sale of Resident's mobilehome, Community Management may require the repair or improvement of the exterior of the mobilehome and/or its accessory equipment and structures to comply with local ordinances or state statutes or regulations, or to comply with the then current Rules and Regulations that implements or enforces local or state ordinances, statutes or regulations relating to mobilehomes.  Within ten (10) days of receipt of a written request, Community Management will provide a written summary of required repairs and/or improvements, including removal of home due to age per section Civil Code 798.73.

B.    All landscaping and structures or other improvements permanently attached to or embedded in the ground shall become a part of the realty upon their installation and belong to Owner.  Upon Resident vacating the Homesite, such improvements shall remain upon and be surrendered with the Homesite.  Community Management may, however, at its sole option, permit or require Resident to remove, at Resident's own expense, said improvements.  Resident shall repair any damage to the Homesite caused by the removal, including, but not limited to, the filling in and leveling of holes or depressions and shall leave the Homesite in a neat and uncluttered condition with the Community's original engineered grade intact.

C.    If Resident should remove Resident's mobilehome, Resident shall remove all landscaping and improvements, accessory equipment and structures except the driveway (if installed by Community), utilities and other improvements belonging to Community.  In addition, Resident shall comply with the following requirements:

(1)    Provide the Community with the name and contact information for the mover of the mobilehome.

(2)    Require, and provide to Park, the mover to be licensed, bonded and have the required limits of insurance coverage.  Insurance requirements as follows:

(a)    $1,000,000.00 property and liability insurance;

(b)    Worker's Compensation Insurance;

(c)    Community must be added as an additionally insured party; and

(d)    Community must be provided with a certificate of insurance evidencing the insurance requirements above.

(3)    Provide the Community with at least three (3) days' advanced notice, in writing, of the date of removal of Home.

## 26.    INSURANCE.

Owner does not carry public liability or property damage insurance to compensate Resident, Resident's Guests, or any other persons from any loss, damage, or injury except those resulting from actions where Owner would be legally liable for such loss, damage or injury.  Resident is responsible for obtaining, at Resident's own cost, extended coverage for homeowners, fire and other casualty insurance on the mobilehome, other improvements and contents to the full insurable value and such other insurance as is necessary to protect Resident, Resident's invitees or others from loss or liability, and Resident hereby agrees to indemnify and hold harmless Owner from any liability therefor.  Resident shall provide to Community Management, on three (3) days' written notice, proof of Resident's homeowner insurance policy (or policies) on Resident's mobilehome and Homesite.  Prior to approval of any application for pet/animals, subleasing (if permitted) and installation of improvements to Resident's Homesite, mobilehome, or its accessory

equipment and structures, Resident will be required to provide to Community Management written proof of liability and homeowner insurance..

## 27.    OCCUPANCY QUESTIONNAIRE.

Resident shall complete, sign and provide to Community Management, on three (3) days written notice, an "Occupancy Questionnaire." Such executed Occupancy Questionnaire shall contain the following:

A.    The names of all occupants of the Homesite;

B.    Nature of occupancy for each individual named pursuant to subparagraph above, i.e., EXTRA PERSON, RESIDENT, shared tenancy under California Civil Code § 798.34(b), family member;

C.    The legal owner and registered owner of the mobilehome;

D.    Names and addresses of all lienholders of the mobilehome;

E.    A copy of the registration card or certificate of title issued by the Department of Housing and Community Development or other government agency for the mobilehome occupying the Homesite.

F.    Proof of Resident's insurance policy (or policies) on Resident's mobilehome.

G.    Proof of age of Resident and all occupants of Resident's mobilehome.

## 28.    SOLICITATION.

Throw-away newspapers, distribution of handbills and door-to-door selling or solicitation are not permitted without the express written consent of Community Management. All salespeople must make individual appointments with the Resident concerned or interested.

## 29.    COMMUNITY OFFICE AND COMPLAINTS.

Except in an emergency, please do not telephone or contact Community Management after normal business hours. The Community's office phone is for business and emergency use only.

A.    Except for emergencies, all complaints must be in writing and signed by the person making the complaint.

B.    All Community business is conducted during posted office hours.

C.    Resident shall not request Community maintenance personnel to perform jobs for Resident, nor shall Resident give instructions to Community maintenance

personnel. All Community repair or maintenance requests shall be submitted in writing to Community Management.

## 30.    REVISIONS OF RULES AND SEVERABILITY.

A.    Community Management reserves the right to add to, delete, amend, and revise these Rules and Regulations from time to time, as well as additional rules and regulations and hours posted in and about the recreational facilities, as provided in Section 798.25 of the California Civil Code.

B.    If any provision of these Rules and Regulations or any document referred to in these Rules and Regulations shall, to any extent, be held invalid or unenforceable, the remainder of these Rules and Regulations shall not be affected thereby, and each provision of these Rules and Regulations or the other document shall be valid and be enforced to the fullest extent permitted by law.

## 31.    APPROVAL OF PURCHASER AND SUBSEQUENT HOMEOWNERS.

Prior approval of Community Management must be obtained if the prospective purchaser of the mobilehome intends for the mobilehome to remain in the Community. Among other requirements, any purchaser must do the following before occupying the mobilehome:  (a) complete an application for tenancy (which may include a fee for obtaining a financial report or credit rating); (b) be accepted by the Owner; (c) execute a new rental agreement or other agreements for the occupancy of the Homesite; and (d) execute and deliver to the Owner a copy of the Community's then effective Rules and Regulations and other residency documents. A list of the other requirements for approval of purchasers of mobilehomes to remain in the Community, as allowed under the Mobilehome Residency Law, can be obtained from Community Management upon request.  In addition, see the requirements under Paragraph 32 of these Rules and Regulations, which are incorporated herein by this reference.

In addition, the following ***Park Escrow Requirements*** must be met by the seller and buyer of any mobilehome to remain in the Community:

A. All transfers of mobilehomes to remain in the Community must go through an escrow with an escrow company pre-approved by the Management;

B. Any and all appropriate transfer documentation must be completed, submitted, approved and returned by the Department of Housing and Community Development and deposited into escrow;

C. All Community approvals for purchaser must be received and deposited into escrow, including without limitation, a fully executed Rental Agreement;

D. Title to the mobilehome must have transferred into the name of the purchaser/prospective Homeowner; and

Escrow must have closed on the mobilehome prior to the purchaser/prospective Homeowner moving into the mobilehome

## 32.    APPROVAL OF PURCHASER AND SUBSEQUENT HOMEOWNERS AFTER SERVICE OF SIXTY DAY NOTICE TO TERMINATE POSSESSION UNDER CIVIL CODE § 798.55.

A.      Upon the service of a sixty day notice to terminate possession ("Sixty Day Notice") under Civil Code § 798.55, Homeowner may move or sell Homeowner's mobilehome before the expiration of the Sixty Day Notice period.

B.      After the expiration of such Sixty Day Notice period, and the mobilehome has neither been sold nor moved, the mobilehome may not remain on the Homesite and must be removed from the Community.

C.      If Homeowner chooses to sell the mobilehome before the expiration of the Sixty Day Notice period and have the mobilehome remain in the Community, Homeowner must pay all past due rent and utilities upon the sale of the mobilehome as provided by Civil Code §§ 798.55(b)(1) and (2).  In addition, on or before the expiration of the Sixty Day Notice period and before a purchaser may occupy the mobilehome, Homeowner is responsible for the completion of all of the following:

(1)     Purchaser must complete an application for tenancy (which may include a fee for obtaining a financial report or credit rating);

(2)     Purchaser must be accepted as a tenant by the Owner;

(3)     Purchaser must execute a new rental agreement or other agreements for the occupancy of the Homesite;

(4)     Purchaser must execute and deliver to the Owner a copy of the Community's then effective Rules and Regulations and other residency documents;

(5)     IF THE PURCHASER FAILS TO EXECUTE A RENTAL AGREEMENT, SUCH PURCHASER SHALL HAVE NO RIGHTS OF TENANCY.  The rental agreement, Rules and Regulations and other residency documents signed by the prospective purchaser may be different in their terms and provisions than the Rules and Regulations and other residency documents now in effect;

(6)     Any and all appropriate transfer documentation completed, submitted, approved and returned by the Department of Housing and Community Development and deposited into escrow;

(7)     All Community approvals for purchaser must be received and deposited into escrow, including without limitation, a fully executed Rental Agreement;

(8)     Title to the mobilehome must have transferred into the name of the purchaser; and

(9)    Escrow must have closed on the mobilehome.

D.    Notwithstanding anything contained herein to the contrary, Owner may, in order to upgrade the quality of the Community, require the removal of the mobilehome from the Homesite upon its sale to a third party, in accordance with the provisions of the Mobilehome Residency Law and other applicable law.  Any rights granted either party by the Mobilehome Residency Law and by other applicable law may be enforced by either party at that party's option.

E.    Notwithstanding anything contained herein to the contrary, upon the sale or transfer of Resident's mobilehome, if the mobilehome is to remain in the Community, Resident shall make all repairs or improvements to Resident's mobilehome, to its appurtenances, or to accessory structures as may be required by Owner, pursuant to California Civil Code § 798.73.5, as amended.  Resident shall submit to Owner a request for a written summary of repairs or improvements that Owner requires to the mobilehome, its appurtenances or an accessory structure that is not owned and installed by Owner, pursuant to Civil Code § 798.73.5(b).

## 33.    PARAGRAPH HEADINGS.

The headings and titles of the paragraphs within these Rules and Regulations are included for purposes of convenience only and shall not affect the construction or interpretation of any of the provisions of said Rules and Regulations.

Signatures on next page